**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAIICHI SANKYO COMPANY, LIMITED
3-5-1, Nihonbashi Honcho, Chuo-ku, Tokyo,
Japan

            Plaintiff,

   v.

HON. DAVID J. KAPPOS
Under Secretary of Commerce for Intellectual
Property and Director of the United States
Patent and Trademark Office.
Office of General Counsel, United States
Patent and Trademark Office,
P.O. Box 15667, Arlington, VA 22215
Madison Building East, Rm 10B20, 600
Dulany Street, Alexandria, VA 22314

            Defendant.

        Civil Action No. 1:10-cv-00215

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT TO CORRECT THE PATENT
TERM ADJUSTMENT FOR UNITED STATES PATENT NOS. 7,342,014 AND 7,365,205**

**(Oral Argument Requested)**

    Plaintiff, Daiichi Sankyo Company, Limited, by its undersigned attorneys, respectfully

moves the Court for an Order granting summary judgment against defendant, requiring

defendant to change the adjustment of the patent term on United States Patent No. 7,342,014

from 357 days to 753 days and change the adjustment of the patent term on United Sates Patent

No. 7,365,205 from 504 days to 825 days.

    The grounds for this motion are set forth in the accompanying memorandum of law.

Plaintiffs request oral argument on the motion.

Dated: October 1, 2012                    Respectfully submitted,


                                          /s/ Kevin M. Dinan
                                          Kevin M. Dinan (DC Bar No. 406627)
                                          KING & SPALDING LLP
                                          1700 Pennsylvania Ave NW, Suite 200
                                          Washington, D.C. 20006-2706
                                          Tel: 202-737-0500
                                          Fax: 202-626-3737

                                          *Of Counsel*
                                          Kenneth H. Sonnenfeld
                                          Margaret B. Brivanlou
                                          Michael P. Dougherty
                                          Wan Chieh Lee
                                          KING & SPALDING LLP
                                          1185 Avenue of the Americas
                                          New York, New York 10036
                                          Tel: 212-556-2100
                                          Fax: 212-556-2222

                                          *Attorneys for Plaintiff Daiichi Sankyo Company,*
                                          *Limited*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAIICHI SANKYO COMPANY, LIMITED
3-5-1, Nihonbashi Honcho, Chuo-ku, Tokyo,
Japan

        Plaintiff,

    v.

HON. DAVID J. KAPPOS
Under Secretary of Commerce for Intellectual
Property and Director of the United States
Patent and Trademark Office.
Office of General Counsel, United States
Patent and Trademark Office,
P.O. Box 15667, Arlington, VA 22215
Madison Building East, Rm 10B20, 600
Dulany Street, Alexandria, VA 22314

        Defendant.

Civil Action No. 1:10-cv-00215

---

## MEMORANDUM OF POINTS OF LAW AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Kevin M. Dinan (DC Bar No. 406627)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, D.C. 20006-2706
Tel: 202-737-0500
Fax: 202-626-3737

*Of Counsel*
Kenneth H. Sonnenfeld
Margaret B. Brivanlou
Michael P. Dougherty
Wan Chieh Lee
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212-556-2100
Fax: 212-556-2222

October 1, 2012

*Attorneys for Plaintiff Daiichi Sankyo Company,
Limited*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

SUMMARY OF ARGUMENT ........................................................................................ 6

ARGUMENT ................................................................................................................... 9

I.   Daiichi's Request for Judicial Review is Timely Because The 180-Day Deadline of
     35 U.S.C. § 154(b)(4)(A) Does Not Apply to Challenges Based on the USPTO's
     Miscalculation of B Delay or Overlap ................................................................... 10

     A.   The USPTO's Construction of Section 154(b) Is Entitled to No Deference ........ 11

     B.   Under the Plain Meaning of the Section 154(b)(4), the 180-Day Limit
          Does Not Apply to this Challenge ................................................................ 12

     C.   Canons of Statutory Construction Squarely Support Daiichi's Reading of
          Section 154(b)(4) ......................................................................................... 14

     D.   The Final PTA Calculation Made at the Time of Patent Issuance Is Not
          Governed by Section 154(b)(4)(A) ............................................................... 16

II.  The USPTO's Refusal to Suspend Its Interim Rule on the Timing of PTA
     Recalculation Requests Was Arbitrary, Capricious, an Abuse of Discretion,
     and Not in Accordance with Law ......................................................................... 18

III. To the Extent that the 180-Day Deadline of Section 154(b)(4)(A) Applies to Daiichi's
     Claims, It Is Subject to Equitable Tolling ............................................................ 23

     A.   The 180-Day Filing Deadline of Section 154(b)(4) Is Not Jurisdictional and
          Therefore Is Subject to Equitable Tolling .................................................... 24

     B.   Equitable Tolling Is Necessary and Warranted to
          Remedy the USPTO's Mistakes ................................................................... 28

     C.   The Unique Circumstances of this Case
          Underscore the Need for Equitable Relief .................................................... 31

IV.  The USPTO's Refusal to Allow Daiichi to Petition for Recalculation of the Proper
     Statutory Terms of the '014 and '205 Patents Deprives Daiichi of Property Without
     Due Process, Violating the Due Process Clause of the Fifth Amendment ............ 31

     A.   Patents are Property ..................................................................................... 32

     B.   The USPTO Violates Procedural Due Process by Refusing to Provide Certain
          Patentees Any Procedure to Dispute the USPTO's "Counter-Statutory"
          Miscalculation of Their Patents' Terms Under Section 154(b) ..................... 33

          1.   The USPTO Rules Prejudice Daiichi's Property Interests ...................... 33

          2.   Erroneous Deprivation of Daiichi's Interest Is a Certainty
               Under the Current USPTO Rules ........................................................... 34

3.   The USPTO Would Not Be Unduly Burdened By  Correcting Its Errors...................................................................................... 34

C.   The USPTO's Arbitrarily Limited Waiver After *Wyeth* of Its Normal 180-Day Deadline to Request Reconsideration of Its Erroneous PTA Calculations Fails to Rationally Advance a Legitimate Government Purpose, Violating the Substantive Dimension of Fifth Amendment Due Process............. 35

CONCLUSION.................................................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Bus Ass'n v. United States*,
  627 F.2d 525 (D.C. Cir. 1980)................................................29

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................9

*Bristol-Myers Squibb Co. v. Kappos*,
  No. 09-cv-1330, 2012 WL 252423 (D.D.C. Jan. 27, 2012)................27, 30

*\*Bull S.A. v. Comer*,
  55 F.3d 678 (D.C. Cir. 1995).................................23, 28, 31

*\*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*
  467 U.S. 837 (1984)................................................11, 21

*Connecticut National Bank v. Germain*,
  503 U.S 249 (1992)................................................12

*Duncan v. Walker*,
  533 U.S. 167 (2001)................................................15

*Dusenbery v. United States*,
  534 U.S. 161 (2002)................................................33

*\*Eastern Carolinas Broadcasting Co. v. FCC*,
  762 F.2d 95 (D.C. Cir. 1985)................................20, 31

*Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*,
  527 U.S. 627 (1999)................................................32

*Gonzalez v. Thayer*,
  132 S. Ct. 641 (2012)................................................25

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)................................................25

*\*Helfgott & Karas v. Dickenson*,
  209 F.3d 1328 (Fed. Cir. 2000)................................22, 23

*\*Henderson v. Shinseki*,
  131 S. Ct. 1197 (2011)................................24, 25

*Irwin v. Dep't of Veterans Affairs,
    498 U.S. 89 (1990)............................................................................24, 28

Janssen Pharmaceutica, N.V. v. Kappos,
    2012 U.S. Dist. LEXIS 17065 (E.D. Va. Feb. 10, 2012)...........................16

Jarrell v. United States Postal Serv.,
    753 F.2d 1088 (D.C. Cir. 1985).............................................................28

John R. Sand & Gravel Co. v. United States,
    128 S. Ct. 750 (2008)..........................................................................25

Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.,
    627 F.2d 57 (7th Cir. 1980) .................................................................32

Mathews v. Eldridge,
    424 U.S. 319 (1976)................................................................32, 33, 34

Menominee Indian Tribe of Wis. v. United States,
    614 F.3d 519 (D.C. Cir. 2010)...............................................................24

Merck & Co. v. Kessler,
    80 F.3d 1543 (Fed. Cir. 1996)...............................................................11

National Council of Resistance of Iran v. Dep't of State,
    251 F.3d 192 (D.C. Cir. 2001)...............................................................33

Pac. Gas & Elec. Co. v. FPC,
    506 F.2d 33 (D.C. Cir. 1974).................................................................29

Panhandle E. Pipe Line Co. v. FERC,
    198 F.3d 266 (D.C. Cir. 1999)...............................................................29

Pub. Emps. Ret. Sys. of Ohio v. Betts,
    492 U.S. 158 (1989).............................................................................12

Qwest Commc'ns Int'l Inc. v. FCC,
    229 F.3d 1172 (D.C. Cir. 2000).......................................................28, 29

Ratzlaf v. United States,
    510 U.S. 135 (1994).............................................................................16

Reno v. Flores,
    507 U.S. 292 (1993)......................................................................32, 35

Sierra Club v. Mainella,
    459 F. Supp. 2d 76 (D.D.C. 2006).........................................................10

*Spannaus v. DOJ,*
   824 F.2d 52 (D.C. Cir. 1987)...............................................................................25

*Tafas v. Doll,*
   559 F.3d 1345 (Fed. Cir. 2009), *vac'd on other grounds*, 328 Fed. Appx. (Fed. Cir.
   Jul. 6, 2009)...........................................................................................................11

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.,*
   329 U.S. 637 (1947).............................................................................................32

*United States v. Brockamp,*
   519 U.S. 347 (1997).............................................................................................26

*United States v. Gonzales,*
   520 U.S. 1 (1997).................................................................................................16

*Wyeth v. Dudas,*
   580 F. Supp. 29 138 ............................................................................................11

*Wyeth v. Dudas,*
   80 F. Supp. 2d 138 (D.D.C. 2008) ................................................................ passim

*\*Wyeth v. Kappos,*
   591 F.3d 1364 (Fed. Cir. 2010)..................................................................... passim

*Zipes v. Trans World Airlines, Inc.,*
   455 U.S. 385 (1982).............................................................................................25

**FEDERAL STATUTES**

5 U.S.C. § 704.............................................................................................................5, 6

5 U.S.C. § 706(2)(A)......................................................................................................18

15 U.S.C. § 1059(a) .......................................................................................................28

28 U.S.C. § 2107(a) .......................................................................................................25

28 U.S.C. § 2253(c)(1)...................................................................................................25

28 U.S.C. § 2401............................................................................................................19

28 U.S.C. § 2401(a) .......................................................................................................25

28 U.S.C. § 2501(a) .......................................................................................................25

35 U.S.C. 154(b)(2)(A)....................................................................................................2

35 U.S.C. § 154(b) ................................................................................................. passim

35 U.S.C. § 154(b)(1) ........................................................................................1, 7

35 U.S.C. § 154(b)(3) ...................................................................................2, 13, 15

35 U.S.C. § 154(b)(4) ................................................................................... passim

35 U.S.C. § 154(b)(4)(A) ............................................................................. passim

35 U.S.C. § 254 ...........................................................................................7, 8, 21

35 U.S.C. § 261 .................................................................................................32

Pub. L. No. 103-465, § 532, 108 Stat. 4809, 4984 (1994).............................................1

RULES

Fed. R. Civ. P. 56(c) .......................................................................................9, 10

CONSTITUTIONAL PROVISIONS

U.S. CONST. Amendment V ...................................................................................31

OTHER AUTHORITIES

37 C.F.R. § 1.56 ..............................................................................................17

37 C.F.R. § 1.183 ............................................................................................20

37 C.F.R. § 1.183 ..............................................................................................4

37 C.F.R. § 1.312 ............................................................................................17

37 C.F.R. § 1.705 ...................................................................................... passim

69 Fed. Reg. 21704 (Apr. 24, 2004) ................................................................. passim

75 Fed. Reg. 5043 (Feb. 1, 2010) .................................................................... passim

Manual of Patent Examining Procedure, Eighth Edition, August 12, 2012 Revision ...................4

Plaintiff Daiichi Sankyo Company, Limited ("Daiichi") is entitled to summary judgment because the United States Patent and Trademark Office ("USPTO") has miscalculated the patent term adjustments ("PTAs") for Daiichi's U.S. Patent Nos. 7,365,205 (the "'205 patent") and 7,342,014 (the "'014 patent"), and because the USPTO's refusal to correct those PTAs to provide the full statutory patent terms to which Daiichi is entitled is arbitrary, capricious, an abuse of discretion, and contrary to law.   Not only does the USPTO's error deprive Daiichi of its full, statutory patent term for the '205 and '014 patents, but the USPTO's error is compounded by improperly truncating the patent term of Daiichi's U.S. Patent No. 7,576,135 (the "'135 patent"), which the USPTO recalculated under order from this Court.

## INTRODUCTION

In the wake of legislation changing the term of a patent from 17 years from issuance to 20 years from filing (Pub. L. No. 103-465, § 532, 108 Stat. 4809, 4984 (1994)), Congress recognized that USPTO's delays in examining and issuing patents often resulted, through no fault of the patent applicant, in effective patent terms of far *less* than 17 years.   In response, Congress passed the American Inventors Protection Act, amending Section 154(b) to return to patent holders those days of patent term lost due to USPTO delay.   The revised Section 154(b) provides three (3) specific guarantees: (A) prompt responses by the USPTO ("A Delay"); (B) no more than 3-year application pendency ("B Delay"); and (C) adjustment for delays due to administrative proceedings. 35 U.S.C. § 154(b)(1).   If the USPTO fails to meet the deadlines of subparts A or B, or if patent issuance is delayed because of certain administrative proceedings, the patent applicant is entitled to compensation for any days lost at the USPTO by having the terms of any affected patents adjusted accordingly.   *See id.*   Through these revisions, Congress essentially restored to diligent patent applicants the previous 17-year effective patent term.

The statute required the Director of the USPTO to issue "regulations establishing

procedures for the application for and determination of patent term adjustments under [Section 154(b)]." 35 U.S.C. § 154(b)(3). The USPTO essentially treated the first two guarantees as a single overlapping inquiry, and explained its methodology to the public in a 2004 Notice in the Federal Register. *See* "Revision of Patent Term Extension and Patent Term Adjustment Provisions," 69 Fed. Reg. 21704 at 21706 (Apr. 24, 2004) ("2004 Notice"). The USPTO's regulations failed to compensate patent applicants for both A Delay and B Delay, instead only adjusting patent term by the larger of the two delays. These flawed regulations ignored Congress's mandate that patent applicants should not bear the cost of the USPTO's failure to meet *each* of the three separate guarantees. Because the USPTO failed to account for each guarantee in Section 154(b), patentees, including Daiichi, were denied the full number of compensating days of patent term to which they were entitled.

When the USPTO's patent term adjustment procedures were challenged on these grounds in *Wyeth v. Dudas*, 80 F. Supp. 2d 138 (D.D.C. 2008) ("*Wyeth* District Court Decision"), this Court held that the USPTO's procedures were contrary to the plain language of Section 154(b) — a decision that was affirmed on appeal in *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010) ("*Wyeth* CAFC Decision"). However, it was not until after the *Wyeth* CAFC Decision that the USPTO finally accepted that its PTA policy failed to comply with Section 154(b) and promulgated an Interim Procedure[1] for recalculating PTAs under the correct interpretation of the statute. This Interim Procedure for correcting erroneously calculated PTAs, however, was available only for those patents that fortuitously issued during the 180 days prior to the announcement of the Interim Procedure in the Federal Register on February 1, 2010 (the "*Wyeth* look-back period"). Thus, if a patent happened to issue within 180 days before February 1, 2010,

---

[1] "Interim Procedure for Patentees To Request a Recalculation of the Patent Term Adjustment To Comply With the Federal Circuit Decision in *Wyeth v. Kappos* Regarding the Overlapping Delay Provision of 35 U.S.C. 154(b)(2)(A)" 75 Fed. Reg. 5043 (Feb. 1, 2010) [*hereinafter* Interim Procedure].

its owner could have its term corrected; but owners of patents that happened to issue before the 180-day cutoff were left with no remedy and deprived of the full statutory term that Congress had guaranteed. This is the problem faced by Daiichi, with respect to its '014 and '205 patents as well as another related patent owned by Daiichi, the '135 patent, also a subject of this lawsuit.

The USPTO erred as a matter of law. When Congress directed the USPTO to adjust patent terms, it did not limit that directive to patents issued within the 180-window chosen by the USPTO. The USPTO has construed 35 U.S.C. § 154(b)(4) to impose such a limitation, but it does no such thing: Section 154(b)(4) governs only civil actions in *court* — not agency action. The agency's arbitrary, self-imposed cut-off for patent term adjustments perpetuates the very problem that Congress directed the agency to fix, contrary to Congress's clear intent.

The USPTO's position is entitled to particularly little deference because the USPTO itself made this problem by issuing the erroneous 2004 notice and refusing to adjust patent terms in the manner specified by Congress until the Court of Appeals eventually ordered it to do so. It is contrary to law, and arbitrary and capricious, for an agency to create a procedural trap and then refuse to provide *any* recourse to those it trapped.

## STATEMENT OF FACTS

It is indisputable that the USPTO miscalculated the PTAs of the '014, '205, and '135 patents under its erroneous pre-*Wyeth* regulations. That error has improperly shortened the terms of all three patents by over a full year.

On February 12, 2010, within 180 days of the issuance of the '135 patent, Daiichi filed a complaint requesting judicial review of the patent term adjustment calculations for the '135 patent. On the same day, following the USPTO's newly implemented Interim Procedure, Daiichi filed with the USPTO a Request for Recalculation of Patent Term Adjustment in View of *Wyeth* for the '135 patent. This Court has already ordered the USPTO to recalculate the PTA of the

3

'135 patent (Order to Remand dated April 20, 2010), which it did (*see* Notice of Recalculation, June 28, 2010).

However, the '135 patent is terminally disclaimed over the '014 and '205 patents, *i.e.*, the '135 patent term cannot extend beyond the terms of either the '014 or the '205 patent.[2] Accordingly, although the USPTO has reinstated the term it denied the '135 patent at issuance, that reinstatement has no practical effect. The '135 patent cannot enjoy any benefit of the restored term because the USPTO has not reinstated the full statutory terms of the '014 and '205 patents. The USPTO refuses to rectify this injustice because the '014 and '205 patents issued more than 180 days before the February 1, 2010 announcement of the Interim Procedure in the Federal Register. Thus, although Daiichi timely requested and actually obtained recalculation of the '135 patent PTA, the recalculation is futile because the USPTO refuses to correct its mistakes in the PTA calculations of the '014 and '205 patents. In other words, the USPTO's correction, on remand from this Court, is no correction at all.

Daiichi sought to have the USPTO waive its rules limiting PTA corrections to patents issued no more than 180 days before February 1, 2010, and requiring requests for PTA corrections to be made within two months of patent issuance so that the PTAs for the '014 and '205 patents could be corrected, but to no avail. On February 2, 2010, within 180 days of the *Wyeth* CAFC Decision but more than 180 days after the '014 patent and the '205 patent issued, Daiichi filed petitions under 37 C.F.R. § 1.183 ("Rule 183 Petition") to suspend the rules, and petitions under 37 C.F.R. § 1.705(d) to request reconsideration of the PTA determinations for the

---

[2] A "terminal disclaimer" is a document filed at the USPTO in which the owner of a patent or patent application relinquishes whatever patent term the patent or application may be entitled to which extends past the expiration date of another commonly owned patent or application. The USPTO routinely requires terminal disclaimers when the USPTO determines that two or more commonly owned applications and/or patents are directed to similar subject matter, such that the claimed subject matter of one could be obvious in view of the other. The rationale is to prevent patentees from improperly extending the term of their patent exclusivity by obtaining additional, later-expiring patents on very similar subject matter. *See generally*, Manual of Patent Examining Procedure, Eighth Edition, August 12, 2012 Revision ("MPEP") §804.02.

'205 and '014 patents with respect to the USPTO's miscalculation of B Delay overlap for each patent.

> Rule 183, 37 C.F.R. § 1.183, provides that:
>
> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, *sua sponte*, or on petition of the interested party, subject to such other requirements as may be imposed.

The USPTO dismissed these petitions in decisions dated March 30, 2010 for the '014 patent and April 14, 2010 for the '205 patent. The USPTO dismissed the Rule 183 Petitions because it refused to consider any request for reconsideration of patent term adjustment where the petition under 37 C.F.R. § 1.705(d) is first filed more than 180 days after the grant of the patent, because, according to the USPTO, 35 U.S.C. § 154(b)(4)(A) requires that a civil action in a U.S. District Court challenging a PTA calculation by the USPTO be filed within 180 days of the grant of the patent. The USPTO also dismissed the petitions under 37 C.F.R. § 1.705(d) as untimely because that rule provides a two-month period for filing a request for reconsideration of the patent term adjustment indicated on the patent.

On June 1, 2010, Daiichi filed a Request for Reconsideration of Dismissal of Petition under 37 C.F.R. § 1.183 (to suspend the rules) and Dismissal of Request for Reconsideration of Patent Term Adjustment under 37 C.F.R. § 1.705(d) with respect to the '014 patent. The USPTO denied this request on October 12, 2010. On November 16, 2010, Daiichi requested reconsideration of the October 12, 2010 decision. On March 17, 2011, the USPTO denied Daiichi's request for reconsideration of the October 12, 2010 decision.

In the March 17, 2011 decision, the USPTO stated with respect to the Rule 183 Petition that "[t]his decision is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of

seeking judicial review." The USPTO also stated that:

> The USPTO believes that the statutory 180-day period for seeking court review of the USPTO's PTA determinations, particularly in view of the six-year statute of limitations that otherwise is applicable for actions under the Administrative Procedure Act, indicates a congressional intent that PTA issues be resolved after a patent issues.

On June 14, 2010, Daiichi filed a Request for Reconsideration of Dismissal of Petition under 37 C.F.R. § 1.183 (to suspend the rules) and Dismissal of Request for Reconsideration of Patent Term Adjustment under 37 C.F.R. § 1.705(d) with respect to the '205 patent. In a decision dated September 28, 2010, the USPTO denied Daiichi's request for reconsideration of the April 14, 2010 decision and stated that "[t]his decision is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of seeking judicial review."

## SUMMARY OF ARGUMENT

As the foregoing discussion shows, Daiichi timely filed a Complaint seeking an Order from this Court directing the USPTO to correct the PTA for the '135 patent, and this Court *granted* the requested relief, but this Court's Order and the subsequent correction of the '135 patent's PTA have no practical effect due to the '135 patent's link to the other two patents. Thus, Daiichi is left with unlawfully shortened terms for all three patents, even though the USPTO expressly acknowledges that it miscalculated the PTA for all of them.

Notwithstanding Congress's clear directive to adjust patent terms, the USPTO claims that this strange and unfair result is compelled by Section 154(b)(4), entitled "Appeal of patent term adjustment determination," which provides that "An applicant dissatisfied with a determination made by the Director under paragraph (3) shall have remedy by a civil action . . . [in a U.S. district court] within 180 days after grant of the patent." According to the USPTO, this provision precludes the USPTO from correcting erroneously calculated PTAs of patents that issued more

6

than 180 days before the Interim Procedure was announced.  The USPTO's limit on correction of erroneously calculated PTA's to those patents that were granted within 180 days of announcement of the Interim Procedure is contrary to law and arbitrary and capricious for several reasons discussed below.

First, Section 154(b)(4) does not apply to the type of PTA determination at issue here. Section 154(b)(4) applies only to appeals of PTA determinations made "under paragraph (3)" of Section 154(b).  The determination specified under paragraph (3) concerns only "A Delays," i.e., delays caused by the USPTO's failure to take certain actions during prosecution of the application within specified times, a calculation made and transmitted with the notice of allowance.  It is not applicable to the final PTA, which must account for A, B, and C Delays and cannot be calculated until the issue date of the patent is known.  Because Daiichi seeks correction of the final PTA calculation, not the calculation "under paragraph (3)," Section 154(b)(4) does not apply.

Second, by its plain terms, Section 154(b)(4) places a 180-day deadline on appeals to a *U.S. District Court*; it places no restriction on the USPTO's ability to correct its own errors in PTA calculations.  In fact, 35 U.S.C. § 254 allows the USPTO to correct its own mistakes in a patent at any time by issuing a certificate of correction, provided the mistakes are "clearly disclosed" in the official record.  Accordingly, the USPTO's position that it is powerless to correct its PTA calculations for the '014 and '205 patents because of the 180-day time limit in Section 154(b)(4) is simply wrong.  The USPTO's position also deprives Daiichi of the full patent terms it is guaranteed by Section 154(b)(1).  Further, it arbitrarily creates two distinct classes of patents:  those that happened to issue within 180 days before the February 1, 2010 announcement of the USPTO's Interim Procedure, whose erroneously calculated PTAs can be

corrected; and earlier-granted patents for which no correction is available. Because the USPTO's decision rests on an erroneous interpretation of Section 154(b)(4), the decision is contrary to law and must be vacated.

The illogical and unfair consequences of this policy are highlighted by the USPTO's recalculation of the PTA of the '135 patent. Although the USPTO determined that it erred in calculating PTA for the '135 patent and, in fact, did recalculate the '135 patent's PTA, the USPTO cannot actually restore any of the term of the '135 patent because, due to terminal disclaimers, the term of the '135 patent cannot exceed the terms of the '014 and '205 patents. And because the USPTO had arbitrarily classified the '014 and '205 patents as patents not entitled to PTA correction, the term of the '135 patent was effectively left unchanged. This failure to give effect to the correction of the '135 patent term is despite the USPTO's acknowledged erroneous methodology in calculating PTA for all three patents and despite having the ability to correct its errors under 35 U.S.C. § 254. Under basic principles of administrative and even constitutional law, the Interim Procedure's refusal to provide *any* remedy for the agency's own error is contrary to law, arbitrary, capricious, and an abuse of discretion

Third, even if the 180-day deadline of Section 154(b)(4) were applicable, Daiichi's alleged untimely request for PTA recalculation should be excused under principles of equitable tolling. Equitable tolling is applicable to all statutory deadlines that are not "jurisdictional," i.e., deadlines that do not limit a court's subject matter or personal jurisdiction. The 180-day filing deadline of Section 154(b)(4), like almost all statutes of limitations, is *not* such a jurisdictional provision; rather, it is a quintessential example of a "claim-processing rule," which seeks to promote the orderly progress of litigation by requiring parties to take certain procedural steps at

specified times. Rules of that nature can be tolled for equitable reasons. The USPTO's long-standing misapplication of Section 154(b) and Daiichi's reliance on the agency's erroneous construction of that statute provide ample grounds for tolling Section 154(b)(4)'s filing requirement. Equitable relief is especially warranted under the unique circumstances of this case, where Daiichi *timely* requested and received correction of the PTA of the '135 patent, but is denied the benefit of that correction due to the '135 patent's link to the '014 and '205 patents – even though the USPTO acknowledges that it miscalculated the PTA of all three patents.

Finally, the USPTO's refusal to provide any remedy for its improper PTA determinations for the '014 and '205 patents, which also forecloses the reinstatement of the full statutory PTA of the '135 patent, deprives Daiichi of valuable property rights without due process of law – indeed, without *any* process. That serious constitutional concern provides, at a minimum, yet another reason not to defer to the USPTO.

On any or all of these bases, this Court can and should grant Daiichi's motion for summary judgment. As shown in Daiichi's Requests for Recalculation of Patent Term Adjustment in the agency record, the USPTO should be ordered to change the PTA for the '014 patent from 357 days to 753 days, and to change the PTA for the '205 patent from 504 days to 825 days.

## ARGUMENT

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. §

706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006). Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). Thus, "the court's review is limited to the administrative record" and summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

The only issue here is the legal question of whether the USPTO's refusal to correct the PTAs of Daiichi's '014 and '205 patents was a valid exercise of agency discretion. Because the USPTO's action was contrary to law, arbitrary, capricious, and an abuse of discretion, Daiichi is entitled to summary judgment and recalculation of the PTAs for the '014 and '205 patents.

I.   **Daiichi's Request for Judicial Review is Timely Because The 180-Day Deadline of 35 U.S.C. § 154(b)(4)(A) Does Not Apply to Challenges Based on the USPTO's Miscalculation of B Delay or Overlap**

This Court can review the USPTO's PTA calculations of Daiichi's '014 and '205 patents and require the USPTO to restore them to their full statutory terms because Congress directed the USPTO to adjust patent terms to account for the USPTO's delay and Section 154(b)(4)(A) simply does not limit that direction. Indeed, it does not even apply to Daiichi's challenge. The 180-day time limit in Section 154(b)(4)(A) only applies to PTA determinations made by the USPTO with the notice of allowance, necessarily limited to the A Delay calculations, and not to the calculations made when the patent issues — including calculation of A Delay, but also B Delay and the overlap of A and B Delay — the calculations in dispute here. Those issued patent

10

calculations are subject to challenge under the Administrative Procedure Act, with a six-year statute of limitations.

### A.    The USPTO's Construction of Section 154(b) Is Entitled to No Deference

The USPTO's construction of Section 154(b) is not entitled to any deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.* 467 U.S. 837 (1984). *See Wyeth v. Kappos*, 591 F.3d 1364, 1372 (Fed. Cir. 2010) (rejecting the USPTO's argument that its interpretation of the patent term adjustment statute was entitled to deference). *Chevron* deference applies only to statutory interpretations made by agencies with a legislative delegation of rulemaking or similar authority. *Merck & Co. v. Kessler*, 80 F.3d 1543, 1549 (Fed. Cir. 1996). The USPTO has no such power with respect to the substantive rules at issue here. *Id*; *see also Wyeth v. Dudas*, 580 F. Supp. 29 138, 141 (D.D.C. 2008) ("Since at least 1996, the Federal Circuit has held that the USPTO is not afforded *Chevron* deference because it does not have the authority to issue substantive rules, only procedural regulations regarding the conduct of proceedings before the agency.").

While the USPTO has *procedural* rulemaking authority for rules that "do not themselves alter the rights or interests of parties, although [they] may alter the manner in which the parties present themselves or their viewpoints to the agency," it lacks relevant substantive rule making authority. *Tafas v. Doll*, 559 F.3d 1345, 1351-56 (Fed. Cir. 2009), *vac'd on other grounds*, 328 Fed. Appx. (Fed. Cir. Jul. 6, 2009). Because the PTA provisions at issue here are not procedural insofar as they severely affect Daiichi's substantive intellectual property rights, the deferential standard set forth in Chevron does not apply.

Even if the USPTO's interpretation had been made pursuant to a legislative delegation of rulemaking or similar authority, it still would not receive any deference because, as shown

11

below, it is contrary to the plain language of Section 154 itself. *Pub. Emps. Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) (noting that "no deference is due to agency interpretations at odds with the plain language of the statute").

**B.      Under the Plain Meaning of the Section 154(b)(4), the 180-Day Limit Does Not Apply to this Challenge**

It is a fundamental principle of statutory interpretation that "[w]hen the terms of a statute are unambiguous, 'judicial inquiry is complete, except in rare and exceptional circumstances.'" *Wyeth v. Kappos*, 591 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981). *See also Connecticut National Bank v. Germain*, 503 U.S 249, 253-254 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The plain language of Section 154(b) indicates that the 180-day deadline does not apply to challenges to all PTA calculations, but rather only to a specific subset.  Pursuant to 35 U.S.C. § 154(b)(4):

> APPEAL    OF    PATENT    TERM    ADJUSTMENT
> DETERMINATION.
>
> (A) An applicant dissatisfied with *a determination made by the Director under paragraph (3)* shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent. Chapter 7 of title 5 shall apply to such action.

(emphasis added).  The 180-day deadline from patent issuance, therefore, only applies to "a determination made by the Director under paragraph (3)."  *Id*.  As discussed below, the "paragraph (3)" procedures are limited to PTA calculations made and transmitted to the patent applicant with the notice of allowance.  The PTA calculations at issue here were not, in fact, made by the Director under paragraph (3) because those calculations could only have been made *after* the notice of allowance.

12

Paragraph (3) of Section 154(b) provides, in relevant part, "Procedures for patent term adjustment determination" as follows:

(A) The Director shall prescribe regulations establishing procedures for the application for and determination of patent term adjustments under this subsection.

(B) Under the procedures established under subparagraph (A), *the Director shall-*

(i) *make a determination of the period of any patent term adjustment under this subsection*, and shall transmit a notice of *that determination* with the written notice of allowance of the application under section 151; and

(ii) provide the applicant one opportunity to request reconsideration of *any* patent term adjustment determination made by the Director.

. . .

(D) The Director shall proceed to grant the patent after completion of *the Director's determination of a patent term adjustment under the procedures established under this subsection*, notwithstanding any appeal taken by the applicant of such determination.

35 U.S.C. § 154(b)(3) (emphases added). In other words, under paragraph (3): subparagraph A, provides the authority for and requires the Director of the USPTO to establish general procedures for determining PTA; subparagraph B, as part of those general procedures, specifically requires the Director to provide *a* PTA determination along with the written notice of allowance and one opportunity to request reconsideration of *any* PTA determination; and, subparagraph D, orders the Director to grant the patent even if the applicant has appealed the Director's PTA determination. The only "determination" specified in paragraph (3) is that in subparagraph B to be provided along with the "written notice of allowance," and, therefore, the unambiguous interpretation of Section 154(b)(4) is that it relates solely to the subparagraph B determination provided with the notice of allowance.

The phrasing and structure of the subparagraphs of paragraph (3) reinforce this

construction. Subparagraph (D) requires the Director to grant the patent notwithstanding the applicant's appeal of "the director's determination of a patent term adjustment under the procedures established under this subsection." Although subparagraph (A) is the only portion of paragraph (3) that requires the Director to "prescribe regulations establishing procedures for . . . determination of patent term adjustments," it does not set forth any particular determination, let alone one "made by the Director." Rather, it is subparagraph (B) that requires the Director to make a specific PTA determination "[u]nder the procedures established under subparagraph (A)," which must be sent along with the notice of allowance. Subparagraph (D)'s reference to "*the* Director's determination . . . under the procedures established under this subsection," can thus only refer to the singular "determination of any patent term under this subsection" made by the Director "[under] the procedures established under subparagraph (A)"— i.e., the subparagraph (B) determination sent along with the notice of allowance. Paragraph (3) does not specify any other determinations of PTA to be "made by the Director" at any other time during the lifecycle of the patent. Having specifically provided for procedures for determining PTA and transmitting this determination with the notice of allowance, Congress clearly could have stated provisions for making determinations that could not have been transmitted with the notice of allowance, i.e., B Delay. By not referring to any other notices of PTA determinations, such as the notice provided by the USPTO with the issue notification once the issue date is known, Congress limited paragraph (3) to only those determinations provided with the notice of allowance.

**C.   Canons of Statutory Construction Squarely Support Daiichi's Reading of Section 154(b)(4)**

This interpretation is supported by well-established canons of statutory construction. First, to construe Section 154(b)(4)(A) to apply to more than the determination transmitted with

the notice of allowance would effectively read out the phrase referring to the "determination made by the Director under paragraph (3)." The Supreme Court has cautioned that "[w]e are . . . 'reluctant to treat statutory terms as surplusage' in any setting." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *Babbitt v. Sweet Home Chapter, Communities for Great Ore.* 515 U.S. 687, 698 (1995)). To interpret the provision to apply to all PTA challenges rather than those made under paragraph (3) would render this phrase superfluous – exactly what the Supreme Court has cautioned against.

Another canon of statutory construction is that when language is present in one portion of a statute and absent in another, courts presume that Congress "acted intentionally and purposely in the disparate inclusion or exclusion." *Id.* (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)). Section 154(b)(4)(A) – governing appeals to a U.S. district court – is expressly limited to determinations "made by the Director under paragraph (3)." Section 154(b)(3)(D) confirms that Section 154(b)(3)(B) is limited only to the determination of PTA provided to applicants at the notice of allowance, necessarily excluding B Delay, which cannot be transmitted in the notice of allowance because it requires knowledge of the patent issue date, not known at the time of the notice of allowance. By expressly instructing the Director to grant "the patent after completion of the Director's determination of a patent term adjustment under the procedures established in this subsection, notwithstanding any appeal taken by the applicant...", Congress clearly limited the appeals to those PTA determinations made according to the procedure specifically provided in Section 154(b)(3), which are transmitted with the notice of allowance. No other procedures are established under paragraph (3). Accordingly, the B Delay errors made by the USPTO do not fall under Section 154(b)(3) and are not subject to the 180-day limit of Section 154(b)(4).

When, as here, the plain language of the statute is clear and unambiguous, "there is no

reason to resort to legislative history" or other extrinsic evidence. *See, e.g., United States v. Gonzales*, 520 U.S. 1, 6 (1997) (citing *Connecticut Nat. Bank*, 503 U.S. at 254). In fact, the Court has cautioned that consideration of legislative history should not cloud an otherwise clear statutory text. *Ratzlaf v. United States*, 510 U.S. 135, 147-148 (1994). The CAFC in affirming this Court's *Wyeth* decision affirmed that "only a 'most extraordinary showing of contrary intentions by Congress justifies a departure' from the plain language of a statute." *Wyeth*, 591 F.3d at 1371 (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)). There are no indications of any contrary intention on the part of Congress, let alone "most extraordinary" ones; the legislative history provides no reason to depart from the plain language of § 154(b)(4)(A).[3]

### D.   The Final PTA Calculation Made at the Time of Patent Issuance Is Not Governed by Section 154(b)(4)(A)

Under this straightforward construction, Section 154(b)(4)(A) does not present a time limitation on Plaintiff's challenges because they involve different PTA determinations made *after* transmittal of the notice of allowance. The PTA calculations in dispute involve the application of B Delay to the PTA calculation and, as such, are necessarily not the same as the calculations transmitted with the notice of allowance. According to USPTO procedures, for the PTA determination transmitted with the notice of allowance, the USPTO calculates PTA based

---

[3] In a non-binding decision by the Eastern District of Virginia in *Janssen Pharmaceutica, N.V. v. Kappos*, 2012 U.S. Dist. LEXIS 17065, at *14 (E.D. Va. Feb. 10, 2012), that court expanded the scope of the 180-Day deadline to all PTA challenges, reasoning that otherwise, "a patentee could pursue multiple rounds of lengthy post-issuance administrative review, with the result of side-stepping the exclusive forum requirement and the short statute of limitations prescribed by Congress in the patent statute."

However, this counter-textual construction contradicts the plain language of § 154(b)(4)(A) and is inconsistent with the Federal Circuit's decision in *Wyeth v. Kappos,* which specifically recognizes that as regards the language of Section 154(b), "the law has put a policy in effect that [the] court must enforce, not criticize or correct." *Wyeth*, 591 F.3d at 1370–71 (quoting *Harbison v. Bell*, 129 S. Ct. 1481, 1493–94) (2009) ("Even if the proper interpretation of a statute upholds a 'very bad policy,' it 'is not within [the court's] province to second-guess' the 'wisdom of Congress's action' by picking and choosing [the court's] preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute.")). This court should reject any overtures to substitute its policy judgments for those of Congress.

only on A Delay.  Because the B Delay and A/B Delay overlap calculations require knowledge of the patent's issue date to determine the delay in issuing a patent after three years of filing, these calculations cannot be definitively made until the issue date of the patent is known, well after the notice of allowance and just before the patent actually issues.  Although it has been allowed, an application will not issue as a patent until all appropriate fees have been paid and then is expected to issue within *about* four weeks after payment of these fees.  *See* MPEP § 1306. After a notice of allowance, the timing of the issue date will be affected by, inter alia, the timing of the payment of the issue fee by the applicant, and any USPTO backlog.  In addition, applicants may take actions after the transmission of the notice of allowance that can delay issuance of the patent, such as certain amendments, petitions, or submission of additional information for consideration under 37 C.F.R. § 1.56.  *See, e.g.*, 37 C.F.R. § 1.312 (permitting amendments after the mailing of the notice of allowance but not after the payment of the issue fee, at the examiner's recommendation and with the approval of the Director).  The bottom line is that the issue date cannot be predicted with the notice of allowance.[4]

The USPTO explicitly agrees that the notice of allowance PTA calculation reflects only A, not B, Delay.  The USPTO's webpage entitled "Explanation Of Patent Term Adjustment Calculation" states:

> (4) "B" DELAYS. This entry reflects adjustments to the term of the patent based upon the patent failing to issue within three years of the actual filing date of the application in the United States. See 35 U.S.C. § 154(b) and implementing regulations 37 C.F.R. 1.702(b) & 1.703(b). "B" delay is always calculated at the time that the issue notification letter is generated and an issue date has been established.

---

[4] A PTA calculation including B Delay is provided with the "Issue Notification" sent approximately two weeks prior to patent issuance.  This Issue Notification differs from the notice of allowance and is sent after the issue fee is paid and once the USPTO has determined when the application will issue as a patent.

*See* http://www.uspto.gov/patents/process/search/public_pair/guidance/pta_calc_explanation.jsp. According to the USPTO, the issue date is not determined until "about ten days before the application issues as a patent," which is necessarily after the USPTO has sent the notice of allowance. MPEP § 1306.

The USPTO's miscalculation of the PTA for the '014 and '205 patents is, just as in *Wyeth*, an error in determining the overlap between the A Delay and the B Delay, which necessarily requires a calculation of the B Delay. In other words, the PTA calculation provided with the notice of allowance for the '205 and '014 patents—the determinations specified in paragraph (3) of Section 154(b)—did not and could not at that time include the determination of the B Delay and the overlap between the A Delay and the B Delay, which are the source of the USPTO error challenged here. In view of the clear language of 35 U.S.C. § 154(b)(4)(A), the 180-day deadline does not apply to challenges to the USPTO's calculations of B Delay and overlap because such determinations are neither calculated by the time of nor provided with the written notices of allowance under paragraph (3). Accordingly, 35 U.S.C. § 154(b)(4)(A) does not bar Daiichi's request for judicial review of the USPTO's PTA determinations for the '205 and '014 patents based on errors concerning the USPTO's pre-*Wyeth* B Delay calculations.

II.   **The USPTO's Refusal to Suspend Its Interim Rule on the Timing of PTA Recalculation Requests Was Arbitrary, Capricious, an Abuse of Discretion, and Not in Accordance with Law**

5 U.S.C. §706(2)(A) authorizes courts to "hold unlawful and set aside agency actions . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This Court can and should use this authority to set aside the USPTO's denial of Daiichi's petitions under 37 C.F.R. § 1.183 to suspend the rule in 37 C.F.R. § 1.705(d) setting a two month from patent issuance time limit to request reconsideration of PTA calculations and the accompanying petitions for PTA recalculation under 37 C.F.R. § 1.705(d). Daiichi's First

Amended Complaint was filed with this Court on November 9, 2010, well within the six-year time limit set forth in 28 U.S.C. § 2401 for bringing actions under the APA. The complaint was filed less than three years after issuance of the '014 and '205 patents on March 11, 2008 and April 29, 2008, respectively, and, critically, less than two months from Final Agency Action issued on September 28, 2010 with respect to the '205 patent and prior to Final Agency Action issued on March 17, 2011 for the '014 patent.

As noted previously, after the *Wyeth* CAFC Decision, the USPTO enacted an Interim Procedure allowing patentees to request recalculation of PTA determinations for patents issued no more than 180 days before February 1, 2010 (an arbitrarily chosen date), even waiving the two month from issuance time period for filing a Request for Recalculation of Patent Term under 37 C.F.R. § 1.705, but barring such requests for patents issued more than 180 days before February 1, 2010. Even prior to the publication of the Interim Procedure, Daiichi filed petitions asking the USPTO to waive the two month time limit rule under Rule 705, just as the USPTO subsequently did in the Interim Procedure. The USPTO denied Daiichi's petitions stating that "the situation was not an extraordinary situation for which justice requires waiver." It is hard to believe that the unlawful deprivation of patent term as a result of a statutory interpretation that two Courts had ruled to be wrong did not constitute "an extraordinary situation for which justice requires waiver." Clearly, even the USPTO thought differently when it found the same situation so extraordinary that it waived the two month time period for a swath of patentees in the Interim Procedure. Yet, the USPTO arbitrarily denied and precluded Daiichi from seeking relief from the USPTO's erroneous PTA determinations for the '205 and '014 patents, both of which issued more than 180 days before the arbitrary look-back date. The USPTO clearly had authority to waive its rules (which it did for an arbitrarily designated class of others) and provide Daiichi the

relief it requested.  37 C.F.R. §1.183 provides:

> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, *sua sponte*, or on petition of the interested party, subject to such other requirements as may be imposed.

The USPTO's systematic misapplication of Section 154(b) is exactly the type of "extraordinary situation" this rule was designed to cure, and here, "justice requires" that the USPTO provide some remedy for its prior failure to comply with Section 154(b) and patentees' reasonable reliance on USPTO guidance.  As the D.C. Circuit has held, an agency has "some obligation to protect the parties before it, where possible, from the consequences of their reliance upon its earlier practice" when there have been "abrupt changes in discretionary agency practice or interpretation." *See Eastern Carolinas Broadcasting Co. v. FCC*, 762 F.2d 95, 101 (D.C. Cir. 1985).  Here, the agency has pointedly refused to do *anything* to discharge that obligation.

In its denial of Daiichi's Requests for Reconsideration of Petitions under 37 C.F.R. § 1.183 Request for Reconsideration of Patent Term Adjustment (dated October 12, 2010, for the '014 patent (confirmed in Final Agency Action dated March 17, 2011) and September 28, 2010 for the '205 patent), the USPTO ruled that Section 154(b)(4) bars PTA recalculation requests filed more than 180 days after patent issuance and, therefore, that its interim rule limiting recalculation to patents issuing no more than 180 days before February 1, 2010, could not be waived.  These final agency actions are "arbitrary, capricious, an abuse of direction," and "not in accordance with law."

By its plain terms, Section 154(b)(4) limits the time for filing *a civil action in District Court* to challenge a PTA determination.  It places no restriction on the USPTO's authority to correct its own erroneous PTA determinations and a patentee's right to request such corrections.

Indeed, 35 U.S.C. § 254 provides that *"[w]henever a mistake in a patent, incurred through the fault of [the USPTO], is clearly disclosed by the records of the office, the Director may issue a certificate of correction stating the fact and nature of the mistake. . . ."* (emphasis added). It is indisputable that the errors in PTA calculation at issue here are "clearly disclosed" in the USPTO files. Accordingly, the statute allows the USPTO to correct them at any time. The only restriction on requests for PTA correction is the two-month limit of 37 C.F.R. § 1.705(d), a regulation that indisputably can be waived pursuant to § 1.183, and, which the USPTO actually did waive in the Interim Procedure for a subclass of patentees. Accordingly, the USPTO's ultimate denial of Daiichi's motion was based on an erroneous interpretation of Section 154(b)(4). As discussed above in section I.A., the USPTO's interpretation of the statute is not entitled to any deference under *Chevron*. Even if deemed procedural, which the provision is not as it impacts Daiichi's substantive rights, the USPTO's interpretation is also due no deference as it is at odds with the statute's plain language.

Furthermore, the arbitrary cut-off provided by the Interim Procedure violates the "patent term guarantees" provided by Congress to restore lost patent term caused by the USPTO's failure to meet certain requirements in examining a patent application, as explained in the *Wyeth* CAFC Decision. As relevant here, the whole point of the American Inventors Protection Act was to lengthen existing patent terms. The USPTO has articulated no legally tenable justification for refusing to fully implement that congressional directive. As this Court already determined, the USPTO misinterpreted the statute in violation of Congress's guarantee and continues to ignore this guarantee. And now it is continuing the very same unlawful course of conduct by hiding behind the inapplicable time limitation of subsection (b)(4)(A). The USPTO's denials of Daiichi's Rule 183 Petitions for the '205 and '014 patents unfairly truncate their terms, as well as

21

the term of the '135 patent as a consequence, in violation of Congress's clear intent.

Finally, the USPTO's Interim Procedure arbitrarily and without statutory basis creates two classes of patents: those that happened to issue within 180 days before February 1, 2010, whose PTA determinations can be corrected; and those that happened to issue earlier, whose PTA determinations could not be corrected. The USPTO's choice of February 1, 2010 as a starting point for this limited "look-back" period is completely arbitrary, driven by its own litigation strategy. This choice of the later starting point after the *Wyeth* CAFC Decision arbitrarily foreclosed redress for some but not all patent owners denied patent term under the USPTO's statutory misinterpretation. The unlucky owners of the latter class of patents are left with no remedy to correct the USPTO's admittedly incorrect PTA determinations. Permitting certain patentees, but not others, to seek recalculation of the USPTO's flawed PTA determinations and recover their property right is arbitrary and unfair.[5]

This Court can and should correct these errors. For example, in *Helfgott & Karas v. Dickenson*, 209 F.3d 1328 (Fed. Cir. 2000), the court ruled that the USPTO abused its discretion by denying a 37 C.F.R. § 1.183 petition to waive the normal rules when the USPTO contributed to the error sought to be corrected. *Id.* at 1335, 1337. In *Helfgott*, a patent agent submitted a paper misstating an application's number and filing date. The USPTO compounded this mistake by using the erroneous application number in subsequent correspondence to the agent. Even though the applicant was responsible for the initial mistake, the Federal Circuit held that the USPTO abused its discretion in not granting the applicant's petition to correct the agent's original erroneous filing, since the USPTO itself "contribute[d] to the confusion." *Id.* at 1337.

---

[5] The arbitrary manner in which the USPTO has applied its two month time limit (37 C.F.R. § 1.705(d)) is also demonstrated by the way in which it dealt with requests for reconsideration of PTA. The USPTO announced in the Interim Procedure that applicants that had received an adverse decision on a request for reconsideration of a Wyeth-type PTA error could request reconsideration again, but only if no more than two months had passed since the adverse decision.

If denial of a Rule 183 petition was an abuse of discretion in *Helfgott*, where the initial error was the fault of the applicant, it follows with even greater force that the USPTO has abused its discretion here, when Daiichi's loss of its statutorily guaranteed exclusivity is solely the result of the agency's error.  For all of these reasons, this Court should find that the USPTO's actions in not restoring the full, statutory patent terms to all of the '135, '205 and '014 patents are arbitrary, capricious and not in accordance with law and, therefore, grant Daiichi's motion for summary judgment and require the USPTO to recalculate the patent terms of the '014 and '205 patents in accordance with Section 154(b).

III.    **To the Extent that the 180-Day Deadline of Section 154(b)(4)(A)**
        **Applies to Daiichi's Claims, It Is Subject to Equitable Tolling**

Even if the 180-day deadline of Section 154(b)(4) were applicable to Daiichi's petitions to correct the PTAs of the '014 and '205 patents (or to the filing of this action), Daiichi's alleged untimely filing would be excused under principles of equitable tolling.  It is fundamental that "[a] plaintiff who pleads and proves 'equitable reasons' that excuse his failure to meet a statutory deadline is entitled to tolling of the deadline whether his opponent is a private party or the government; absent any indication of congressional intent to the contrary, equitable tolling is available in suits against the government 'in the same way that it is applicable to private suits.'" *Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)).

Equitable tolling is applicable to all statutory deadlines that are not "jurisdictional," i.e., deadlines that do not limit a court's subject matter or personal jurisdiction.  The 180-day filing deadline of Section 154(b)(4) is *not* such a jurisdictional provision; rather, it is a quintessential example of a "claim-processing rule," which seeks to promote the orderly progress of litigation by requiring parties to take certain procedural steps at specified times.  Rules of that nature can

be tolled for equitable reasons. *See, e.g., Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011). The USPTO's long-standing misapplication of Section 154(b), Daiichi's reliance on the agency's erroneous construction of that statute, and the illogical and unfair situation that Daiichi faces with respect to the '135 patent – for which Daiichi is being denied the benefit of its timely requested PTA correction due to the '135 patent's link to the '014 and '205 patents – provide ample equitable grounds for tolling Section 154(b)(4)'s filing requirement in this case.

### A.   The 180-Day Filing Deadline of Section 154(b)(4) Is Not Jurisdictional and Therefore Is Subject to Equitable Tolling

In *Irwin*, the Supreme Court established a presumption that all federal statutes of limitations are amenable to equitable tolling unless Congress provides otherwise. 498 U.S. at 95-96. This presumption is rebutted only when Congress provides a "clear indication" that the filing deadline is "jurisdictional," i.e., that it governs the courts' subject matter or personal jurisdiction. *Henderson*, 131 S.Ct. at 1202-03. This presumption relates to both claims in Article I courts as well as causes of action in Article III courts (*Irwin* relating to a statute of limitations for bringing a denial of equal employment opportunity claim in district court). The "clear indication" "[w]hether a statutory time limit or other prerequisite to suit is jurisdictional is 'discerned by looking to the condition's text, context, and relevant historical treatment.'" *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 524 (D.C. Cir. 2010) (quoting *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1246 (2010)). These factors show that the 180-day filing deadline of Section 154(b)(4) is *not* jurisdictional.

First, the statutory text provides no "clear indication" that the 180-day deadline is jurisdictional. Section 154(b)(4) provides simply: "An applicant dissatisfied with a determination . . . under paragraph (3) shall have remedy by a civil action . . . filed . . . within 180-days after grant of the patent." This language says nothing about a court's subject matter or

personal jurisdiction; it merely sets forth a filing deadline. *See Henderson*, 131 S. Ct. at 1202-03 (distinguishing jurisdictional rules from "claim processing rules," i.e., "rules that seek to promote the orderly progress of litigation by requiring that parties take certain procedural steps at certain specified times," and noting that "[f]iling deadlines, such as the 120-day filing deadline at issue [in that case], are quintessential claim processing rules," which are subject to equitable tolling); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982) (a deadline that "does not speak in jurisdictional terms or refer in any way to the jurisdiction [of the court]" is not jurisdictional).

The absence of any jurisdictional requirement in Section 154(b)(4) becomes obvious when it is compared with other rules that *are* jurisdictional, for example:

- 28 U.S.C. § 2501(a) ("Every claim of which the United States Court of Federal Claims *has jurisdiction shall be barred unless* the petition thereon is *filed within six years* after such claim first accrues.") (emphases added). *See John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753–57 (2008) (jurisdictional).

- 28 U.S.C. § 2401(a) ("every civil action commenced against the United States *shall be barred unless the complaint is filed within six years* after the right of action first accrues." (emphasis added). *See Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir. 1987) (jurisdictional).

- 28 U.S.C. § 2107(a) ("no appeal shall bring any judgment . . . before a court of appeals . . . unless notice of appeal is filed within 30 day after the entry of such judgment. . . ." *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982) (jurisdictional).

- 28 U.S.C. § 2253(c)(1) (appeals in habeas corpus proceedings "may not be taken to the court of appeals" "[u]nless a circuit justice or judge issues a certificate of appealability"). *See Gonzalez v. Thayer*, 132 S. Ct. 641, 649 (2012) (jurisdictional).

These examples demonstrate that Congress knows how to provide a "clear indication"

that a filing deadline is jurisdictional when it desires to do so.  The absence of such language in

Section 154(b)(4) shows that no jurisdictional effect was intended.  Indeed, it is hard to fathom

how the USPTO can assert that this provision is jurisdictional when its choice of when to start

the *Wyeth* look-back period was completely arbitrary.  The USPTO chose February 1, 2010 – a

few weeks after the *Wyeth* CAFC Decision – as the start of the *Wyeth* look-back period, but

could just as easily have chosen the date of the *Wyeth* District Court Decision, the denial of a

request for rehearing at the Federal Circuit if it had made such a request, or the denial of a

petition for certiorari if it had sought Supreme Court review.  Clearly, there was no jurisdictional

bar in place when the USPTO arbitrarily decided to begin the *Wyeth* look-back period and allow

certain patentees to have their incorrect PTA determinations adjusted.

The other factors relevant to whether the 180-day filing deadline is jurisdictional likewise

point to the conclusion that it is a mere claim processing rule, subject to equitable tolling.  There

is nothing in the context and placement of Section 154(b)(4) suggesting that it is jurisdictional.

Unlike the filing deadline in *United States v. Brockamp*, 519 U.S. 347 (1997), for example, the

180-day deadline of Section 154(b)(4) is not reiterated multiple times and the statute provides no

explicitly enumerated exceptions to the deadline.  *See id.* at 350-52 (relying on those factors,

along with statute's express language, to conclude the provision in question was jurisdictional).

Moreover, the title of subsection (b)(1), "Patent Term Guarantees," shows that Congress

intended this section as a guarantee that patent applicants are entitled to a minimum patent term

and consequently promised to compensate patent applicants for delays resulting from the

USPTO's failure to provide responses and examine the patent application expeditiously.

Nothing in the context of subsection (b)(4) makes any reference to the jurisdiction of this Court

(or any other), let alone establishes any sort of jurisdictional bar for judicial review of PTA

determinations.   To read subsection (b)(4) as a jurisdictional pre-condition not only ignores Congress's choice of language, but in context, would also contravene Congress's guarantee to patent applicants and patentees, thereby depriving them of their statutory patent terms.

Finally, to the extent there is any "relevant historical treatment" of Section 154(b)(4), it too supports the view that the 180-day time limit is not jurisdictional.  In *Bristol-Myers Squibb Co. v. Kappos*, No. 09-cv-1330, 2012 WL 252423, at *5–6 (D.D.C. Jan. 27, 2012), this Court specifically held that the "general tolling rule"[6] applies to the 180-day deadline, finding nothing in Section 154(b) or elsewhere in the patent statutes to "support a conclusion that Congress intended for the ordinary tolling rule not to apply to Section 154(b)(4)(A)."   Rejecting the USPTO's argument that "Congress intended the limitations period of Section 154(b)(4)(A) to be exempt from the ordinary tolling rule," the court explained that while Section 154(b)(4)(A) "set a 'fixed date' from which the limitation period runs," it "is *not* incompatible with a tolling rule." *Id.* (emphasis in original).

This Court's *Bristol-Myers* decision also rejected the USPTO's argument that Section 154(b)(3)(D) is evidence of Congressional intent for tolling not to apply.  *Bristol-Myers* at **5–6.   The Court explained that the language of subsection (b)(3)(D) requiring the USPTO to "proceed to grant the patent after completion of the Director's determination of a patent term adjustment under the procedures established under this subsection, notwithstanding any appeal taken by the applicant of such determination," is not the sort of  "clear indication" necessary for prohibiting tolling.   *Id.*  The Court explained that "[t]hat language does not direct this Court to take any action inconsistent with the normal tolling rule."  *Id.* at *6.

---

[6] Closely related to equitable tolling, the "general tolling rule" (also called the "normal tolling rule" or "ordinary tolling rule") extends filing deadlines while a request for reconsideration is pending with the agency, and it is similarly inapplicable to extend "jurisdictional" statutes of limitations that would be "expressly contravened by the tolling rule".  *See Bristol-Myers Squibb* at *3–5.

For all of the foregoing reasons, the 180-day filing deadline of Section 154(b)(4) is not jurisdictional in nature and therefore may be tolled when equity so requires. As shown below, the facts of this case strongly support Daiichi's right to equitable belief.

**B.      Equitable Tolling Is Necessary and Warranted to
           Remedy the USPTO's Mistakes**

As noted previously, equitable tolling is not limited to suits between private parties; it is also presumed to be available in suits against the United States. *Irwin*, 498 U.S. at 95–96. One circumstance where courts routinely provide such relief is when the failure to meet a deadline "is the result of justifiable reliance on the advice of [a] government officer." *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1092 (D.C. Cir. 1985); *see also Qwest Commc'ns Int'l Inc. v. FCC*, 229 F.3d 1172, 1183–84 (D.C. Cir. 2000) (plaintiff "was entitled to rely on the Commission's announced policy and precedent" on how it handled and processed submitted information).

For example, in *Bull S.A. v. Comer*, the court deemed it proper to toll the deadline for renewal of a trademark registration in light of the USPTO's misstatement that the renewal deadline was one year after the cutoff specified in 15 U.S.C. § 1059(a). 55 F.3d at 680, 683. Even though the deadline was mandated by statute, the court concluded that, based on the USPTO's misstatement of the trademark holder's rights, "it is entirely appropriate to insist that the [USPTO] toll the statutory deadline." *Id.* at 683. The Court of Appeals rejected the USPTO's argument that equitable tolling was unwarranted because the plaintiff should not have relied on the USPTO and should have known that the renewal date in the USPTO-provided document was incorrect. *Id.* at 682–83.

Just as Bull relied on the Commissioner's erroneous statutory interpretation in its official written notification of the trademark renewal deadline, Daiichi relied on the USPTO's PTA determinations for the '205 and '014 patents in declining to file challenges within 180 days of

their issuance because those incorrect determinations accorded with the methodology for calculating A Delay and B Delay detailed in the USPTO's 2004 Notice to the public in the Federal Register. Such notices, along with procedures and agency policy, constitute "binding rules of substantive law" that may be relied upon. *See, e.g., Qwest Commc'ns Int'l Inc. v. FCC*, 229 F.3d 1172, 1183–84 (D.C. Cir. 2000); *Panhandle E. Pipe Line Co. v. FERC*, 198 F.3d 266, 269 (D.C. Cir. 1999); *Am. Bus Ass'n v. United States*, 627 F.2d 525, 528–31 (D.C. Cir. 1980); *Pac. Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38–42 (D.C. Cir. 1974). In light of the unequivocal statements made by the USPTO to the public regarding its application of Section 154(b), Daiichi—like the vast majority of patentees and assignees—reasonably relied upon the USPTO's statutory interpretation.

Furthermore, Daiichi's decision to rely on the USPTO's guidance and not to litigate the USPTO's statutory decision is distinguishable from a decision of whether or not to appeal a determination made by the Director under paragraph (3) relating to numerical miscalculations or an adverse decision under Section 154(b)(3)(c) relating to an inadequate showing of due care where an applicant fails to respond within the 3-month period to respond to an office action under 154(b)(2)(c)(ii).

Notwithstanding its reliance on the USPTO's interpretation of and policies implementing Section 154(b), Daiichi diligently acted to preserve its rights upon a judicial declaration that the USPTO's PTA procedures failed to meet the requirements of Section 154(b). Less than 180 days after the *Wyeth* District Court Decision (which the USPTO refused to accept, and continued to challenge until after it was affirmed on appeal by the CAFC), Daiichi filed the Requests for Reconsideration and the Rule 183 Petitions for the '014 and '205 patents requesting suspension of the rules so that the Requests for Reconsideration would be considered on the merits. Not

until after Daiichi filed its Petitions did the USPTO finally accept its error and create an Interim Procedure to change its PTA procedures in response to the *Wyeth* CAFC Decision.  Although the Interim Procedure waived the 37 C.F.R. § 1.705(d) two-month time limit to request reconsideration of PTA determinations, this remedy was only available for patents that happened to issue within the arbitrarily defined *Wyeth* look-back period, e.g., Daiichi's '135 patent.  This "too little, too late" remedy still left Daiichi burdened by the USPTO's refusal to correct its unlawful and erroneous PTA determinations with respect to the '014 and '205 patents.  Indeed, the PTA recalculation for the '135 patent had no practical effect because of the USPTO's refusal to also reinstate the full statutory terms of the '014 and '205 patents, which limit the '135 patent term by virtue of terminal disclaimers.

Once Daiichi had exhausted its remedies in the USPTO and obtained Final Agency Actions denying relief, Daiichi promptly (well within 180 days) filed an Amended Complaint with this Court requesting review of the USPTO's actions and to request proper PTA calculation for the '014 and '205 patents.  Under this Court's ruling in *Bristol-Myers Squibb Co.*, general tolling applies to the 180-day deadline during the pendency of a request for reconsideration in the USPTO.  Accordingly, Daiichi filed its request for reconsideration and petition to waive the rules within 180 days of the *Wyeth* District Court Decision (well before the USPTO admitted that its statutory interpretation was erroneous) and diligently pursued its rights in the USPTO and then with this Court when the USPTO finally denied the requested relief.

The USPTO's failure to implement statutorily-compliant PTA procedures until well after the USPTO's arbitrary deadline for Daiichi to file a 37 C.F.R. § 1.705(d) request for reconsideration for the '014 and '205 patents only underscores how the USPTO's failure to remedy its prior erroneous procedures continues to harm patentees who reasonably relied on the

USPTO. *See Eastern Carolinas*, 762 F.2d at 101. It would be inequitable to penalize Daiichi under these circumstances for relying on the USPTO's policy in its 2004 Notice and not immediately challenging the USPTO's flawed interpretation. Just as in *Bull*, the USPTO's flawed notification that failed to correctly interpret governing statutes merits equitable tolling of the applicable deadline.

C. **The Unique Circumstances of this Case Underscore the Need for Equitable Relief**

Equitable tolling is especially warranted in view of the unique circumstances of this case. Daiichi timely filed a complaint seeking an order from this Court directing the USPTO to correct the PTA for the '135 patent, and this Court *granted* the requested relief. This Court's Order, however, and the subsequent correction of the '135 patent's PTA have no practical effect due to the '135 patent's link to the other two patents. Thus, Daiichi is left with unlawfully shortened terms for all three patents, even though the USPTO expressly acknowledges that the PTA was miscalculated for all three patents – truly an illogical, and unjust result. The only way that the Court can restore the term of the '135 patent is by allowing Daiichi to obtain the full statutory terms of the '014 and '205 patents. To the extent there was an applicable 180-day "deadline" for filing a complaint on the PTA determinations for the two other patents, those deadlines must be tolled and the patent terms of those patents corrected in order to prevent their USPTO-acknowledged incorrect patent terms from cutting short, via the terminal disclaimer, the term of the '135 patent.

IV. **The USPTO's Refusal to Allow Daiichi to Petition for Recalculation of the Proper Statutory Terms of the '014 and '205 Patents Deprives Daiichi of Property Without Due Process, Violating the Due Process Clause of the Fifth Amendment**

The Due Process Clause of the Fifth Amendment commands, in relevant part, that "no person . . . shall be deprived . . . of property, without due process of law." *U.S. CONST. amend. V.*

31

This binds the federal government and its agencies—including the USPTO.  Because patents "have long been considered a species of property," *Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999), USPTO procedures that burden already-issued patents must comply with the Due Process clause in both its procedural and substantive dimensions.  *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976) (procedural due process); *Reno v. Flores*, 507 U.S. 292, 303–06 (1993) (federal agencies' actions must rationally advance some legitimate government purpose).  The USPTO's failure to provide *any* remedy for its improper PTA determinations with respect to Daiichi's '014 and '205 patents, as well as the '135 patent by virtue of the refusal to correct the terms of the '014 and '205 patents, violates both of these constitutional guarantees.  No process is not due process.

### A.   Patents are Property

As a threshold matter, it is clear that the patents are protected as "property" interests under the Due Process clause.  *See, e.g.*, *Fla. Prepaid*, 527 U.S. at 642 (holding that patents are property interests protected under the Due Process Clause of the Fourteenth Amendment); 35 U.S.C. §261 ("patents shall have the attributes of personal property").  The exclusive right to practice the claimed invention "for the statutory period" is "the essence of the patent." *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 643 (1947).  Accordingly, a patentee's right to exclude others from practicing within the scope of the patent's claims during full statutory term of the patent is "a property right, of which the patentee cannot be deprived without due process of law." *See Johnson & Johnson, Inc. v. Wallace A. Erickson & Co.*, 627 F.2d 57, 59 (7th Cir. 1980) (internal citations omitted).

B.     **The USPTO Violates Procedural Due Process by Refusing to Provide Certain Patentees Any Procedure to Dispute the USPTO's "Counter-Statutory" Miscalculation of Their Patents' Terms Under Section 154(b)**

The procedural dimension of constitutional due process requires the USPTO to provide both "notice and an opportunity to be heard" to "individuals whose property interests are at stake." *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).   In other words, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (1976) (internal quotation omitted).   Three factors are relevant to whether procedures that result in the deprivation of property comply with the Due Process Clause:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.   As elaborated below, each of these factors points to the conclusion that the USPTO's refusal to provide any procedure to correct its acknowledged misapplication of Section 154(b) with respect to the '014 and '205 patents (and the resulting futility of correcting the term of the '135 patent) constitutes a denial of Daiichi's due process rights.

1.     **The USPTO Rules Prejudice Daiichi's Property Interests**

Evaluating the first *Mathews* factor, it is clear that the private interests affected by the USPTO—the full statutory terms of the '135, '014 and '205 patents—are property rights protected by the Due Process Clause. *See supra.*   The mere "invasion of the Fifth Amendment protected property right . . . is sufficient to entitle [a party] to the due process of law." *See National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001).

2.    **Erroneous Deprivation of Daiichi's Interest Is a Certainty Under the Current USPTO Rules**

Considering the second *Mathews* factor, the USPTO's current rules have not merely subjected Daiichi's property interests to "the *risk* of an erroneous deprivation," 424 U.S. at 335 (emphasis added), but have made that deprivation a certainty. Because the USPTO refused to provide *any* process by which Daiichi can seek correction of the USPTO's acknowledged errors, there are no "additional or substitute procedural safeguards" to protect its property rights. Accordingly, the erroneous deprivation of Daiichi's property interests that has already occurred will continue unless and until the USPTO provides some meaningful procedure to remedy its prior misapplication of Section 154(b).

3.    **The USPTO Would Not Be Unduly Burdened By Correcting Its Errors**

With respect to the final *Mathews* factor, there is no countervailing government interest that would support the USPTO's refusal to provide any sort of procedure to patentees whose property interests were prejudiced by the USPTO's own "counterstatutory interpretation" of Section 154(b). *Wyeth*, 591 F.3d at 1370. The USPTO's only "interest" in denying Daiichi's request for reconsideration as untimely is to avoid having to correct errors and restore patent term improperly shortened by the USPTO. But that is exactly what the American Inventors Protection Act *required* the USPTO to do. The agency cannot credibly claim a legitimate interest in not doing what Congress directed it to do. Moreover, given that the USPTO presently performs these mechanical calculations as a matter of course, and only recalculates them once a patentee requests reconsideration of the PTA determination, any marginal burden on the USPTO will be miniscule. In any event, this relatively small burden of requiring the USPTO to fix its own errors cannot outweigh its erroneous deprivation of Daiichi's property rights.

**C.**   **The USPTO's Arbitrarily Limited Waiver After *Wyeth* of Its Normal 180-Day Deadline to Request Reconsideration of Its Erroneous PTA Calculations Fails to Rationally Advance a Legitimate Government Purpose, Violating the Substantive Dimension of Fifth Amendment Due Process**

In addition to requiring some procedure, the Fifth Amendment's Due Process Clause also requires "a reasonable fit between [a legitimate] governmental purpose . . . and the means chosen to advance that purpose." *See Reno v. Flores*, 507 U.S. 292, 303–05 (1993). The USPTO's attempt to use its own rules as a "regulation of limitations" to avoid having to remedy the vast majority of its own errors in interpreting Section 154(b) fails to comply with even this "unexacting" standard. *Id.* at 306.

Simply put, the USPTO's attempt to remedy its "counter-statutory" interpretation of Section 154(b) violates the substantive guarantees of the Due Process Clause in two ways: (1) it is illegitimate for the USPTO to arbitrarily decide how many of its mistakes get corrected and which patentees must be deprived of their full property rights because of the USPTO's erroneous reading of Section 154(b); and (2) the USPTO's chosen method of correcting its errors—waiving the normal deadlines, but only to correct its most recently-committed errors—has no rational connection to *any* legitimate government purpose.

## CONCLUSION

For the foregoing reasons, Daiichi respectfully requests that this Court grant summary judgment in its favor, and instruct the USPTO to recalculate the patent terms for the '014 and '205 patents in accordance with the *Wyeth* CAFC Decision.

Dated: October 1, 2012

Respectfully submitted,

  /s/ Kevin M. Dinan
Kevin M. Dinan (DC Bar No. 406627)
KING & SPALDING LLP
1700 Pennsylvania Ave NW, Suite 200
Washington, D.C. 20006-2706
Tel: 202-737-0500
Fax: 202-626-3737

*Of Counsel*
Kenneth H. Sonnenfeld
Margaret B. Brivanlou
Michael P. Dougherty
Wan Chieh Lee
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212-556-2100
Fax: 212-556-2222

*Attorneys for Plaintiff Daiichi Sankyo Company, Limited*