## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                  )
**DAIICHI SANKYO COMPANY, LIMITED,**              )
                                                  )
      **Plaintiff,**                            )
                                                  )
**v.**                                            )  **Civil Action No. 10-0215 (RWR)**
                                                  )
**HON. DAVID J. KAPPOS,**                         )
    **Under Secretary of Commerce for**        )
    **Intellectual Property & Director of the**  )
    **United States Patent & Trademark Office,** )
                                                  )
      **Defendant.**                          )
_____)

## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING PATENT TERM ADJUSTMENT FOR UNITED STATES PATENT NOS. 7,342,014 AND 7,365,205

Defendant, the Honorable David J. Kappos, Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office ("USPTO"), by and through the undersigned counsel, hereby cross moves under Federal Rule of Civil Procedure 56 for summary judgment with respect to Plaintiff Daiichi Sankyo Company, Limited's ("Daiichi or "Plaintiff") claim, as there is no genuine issue of material fact in this case and Defendant is entitled to judgment as a matter of law.  Specifically, the USPTO moves for summary judgment because Plaintiff is barred from filing its untimely claim under 35 U.S.C. § 154(b)(4)(A).  In support of this Motion, Defendant respectfully refers this Court to Defendant's accompanying Memorandum of Points and Authorities.  A proposed order is also attached.

Dated:  November 7, 2012,
       Washington, DC

Respectfully Submitted,

RONALD C. MACHEN JR., D.C. BAR#447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar #924092
Civil Chief

By: */s/ Carl E. Ross*_____
CARL EZEKIEL ROSS, D.C. Bar #492441
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Tel:  (202) 305-4851
Fax:  (202) 514-8780

Attorneys for Defendant

Of Counsel:
Brian T. Racilla
Farheena Rasheed
Associate Solicitors
United States Patent and Trademark Office

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

DAIICHI SANKYO COMPANY, LIMITED,    )
    )
    Plaintiff,    )
    )
v.    )    **Civil Action No. 10-0215 (RWR)**
    )
HON. DAVID J. KAPPOS,    )
    Under Secretary of Commerce for    )
    Intellectual Property & Director of the    )
    United States Patent & Trademark Office,    )
    )
    Defendant.    )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DAIICHI'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Defendant, the Honorable David J. Kappos, Under Secretary of Commerce for

Intellectual Property and Director of the U.S. Patent and Trademark Office ("USPTO"), by and

through the undersigned counsel, hereby submits this memorandum of points and authorities in

support of Defendant's cross-motion for summary judgment and in opposition to Plaintiff

Daiichi Sankyo Company, Limited's ("Daiichi") motion for summary judgment ("Pl. MSJ"),

ECF No. 22.

Congress has explicitly required that:

An applicant dissatisfied with a determination made by the Director under
paragraph (3) [*i.e.*, 35 U.S.C. § 154(b)(3)] shall have remedy by a civil action
against the Director filed in the United States District Court for the District of
Columbia *within 180 days after the grant of the patent*.

35 U.S.C. § 154(b)(4)(A) (2008) (emphasis added).[1]  On March 11, 2008, Defendant granted

U.S. Patent No. 7,342,014 ("the '014 patent") to Plaintiff.  On April 29, 2008, Defendant granted

U.S. Patent No. 7,365,205 ("the '205 patent") to Plaintiff.  On January 7, 2010, the United States

Court of Appeals for the Federal Circuit held that plaintiffs Wyeth and Elan Pharma were

entitled to additional patent-term adjustments under 35 U.S.C. § 154(b) due to the USPTO's

delay in prosecuting their patent applications.  *See Wyeth & Elan Pharma Int'l Ltd. v. Kappos*,

Civil Action No. 07-01492 (JR), 591 F.3d 1364, 1366 (Fed. Cir. 2010) ("*Wyeth*").  Since then,

more than one-hundred and fifty (150) actions have been filed in this Court by patent holders

who had filed for reconsideration of their patent term adjustment ("PTA") determination within

180 days of the grant of their patent as provided by Section 154(b)(4)(A).

On November 9, 2010, *approximately ten months after the Wyeth decision and more than*

*two-and-a-half years after the grant of the patents-at-issue*, Daiichi filed its first Amended

Complaint in this civil action contesting the PTA determinations for the '014 patent and '205

patent under 35 U.S.C. § 154(b)(3).   Recognizing that more than 180 days had lapsed since the

USPTO's grant of their patents, Daiichi also sought to contest the PTA determinations for the

'014 and '205 patents under the Administrative Procedure Act (*i.e.*, 5 U.S.C. §§ 701-706).

Importantly, Daiichi failed to timely challenge the PTA determinations for the '014 and '205

patents in the first instance when they were issued in March and April 2008, respectively, in

either the USPTO (pursuant to Rule 1.705(d)) or this Court.  Accordingly, Daiichi fails to meet

the jurisdictional requirements of Section 154(b)(4)(A), and this Court should, therefore, deny

---

[1] The U.S. District Court for the Eastern District of Virginia now has jurisdiction over actions under 35 U.S.C. § 154(b) for complaints filed on or after September 16, 2011, as part of the 2011 America Invents Act.  Pub. L. 112-29 at § 9(a), 125 Stat. at 316.

its motion for summary judgment.   Finally, because no genuine issue of material fact exists as to

the application of equitable tolling in this case, the USPTO is entitled to summary judgment as a

matter of law.

## BACKGROUND

Patents issuing from applications filed after June 1995 have a term of 20 years from the

date the application is filed.  35 U.S.C. § 154(a)(2).  Because the term begins when the patent

application is filed, lengthy delays during examination reduce the effective term of the patent.

The Patent Statute, therefore, extends or adjusts the term of the patent to compensate for

examination delays beyond specified time limits.  35 U.S.C. § 154(b); *Wyeth,* 591 F.3d at 1366-

67.  When, however, applicants fail to meet the jurisdictional requirements of 35 U.S.C. § 154(b)

they are unable to obtain relief under the applicable statute.

**A.**     **Statute and USPTO Regulations Governing Patent Term Adjustments**

**1.**     **Procedures for Determining and Challenging PTA**

The procedures for determining a PTA are set forth in Section 154(b)(3), which provides

that "[t]he Director shall prescribe regulations establishing procedures for the application for and

determination of patent term adjustments under this section."  35 U.S.C. § 154(b)(3)(A).  The

USPTO makes an initial PTA determination prior to patent issue, and "transmit[s] a notice of

that determination with the written notice of allowance of the [patent] application under [35

U.S.C. § 151]."[2]  35 U.S.C. § 154(b)(3)(B)(i); 37 C.F.R. § 1.705(a).  The Patent Statute also

_____

[2] A Notice of Allowance notifies an applicant that his or her application is entitled to issue as a
patent, and specifies the issue fee due from the applicant.  37 C.F.R. § 1.311.  The applicant then
has three months to pay the issue fee.  Manual for Patent Examining Procedure ("MPEP")
§ 1306.

3

provides that the Director shall "provide the applicant one opportunity to request reconsideration of any patent term adjustment made by the Director."  35 U.S.C. § 154(b)(3)(B)(ii). Accordingly, the applicant may request reconsideration of the USPTO's initial PTA determination before paying the issue fee.  *Id.*; 37 C.F.R. § 1.705(b) [hereinafter "Rule 1.705(b) request for PTA reconsideration"].  The USPTO also makes a second PTA determination, which is  contingent on the time of the patent grant and includes any additional period of delay that is calculated using the date of patent grant.  This second PTA determination is calculated and provided first to the patent applicant in the "Issue Notification" document that also identifies when the patent grant date will be, and the USPTO again provides this PTA determination on the face of the issued patent.  The applicant may request reconsideration of the periods of delay included in the second PTA immediately, but no later than two months after the patent issues. *See* 37 C.F.R. § 1.705(d).  If the applicant files such a Rule 1.705(d) request for PTA reconsideration, it cannot raise issues that were raised, or could have been raised in an earlier Rule 1.705(b) request for reconsideration.  *See id.*  35 U.S.C. § 154(b)(3) also provides that the USPTO Director must "proceed to grant the patent after completion of the Director's determination of a patent term adjustment notwithstanding any appeal taken by the applicant of such determination." 35 U.S.C. § 154(b)(3)(D).

Finally, the Patent Statute also provides that an applicant may bring a civil action to appeal the PTA determination.  That provision places strict timing limits on any such judicial review, and dictates the specific forum in which judicial review must occur.  *See* 35 U.S.C. § 154(b)(4).  Of particular importance for the instant Motion, a civil action seeking judicial review of a PTA determination for a specific patent must be brought "*within 180 days* after the

4

grant of the patent." 35 U.S.C. § 154(b)(4)(A) (emphasis added). Section 154(b)(4)(A) further

provides that "Chapter 7 of title 5 [*i.e.*, 5 U.S.C. §§ 701-706, the "Judicial Review" provisions of

the Administrative Procedure Act] shall apply to such actions." 35 U.S.C. § 154(b)(4)(A).

## 2.        Types of PTA Delay

Section 154(b)(1) generally sets forth the events for which a patent term will be extended,

subject to limitations further described in Section 154(b)(2). Section 154(b)(1) is divided into

three subsections. The first subsection, Section 154(b)(1)(A), is commonly called "A Delay" and

states, *inter alia*, that the patent term will be extended one day for each day that the USPTO fails

to (1) provide a first Office action containing either a rejection, objection, or requirement

regarding the pending claims under section 132 or a notice of allowance of such claims within

fourteen months after the application was filed; (2) respond to a patent applicant's reply under

section 132 within four months after the date on which the reply was filed; or (3) issue a patent

within four months after the date on which the issue fee was paid. *See* 35 U.S.C. § 154(b)(1)(A).

This subsection encourages timely and prompt responses from the USPTO during examination.

The second subsection, Section 154(b)(1)(B), is commonly called "B Delay" and states

that (subject to certain enumerated exceptions) the patent term will be extended one day for each

day that the USPTO fails to issue the patent after the end of a three-year application pendency

period. *See* 35 U.S.C. § 154(b)(1)(B). This subsection specifically excludes from B Delay any

time consumed by, *inter alia*, (i) the new "continued examination" procedure, and (ii) an

interference proceeding, the imposition of a secrecy order, and appellate review by the Board of

Patent Appeals and Interferences ("Board") or a Federal court. *Id.*

The third subsection, Section 154(b)(1)(C), is commonly called "C Delay" and provides patent term adjustments for some of the types of delays excluded from the computation of B Delay. In particular, Part C provides that the patent term will be extended one day for each day of the pendency of an interference proceeding, a secrecy order, or appellate review by the Board or a Federal court. *See* 35 U.S.C. § 154(b)(1)(C).

Generally, to determine the amount of patent term adjustment that a patent should receive under Section 154(b), the USPTO will add the number of days of USPTO delay that accrued under Parts A, B, and C of Section 154(b)(1) and reduce it by the number of days set forth in the "Limitations" subsection of 35 U.S.C. § 154(b)(2). There are three broad categories of PTA limitations included in Section 154(b)(2). The first limitation instructs the USPTO to reduce the amount of PTA by the number of overlapping days among Parts A, B, and C to prevent double-counting the days. *See* 35 U.S.C. § 154(b)(2)(A); *Wyeth v. Kappos*, 591 F.3d 1364 (Fed. Cir. 2010)). The second limitation, which is found in Section 154(b)(2)(B), prevents the USPTO from providing any days of PTA beyond the patent term expiration specified in any disclaimer, including a terminal disclaimer. *See* 35 U.S.C. § 154(b)(2). The third limitation instructs the USPTO to reduce the PTA amount by the number of days of applicant delay that accrued under 35 U.S.C. § 154(b)(2)(C). *Id.*

## B. USPTO Terminal Disclaimer Practice

As explained in Plaintiff's opening summary judgment brief, the gravamen of its complaint relates to the PTA determinations provided by the USPTO in early 2008 for the '014 patent and the '205 patent. Pl.'s Br. at 4. As noted by the Plaintiff, the '135 patent is subject to a "terminal disclaimer," which disclaims the terminal part of the '135 patent that extends beyond

the expiration date of the earlier '014 and '205 patents. *Id.* Moreover, the '205 patent terminally disclaims any patent term that may extend beyond the expiration date of the '014 patent, and *vice versa*. ECF No. 11 at 7, ¶¶ 31, 33. In short, a terminal disclaimer is a statement filed with the USPTO that may cause the disclaimed patent to expire earlier than it otherwise would have – for example, by having the disclaimed patent expire at the same time as another earlier-expiring patent that is identified in the terminal disclosure statement.

A terminal disclaimer may be filed by a patent applicant to disclaim, or dedicate to the public, any terminal part of a patent that is to be granted by the USPTO. MPEP § 1490(II) (citing 37 CFR § 1.321(b)); *id.* at § 804.02(V).[3] As noted in the MPEP, the basis for the USPTO's terminal disclaimer practice is found in 35 U.S.C. § 253 and 37 CFR § 1.321. *See* MPEP § 1490. A terminal disclaimer may be required by the USPTO to overcome a particular type of rejection – namely, a non-statutory double patenting rejection – over claims in another patent. *See* MPEP § 804. The doctrine of double patenting seeks to prevent the unjustified extension of patent exclusivity beyond the term of a patent. *Id.* Double patenting results when the right to exclude granted by a first patent is unjustly extended by the grant of a later patent that is issued to a common inventor or common assignee/owner or that is subject to a joint research agreement. *Id.* Most often, non-statutory double patenting rejections are made when at least one currently-examined application claim is not patentably distinct from the earlier, reference claim(s) because the currently-examined application claim is either anticipated by, or would have been obvious over, the earlier reference claim(s). *See* MPEP § 804. A terminal

---

[3] A terminal disclaimer may also be filed by a patentee during a reexamination proceeding to overcome a non-statutory double patenting rejection raised therein. *See* 37 CFR §§ 1.321(c)-(d).

disclaimer cannot be limited to a specified claim or claims; it must operate on all claims in the
disclaimed patent. *Id.* at § 804.02(II).  While a terminal disclaimer may shorten the term of a
patent, it may not be used to extend patent term.  *See, e.g.*, MPEP § 1405.[4]

## STATEMENT OF MATERIAL FACTS

On March 11, 2008, the USPTO issued U.S. Patent No. 7,342,014 ("the '014 patent") to
Plaintiff, with 357 days of patent term adjustment ("PTA").  ECF No. 11 at 3, ¶ 10.  On April 29,
2008, the USPTO issued U.S. Patent No. 7,365,205 ("the '205 patent") to Plaintiff, with 504
days of patent term adjustment.  ECF No. 11 at 3, ¶ 9.  On August 18, 2009, the USPTO issued
U.S. Patent No. 7,576,135 ("the '135 patent") to Plaintiff, with 86 days of patent term
adjustment.  ECF No. 11 at 3, ¶ 11.  On February 12, 2010, Plaintiff timely requested
recalculation of the PTA determination for the '135 patent in view of *Wyeth* pursuant to the
Interim Rules published by the USPTO.  Pl.'s Br. at 3.  On the same day, Plaintiff timely filed its
original complaint in this action seeking only reconsideration of the PTA determination for the
'135 patent.  ECF No. 1.  On June 21, 2010, the USPTO issued its PTA reconsideration decision
and indicated that, pursuant to *Wyeth*, the recalculated amount of PTA for the '135 patent is 503
days.  *See* ECF No. 7.  On September 28, 2010, the USPTO issued a Certificate of Correction for

---

[4] Section 1405 of the MPEP states in relevant part:

> The maximum term of the original patent is fixed at the time the patent is granted.
> While the term may be subsequently shortened, *e.g.*, through the filing of a
> terminal disclaimer, it cannot be extended through the filing of a reissue.
> Accordingly, a deletion in a reissue application of an earlier-obtained benefit
> claim under 35 U.S.C. 120 will *not* operate to lengthen the term of the patent to be
> reissued.

8

the '135 patent stating that the Notice on the front page of the patent should read "Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 503 days." Exhibit 1.

The '014 patent is subject to a terminal disclaimer over the term of the '205 patent. *Id.* at 7, ¶ 33.  The '205 patent is subject to a terminal disclaimer over the term of the '014 patent. *Id.* at 7, ¶ 31.  The '135 is subject to a terminal disclaimer over the terms of the '014 patent and the '205 patent. *Id.* at 7, ¶ 35.  Plaintiff filed its terminal disclaimer for the '135 patent with the USPTO on August 4, 2008.  Exhibit 2.

37 C.F.R. § 1.705(d) provides a patentee with a deadline of two months from the patent issue date to file a request for the USPTO to reconsider its PTA determination for the patent-at-issue.  35 U.S.C. § 154(b)(4)(A) provides a patentee with a deadline of 180 days from the patent issue date to file a civil action to seek judicial review of the USPTO's PTA determination for the patent-at-issue.  The relevant deadlines by which Daiichi needed to challenge the PTA determinations of the '014 patent and '205 patent under Rule 1.705(d) and Section 154(b)(4)(A) are shown in the following chart:

| Patent No. | Issue date | Rule 1.705(d) 2-month deadline | § 154(b)(4)(A) 180-day deadline | Daiichi's first Rule 1.183 fililng |
|---|---|---|---|---|
| the '014 patent | Mar. 11, 2008 | May 12, 2008 | Sept. 8, 2008 | Feb. 2, 2009 |
| the '205 patent | Apr. 29, 2008 | June 30, 2008 | Oct. 27, 2008 | Feb. 2, 2009 |

Daiichi did not file a Rule 1.705(d) request for PTA reconsideration or a civil action under Section 154(b)(4)(A) seeking review of the PTA determinations during the required time periods.  Instead, on February 2, 2009 – almost a year after the '014 and '205 patents issued – Daiichi filed its first Rule 1.705(d) challenge to the PTA determinations for these patents along with a Rule 1.183 petition asking the USPTO to waive its 2-month Rule 1.705(d) deadline.  ECF No. 11 at 20, ¶ 101; *id.* at 9, ¶ 43.  On March 30, 2010, the USPTO denied Daiichi's Rule 1.183 petition regarding the '014 patent because the USPTO found that Daiichi's Rule 1.705(d) was untimely and that Daiichi had failed to demonstrate its untimeliness was due to an "extraordinary situation" as required by Rule 1.183.  ECF No. 11 at 20, ¶ 102; Exhibit 3 at 5.  Similarly, two weeks later on April 14, 2010, the USPTO denied Daiichi's Rule 1.183 petition regarding the '205 patent because the USPTO found that Daiichi's Rule 1.705(d) was untimely and that Daiichi had failed to demonstrate its untimeliness was due to an "extraordinary situation" as required by Rule 1.183.  ECF No. 11 at 10, ¶ 46; Exhibit 4 at 5.  Subsequently, Daiichi filed additional Rule 1.183 petitions seeking reconsideration of the USPTO's denial of the Daiichi's original Rule 1.183 petition, all of which the USPTO denied.

## LEGAL STANDARD

Patent term adjustment decisions of the USPTO are reviewed in accordance with the Administrative Procedure Act ("APA").  35 U.S.C. § 154(b)(4)(A); *see also Dickinson v. Zurko*, 527 U.S. 150, 165 (1999).  Under these circumstances "[t]he entire case on review is a question of law, and only a question of law," and can be resolved on the administrative record in the context of a motion for summary judgment.  *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); *see American Bioscience, Inc. v. Thompson*, 269 F.3d

1077, 1083-84 (D.C. Cir. 2001); *University Medical Center v. Shalala*, 173 F.3d 438, 440 n.3

(D.C.Cir. 1999).  In such record review cases, the district court generally does not resolve factual

issues or duplicate agency fact-finding efforts, but instead functions as an appellate court

addressing a legal issue. *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir.

1996).  For this reason, the normal standard of review for a summary judgment motion, which

requires a district court to decide whether there is any "genuine issue of material fact," *see* Fed.

R. Civ. P. 56(c), does not apply.  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C.

2006); *see* LCvR 7(h)(2) (statement of undisputed material facts not required for cases "in which

judicial review is based solely on the administrative record").  To the contrary, "the focal point

for judicial review should be the administrative record already in existence, not some new record

made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Summary

judgment, therefore, is the mechanism through which the Court decides whether as a matter of

law the agency action under review is supported by the administrative record.  *See Florida

Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is

to apply the appropriate APA standard of review . . . to the agency decision based on the record

the agency presents to the reviewing court.").

        Under this statutory provision, a court can only set aside legal actions of the USPTO if

they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A); *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

The scope of review, however, is "narrow," and "the court is not to substitute its judgment for

that of the agency." *Motor Vehicle Mfg.'s Assn. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29,

43 (1983).  The arbitrary and capricious standard is "[h]ighly deferential," and "presumes the validity of agency decisions."  *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000).

"If the statute is clear and unambiguous 'that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'"  *Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 368 (1986) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  Where a statute is silent or ambiguous on a particular issue, and an agency is authorized to promulgate regulations to implement the statute, a court must defer to the agency's reasonable interpretation of the statute.  *Chevron*, 467 U.S. at 842.

The USPTO's interpretation of its own regulations is also entitled to substantial deference.  *See Custom Computer Servs., Inc. v. Paychex Props., Inc.*, 337 F.3d 1334, 1336 (Fed. Cir. 2003) ("[T]he USPTO's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.") (citation & internal quotation marks omitted); *see also In re Morganroth*, 885 F.2d 843, 848 (Fed. Cir. 1989) (the USPTO's interpretation of "narrow technical and specialized statutory and regulatory provisions" is entitled to "considerable deference").  Indeed, this Court must "accord particular deference to an agency interpretation of longstanding duration."  *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 522, n.12 (1982) (citation & internal quotation marks omitted).  Finally, the USPTO's interpretation need not be the only possible construction in order to be upheld under the APA.  *See Chemical Mfrs. Assn. v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125 (1985).

**ARGUMENT**

I.    **DAIICHI IS BARRED FROM UNTIMELY SEEKING REVIEW OF THE USPTO'S PATENT TERM ADJUSTMENT DETERMINATIONS FOR THE '014 AND '205 PATENTS**

Daiichi failed to timely challenge the PTA determinations for the '014 patent and the '205 patent both before the USPTO and this Court when the patents-at-issue were granted in early 2008.  Now, Daiichi attempts to circumvent the narrowly-tailored judicial review provisions of Section 154(b)(4) and concoct a hybrid, bifurcated review system with different statutes of limitations and different venues in contravention of Congress's intent and basic tenets of judicial economy.  Daiichi's proposed review is at odds with the express language of 35 U.S.C. § 154 and the Court should, therefore, grant judgment in Defendant's favor.

A.    **35 U.S.C. § 154(b)(4)(A) is Jurisdictional.**

This Court lacks jurisdiction over Daiichi's First and Second Amended Complaints because they were not filed within 180 days after the grant of the '014 and '205 patents as required by the statute.  *See*  35 U.S.C. § 154; *John R. Sand & Gravel Co. v. United States*, 552 U.S. 131, 133-34 (2008) ("Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims . . . . As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional'") (internal citations omitted).  "The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority . . . ." *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 86 (D.D.C. 2007).  Indeed, the Court must presume that it lacks subject matter jurisdiction until Daiichi, as the party seeking to invoke the jurisdiction, establishes otherwise. *Kokkonen v.*

13

*Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *see also* Fed. R. Civ. P. 8(a)(1).

"A plaintiff bears the burden of establishing by a preponderance of the evidence that the Court

possesses jurisdiction." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland

Security*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007).  Accordingly, "federal courts are courts of

limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction."

*Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (internal quotations omitted).

   "It is a fundamental tenet of jurisprudence that a sovereign cannot be sued without its

consent." *Guthery v. U.S.*, 562 F. Supp. 2d 136, 139 (D.D.C. 2008) (citing *Block v. North

Dakota*, 461 U.S. 273 (1983)).  "Jurisdiction over any suit against the Government requires a

clear statement from the United States waiving sovereign immunity . . . together with a claim

falling within the terms of the waiver." *Cartwright Intern. Van Lines, Inc. v. Doan*, 525 F. Supp.

2d 187, 194 (D.D.C. 2007) (quoting *U.S. v. White Mountain Apache Tribe*, 537 U.S. 465, 472

(2003)) (internal quotations omitted).  "Even when the federal government does waive its

immunity from suit, limitations and conditions upon which the Government consents to be sued

must be strictly observed, and exceptions thereto are not to be implied." *Id.* (quoting *Lehman v.

Nakshian*, 453 U.S. 156, 161 (1981)) (internal quotations omitted).  Statutes which waive

sovereign immunity, therefore, must be strictly construed.  *See Trout v. Sec'y of the Navy*, 317

F.3d 286, 289 (D.C. Cir. 2003).

   "In private civil litigation, a motion 'to dismiss for lack of subject matter jurisdiction

cannot rest upon an assertion that an action is barred by the statute of limitations because the

expiration of the limitations period is an affirmative defense and not a bar to jurisdiction.'"

*West Virginia Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008)

14

(quoting *Felter v. Norton,* 412 F. Supp.2d 118, 122 (D.D.C. 2006)).  "But when a party seeks to

sue the United States pursuant to a waiver of sovereign immunity, the expiration of the

limitations period has traditionally 'been construed as a bar to jurisdiction.'" *Id.* (quoting *Felter*,

412 F. Supp. 2d at 122).  "Moreover, when a statute of limitations has been regarded as

jurisdictional, "it has acted as an absolute bar [that cannot] be overcome by the application of

judicially recognized exceptions . . . such as waiver, estoppel, equitable tolling [,] … fraudulent

concealment, the discovery rule, . . . and the continuing violations doctrine." *Id.* (quoting *Felter*,

412 F. Supp. 2d at 122).

      "The [Administrative Procedure Act ("APA")] provides for a limited waiver of sovereign

immunity for '[a] person suffering legal wrong because of agency action, or adversely affected

or aggrieved by agency action within the meaning of a relevant statute.'" *Fraternal Order of*

*Police v. Gates*, 562 F. Supp. 2d 7, 11 (D.D.C. 2008) (quoting 5 U.S.C. § 702).  "However, a

plaintiff may not rely on this waiver 'if any other statute that grants consent to suit expressly or

impliedly forbids the relief which is sought.'" *Id.* (quoting 5 U.S.C. § 702).

      Here, 35 U.S.C. § 154(b)(4)(A) provides a waiver of sovereign immunity that is subject

to a strict 180-day statute of limitations.  Although the PTA is reviewable under an APA

standard of review pursuant to 35 U.S.C § 154(b)(4)(A), the right of action created by Section

154(b)(4)(A) is contingent upon a timely suit being filed within the limitations period set forth in

the statute, as a waiver of sovereign immunity, which must be strictly construed.  Thus, 35

U.S.C. § 154(b)(4)(A) is a jurisdictional condition and serves as a proper basis to dismiss for

lack of jurisdiction over the subject matter.

As a limitation on the United States' waiver of sovereign immunity – and the ability to present a claim in federal district court – Section 154(b)(4)(A) is jurisdictional.  Indeed, the USPTO has consistently maintained, since the enactment of the American Inventor's Protection Act of 1999, that a civil action challenging the Director's patent term adjustment determination must be filed within 180 days of the grant of patent.  *See* 65 Fed. Reg. 56366, 56388 (Sept. 18, 2000) ("The Office is restricted by the provisions of 35 U.S.C. [§] 154(b)(4)(A) which provide that an applicant dissatisfied with a patent term adjustment determination has 180 days to file a civil action against the Office.").

In an attempt to save its claims, Daiichi cites to several cases that purportedly support its argument that Section 154(b)(4) lacks a jurisdictional requirement.  Pl.'s Br. at 25.   A review of the cases cited, however, demonstrates that each of them lend further support to the proposition that Section 154(b) is jurisdictional.

In *John R. Sand & Gravel Co. v. United States*, 552 U.S. 131 (2008), the Supreme Court held that 28 U.S.C. § 2501(a) contains the following *jurisdictional language*:  "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  552 U.S. at 132-34.  The statutory language of section 2501(a) is similar to 35 U.S.C. § 154(b)(4)(A).  Significantly, "within six years after such claim first accrues" (in section 2501) is structurally similar to the language of Section 154(b)(4)(A), which states that a PTA action must be brought "within 180 days after the grant of the patent."   In both cases, an event occurs (claim accrual or patent grant) and then a specified time period runs (six years or 180 days), after which any action is barred as

untimely.  Thus, under the reasoning articulated in *John R. Sand*, Section 154(b)(4)(A) is a jurisdictional statute barring this action.

Likewise, in *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987), the Court held that 28 U.S.C. § 2401(a) contains the following *jurisdictional language*:  "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  824 F.2d at 55.  As with § 2501(a), *supra*, § 2401(a) is very much like 35 U.S.C. § 154(b)(4)(A).  That is, the "within six years after the right of action first accrues" of Section 2401(a) is structurally similar to the "within 180 days after the grant of the patent" language of Section 154(b)(4)(A).  *Spannaus*, therefore, also supports Defendant's contention that Section 154(b)(4)(A) is a jurisdictional statute, which bars this action.  *See also In re Sealed Case*, 624 F.3d 482, 488 (D.C. Cir. 2010) (180-day time limit in Fed. R. App. P. 4(a)(6) was not relaxed because it was jurisdictional).

Similarly, in *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), the Supreme Court stated that three statutory subsections, 28 U.S.C. §§ 2253(a), (b), and (c)(1), contain "unambiguous jurisdictional terms."  132 S. Ct. at 649.  Like Sections 2253(a), (b), and (c)(1), 35 U.S.C. § 154(b)(4)(A) defines or limits the scope of judicial review.  Pursuant to Section 154(b)(4)(A), a patent is granted and the patentee has 180 days to file a civil action in a specified forum.  The statute expressly connects the PTA to the patent grant date and contemplates that an appeal of such a PTA determination may be initiated before the patent issues.  The statute also places strict timing limits on any judicial review and dictates the specific forum in which that judicial review must occur.  It is in the interest of the patentee and any third parties interested in using the particular patented technology that a patent's term be established as soon as possible.  Therefore,

17

a fixed 180-day period to seek judicial review of a PTA determination brings finality to the process, while still giving the patentee an opportunity to seek modification of the determination. Thus, under *Gonzalez*, Section 154(b)(4)(A) is properly construed as a jurisdictional statute barring this action.[5]

The Supreme Court's decision in *Henderson v. Shinseki*, 131 S.Ct. 1197 (2011), relied on by Daiichi [*see* Pl.'s Br. at 24-25], also supports the proposition that section 154(b) is jurisdictional. Specifically, the Court noted that the reviewing tribunal was "an Article I tribunal" which had a claim processing time of 120 days for United States veterans to proceed from an agency decision. *Id.* at 1204-5. In sharp contrast, Section 154(b)(4)(A) – which is titled "Appeal of a patent term adjustment determination" – concerns an appeal from an agency decision to an *Article III Court*, within 180 days, which is to apply the "Judicial Review" provisions (*i.e.*, Chapter 7 of Title 5) to the court proceeding. 35 U.S.C. § 154(b)(4)(A), sentences one and two. Further, the Court in *Henderson* highlighted "the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims." *Id.* at 1205 (quoting *United States v. Oregon*, 366 U.S. 643, 647 (1961) ("The solicitude of Congress for veterans is of long standing.")). Thus, the veterans' statutory scheme weighed heavily in the Supreme Court's determination favoring tolling for veterans matters. The PTA

---

[5] Daiichi also cites to *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), in support for its statement that the language contained in 28 U.S.C. § 2107(a) is not jurisdictional. However, the *Griggs* decision is directed to the version of Rule 4(a)(4) of the Federal Rules of Appellate Procedure that was amended in 1979 and later abrogated by further amendment of FRAP 4(a)(4) in 1993. *See, e.g.*, *Leader Nat'l Ins. Co. v. Indus. Indem. Ins. Co.*, 19 F.3d 444, 445 (9th Cir. 1994). Nevertheless, the *Griggs* decision is instructional because it confirmed that the "requirement of a *timely* notice of appeal is 'mandatory and jurisdictional.'" *Griggs*, 459 U.S. at 61 (emphasis added). Here, Daiichi failed to timely challenge the PTA determinations at issue in either the USPTO or this Court.

judicial review scheme, however, is entirely different from the administrative veterans tribunal scheme at issue in *Henderson*.  Therefore, *Henderson* does not alter the jurisdictional nature of Section 154(b)(4)(A).

The operative facts are undisputed in this case.  The '014 patent issued on March 11, 2008.  Thus, the Patent Statute required Daiichi to file a civil action seeking review of the PTA determination for the '014 patent within 180 days of March 11, 2008 – namely, by September 8, 2008.  Moreover, if Daiichi wanted to file a timely Rule 1.705(d) petition to challenge the PTA determination of the '014 patent before the USPTO, Daiichi had two months (*i.e.*, by May 12, 2008) to do so under USPTO regulations.  *See* 37 CFR § 1.705(d).

The '205 patent issued on April 29, 2008.  Therefore, the Patent Statute required Daiichi to file a civil action seeking review of the PTA determination of the '014 patent within 180 days of April 29, 2008 – namely, by October 27, 2008.  Similarly, if Daiichi wanted to file a timely Rule 1.705(d) petition to challenge the PTA determination of the '205 patent before the USPTO, Daiichi had two months (*i.e.*, by June 30, 2008) to do so under USPTO regulations.  *See* 37 CFR § 1.705(d).

Because Daiichi did not file the instant First Amended Complaint until November 9, 2010—more than two-and-a-half years after the dates of patent issuance—Daiichi's civil action is now time barred.

**B.     Congress's Creation of a Specific Judicial Review Mechanism for Patent Term Adjustment Determinations Precludes Daiichi's Attempt to Access Generic APA Review**

Daiichi now seeks to excuse its failure to file timely petitions for PTA reconsideration for the '014 and '205 patents with the USPTO and its failure to file a timely civil action with this

Court by arguing that it should be immune from the 180-day timing requirement of Section 154(b)(4)(A) because it is only challenging selected portions of the USPTO's PTA determination for the patents-at-issue.  Daiichi's argument is without merit.

      1.      **Congress's Narrowly-Tailored Timing and Exclusive Forum Provisions in Section 154(b)(4)(A) Preclude Application of Generic APA Review**

The threshold issue presented in this action – whether plaintiff can avoid the stringent limitations that Congress placed on judicial review of a particular agency action by resorting instead to a more general provision for judicial review such as the APA – is hardly new.  Indeed, the Supreme Court has repeatedly rejected similar attempts by litigants to circumvent clear statutes of limitations in claims against the United States and its agencies by seeking refuge in general remedies such as the APA or the Mandamus Act.  Once distilled to its essence, this authority stands for the well-established principle "that a precisely drawn, detailed statute pre-empts more general remedies."  *Brown v. GSA*, 425 U.S. 820, 834 (1976).[6]

---

[6] The same result – under virtually identical reasoning as provided below – would obtain through the application of the APA's own statutory preclusion provision.  Although "[t]he APA confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' [it] withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review.'"  *Block v. Comm. Nut. Inst.*, 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. §§ 701(a)(1); 702).  The Supreme Court framed the inquiry as follows:

> Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.  Therefore, we must examine this statutory scheme "to determine whether Congress nevertheless foreclosed review to the class to which the [plaintiff] belon[gs]."

Emblematic of this authority – especially with respect to a clear statute of limitations – is *Block v. North Dakota*, 461 U.S. 273 (1983).  In *Block*, the State of North Dakota sought to circumvent application of the twelve year statute of limitations contained within the Quiet Title Act ("QTA") by filing more generic claims, including an APA cause of action.  *See id.* at 277-78.  The Supreme Court rejected North Dakota's effort, stating that it "need not be detained long by [the State's] contention that it can avoid the QTA's statute of limitations and other restrictions by the device of an officer's suit."  *Id.* at 284.  Citing to the pre-emption principle identified above, the *Block* Court's holding was unequivocal:

> If North Dakota's position were correct, all of the carefully crafted provisions of the QTA deemed necessary for the protection of the national public interest could be averted.  "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading."  . . .  [T]he QTA's 12-year statute of limitations . . . could be avoided, and, contrary to the wish of Congress, an unlimited number of suits involving stale claims might be instituted.

*Id.* at 284-85 (quoting Brown, 425 U.S. at 833); *see also Califano v. Sanders*, 430 U.S. 99, 102 (1977) (refusing to allow individual to avoid application of 30-day limitations period on judicial review of a denial of Social Security benefits by seeking APA review of the agency's later failure to reopen its decision).

---

*Id.* at 345-46 (citations omitted) (quoting *Barlow v. Collins*, 397 U.S. 159, 173 (1970) (Brennan, J., concurring)).  And as the *Community Nutrition* Court made clear, one analyzes the question of whether Congress intended to foreclose judicial review of a given agency action through "inferences of intent drawn from the statutory scheme *as a whole*."  *Id.* at 349 (emphasis added).  Where such "congressional intent is 'fairly discernible' in the detail of the legislative scheme, APA review is not available."  *Id.* at 351.

The Supreme Court has reaffirmed these holdings in more recent years.  For instance, in *EC Term of Years Trust v. United States*, 550 U.S. 429 (2007), the Court explained that the preemption doctrine identified in *Brown* and *Block* applies "when resort to a general remedy would effectively extend the limitations period for the specific one."  *Id.* at 434.  And for this reason, the Court could not accept the position that one could proceed, under a more generalized remedy offering a lengthier statute of limitations, with the "same challenge" that would be barred by virtue of the limitations period Congress placed into the specific remedy it created for that very challenge.  *See id.* at 435; *see also Hinck v. United States*, 550 U.S. 501, 506 (2007).

Here, however, Congress has not only instituted a clear statute of limitations for challenges to USPTO patent term adjustment determinations, but it has also mandated that all such challenges be filed in a particular forum – the United States District Court for the District of Columbia.[7]  And the Federal Circuit has applied the very principles discussed above to virtually identical limitations found in another provision of the Patent Act.  Much like the specific judicial review mechanism contained in § 154, Congress provided a specific remedy – with specific limitations – for those seeking judicial review of the USPTO's decisions regarding admission to, and suspension or expulsion from, the "Patent Bar."  Pursuant to the Patent Act, an individual seeking such judicial review was required – before Congress promulgated the America Invents Act – to file his or her action in the United States District Court for the District of Columbia,

---

[7] As noted earlier, the AIA changed the forum in which civil actions challenging a PTA determination under Section 154(b)(4)(A) from the United States District Court for the District of Columbia to the United States District Court for the Eastern District of Virginia for those actions brought on or after September 16, 2011.  *See supra* n.1.  Although the forum for such civil actions changed, Congress again expressed its intent to craft a pre-emptive, narrowly-tailored judicial review requirement by selecting a single, exclusive forum in which these actions must be brought, which is contrary to the general forum provisions in the APA.

"under such conditions and upon such proceedings as it by its rules determines." *See* 35 U.S.C. § 32.[8]  The District of Columbia court had, by rule, required an individual seeking review of the USPTO's decision to file his or action within thirty days.  *See Franchi v. Manbeck*, 972 F.2d 1283, 1288 & n.7 (Fed. Cir. 1992) (quoting D.C. CT. R. ANN. 213).  In *Franchi*, the Federal Circuit rejected an individual's attempt to evade these limitations by filing a general mandamus action in another district court beyond the thirty-day limit:

> When Congress provides "an orderly administrative mechanism" for review of agency action, that mechanism is to be respected. . . . Franchi's Connecticut action can similarly be viewed as an attempt to subvert the "orderly administrative mechanism" for review of the [USPTO's] decision under 35 U.S.C. § 32. . . . This Court will not aid an apparent attempt to avoid the deadlines imposed by the District of Columbia court, to whose discretion Congress delegated the authority to impose such deadlines.

*Id.* at 1288-89 (quoting *Califano*, 430 U.S. at 102).

And so it is here.  Congress has created a particular system to govern patent term adjustment determinations, and in so doing, has melded both agency and judicial review into its comprehensive and "orderly administrative scheme."  That very statutory scheme explicitly creates a cause of action for Article III review of USPTO patent term adjustment determinations – something that the Supreme Court has held is *alone* sufficient to preclude access to other general remedies.  *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005) ("The provision of an express, private right of redress in the statute itself is ordinarily an indication that

---

[8] Further demonstrating the identity between § 32 and § 154 for purposes of the threshold issue raised in this motion, the AIA also alters the exclusive forum provision in § 32 from the District of Columbia to the Eastern District of Virginia for all cases filed after September 16, 2011.  *See* Pub. L. 112-29, § 9(a), 125 Stat. at 316.

Congress did not intend to leave open a more expansive remedy under § 1983.").  On that reasoning alone, this Court should grant Defendant's cross-motion for summary judgment.

But the evidence of congressional intent to pre-empt generic APA review of USPTO's patent term adjustment decisions goes far beyond the mere inclusion of a specific judicial review mechanism in the statute itself.  First, and most significantly, are the extremely specific limitations on the waiver of the United States' sovereign immunity (including a stringent statute of limitations and a restriction on the exclusive Article III forum that would engage in judicial review of those types of agency decisions) that Congress placed into § 154(b)(4)(A) itself.  These limitations are identical to those found in 35 U.S.C. § 32, and as such, the Federal Circuit's decision in *Franchi* warrants the grant of Defendant's cross-motion for summary judgment.

Even outside of *Franchi*, however, the reasoning of the Supreme Court's extensive jurisprudence on this topic is equally applicable here – it is "difficult to ascribe to Congress," *Brown*, 425 U.S. at 834, the intent to place specific limitations into a statutory cause of action, and at the same time allow an entity such as plaintiff to "effortlessly evade" those same restrictions, *Term of Years*, 550 U.S. at 434, merely by changing the statutory premise of its claim.  *See Brown*, 425 U.S. at 834 ("Under the petitioner's theory, by perverse operation of a type of Gresham's law, [the statutory cause of action], with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible.").  In other words, the limitations that Congress placed into § 154(b)(4)(A) which would be rendered all but "nugatory," *Bloch*, 461 U.S. at 285, if plaintiff were allowed to utilize the generic APA remedy here, because Congress's carefully-constructed scheme (including its statute of limitations and exclusive forum

24

provisions) would be nothing more than a matter of election by each individual litigant – who could file several *years* after the patent issued and in whichever judicial district they were domiciled.

Even were this not enough, however, other clear indications of Congress's intent abound. Most significantly in this regard is Congress's express *incorporation* of the APA itself *into* the specific judicial review mechanism found in § 154.  *See* 35 U.S.C. § 154(b)(4)(A).  If Congress wanted to provide applicants such as plaintiff access to the generic APA remedy (without the overlay of the specific limitations found in § 154), it is hard to imagine why it would have mandated that the very judicial review it authorized under § 154 must proceed under the APA. *See id* (stating "Chapter 7 of title 5 shall apply to such action").

In the end, Congress placed a specific statute of limitations and an exclusive forum provision into the judicial review mechanism found in § 154(b)(4)(A) for a reason.  *Cf. In re APA Trans. Corp. Consol. Litig.*, 541 F.3d 233, 249 (3d Cir. 2008) ("We must assume that Congress included the word [] in the statute for a reason.").  This Court – as both the Supreme Court and the Federal Circuit have held on countless occasions – should not allow plaintiff to ignore Congress's undeniable intent in order to excuse its failure to obtain judicial review in a timely fashion.

> **2.      Daiichi's Attempt to Carve Out Certain Types of PTA Review from the Judicial Review Mechanism of Section 154(b)(4)(A) Is Unwarranted and Should Be Rejected by this Court**

As an initial matter, Daiichi briefly acknowledges [*see* Pl.'s Br. at 16 n.3] that a sister district court in the Eastern District of Virginia (which, as noted above, is the exclusive forum for these PTA challenges as of September 16, 2011) has reviewed and answered the very question

presented by Daiichi in this case – namely, whether a reviewing court should bifurcate the type of judicial review available under Section 154(b)(4)(A) based on the timing and type of PTA delay included in the PTA determination that is being challenged by the patentee – and the court held that it should not.  *See Janssen Pharmaceutica, N.V. v. Kappos*, 844 F. Supp. 2d 707 (E.D.Va. 2012).  In particular, the *Janssen* court rejected Daiichi's current position and held that "the USPTO's determination as to the appropriate amount of PTA–whether made pursuant to the mandatory pre-issuance procedures [of Section 154(b)(3)(B)] or optional post-issuance review–is a single question subject to the forum and timing limitations of § 154(b)(4)(A)."  *Janssen*, 844 F. Supp. 2d at 713.  The *Janssen* court concluded that "*any challenge* to a PTA determination is governed by § 154(b)(4)(A)."  *Id.* (emphasis added).  Although the *Janssen* decision is not binding on this Court, the USPTO submits that the *Janssen* court properly construed the language of Section 154(b)(4)(A) and PTA Statute as a whole and correctly concluded that challenges to PTA determinations – whether  provided with the Notice of Allowance, Issue Notification, or on the face of the patent – are subject to the timing and forum requirements of Section 154(b)(4)(A). The USPTO further respectfully posits that the *Janssen* court's decision effectuates Congress's clear intent, as shown above, rather than act as a substitute for Congress's intent as suggested by Daiichi.  *See* Pl.'s Br. at 16 n.3.

In this case, Daiichi argues that the judicial review mechanism that Congress created in § 154(b)(4)(A) only authorizes review of the PTA determination that the USPTO renders *before* the patent in question issues when the Notice of Allowance is provided.  Pl.'s Br. at 12-18.  In particular, Daiichi argues that, based on its interpretation of the "plain meaning" of Section 154(b)(3) and (b)(4), only judicial challenges to the PTA determinations delivered with the Notice

of Allowance pursuant to Section 154(b)(3)(B)(i) are subject to the 180-day limitation set forth in Section 154(b)(4)(A).  Pl.'s Br. at 12-14.  However, a more exacting examination of the statutory language demonstrates both why the USPTO's position is correct and Daiichi is incorrect, under the "plain meaning" rubric.

First, Daiichi correctly notes that Section 154(b)(4)(A) states that "[a]n applicant dissatisfied with *a determination made by the Director under paragraph (3)* shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent."  Pl.'s Br. at 12 (emphasis in Plaintiff's brief).  However, Daiichi mistakenly argues that "[t]he only 'determination' specified in paragraph (3) is that in subparagraph B[(i)] to be provided along with the 'written notice of allowance,' and, therefore, the unambiguous interpretation of Section 154(b)(4) is that it relates solely to the subparagraph B determination provided with the notice of allowance."  *Id.* at 13. Daiichi's argument ignores the other plain language in Sections 154(b)(3)(A) and 154(b)(3)(B)(ii) that refer to PTA determinations beyond the PTA determination to be transmitted with the Notice of Allowance, which is set forth in Section 154(b)(3)(B)(i).

In Section 154(b)(3)(A), Congress expressly empowered the Director to establish regulations for the "determination of patent term adjustments under this subsection."[9]  The Director established such PTA regulations through a public notice-and-comment period that concluded with the publication of final PTA rules in 2000.  *See* 65 Fed. Reg. 56366 (final rules)

---

[9] Notably, the plain language of this part of the statute does not limit the type of PTA determination to that which is set forth later in section 154(b)(3)(B)(i).

(Sept. 18, 2000).[10]  These PTA rules include Rule 1.705 (codified at 37 C.F.R. § 1.705) that

provides for two related PTA determinations: a first PTA determination that is transmitted with

the Notice of Allowance (*see* 37 C.F.R. § 1.705(a)) and a second PTA determination that is

revised as needed and printed on the face of the patent (*see id.* at § 1.705(d)).  Once the issue date

for a patent is assigned, the USPTO revisits its original PTA determination and revises the PTA

determination as may be required – *e.g.*, to include PTA, such as B Delay, that is calculated using

the patent's issue date – and it is the result of this second PTA determination that is indicated on

the face of the patent.  *See id.* at § 1.705(d).  The USPTO provides the result of this "revisited"

PTA determination – whether it be the same as the original PTA determination or revised – in an

Issue Notification document that is mailed to the applicant approximately two weeks before the

issue date of the patent and then again on the front page of the patent.  *See* 65 Fed. Reg. at 56388.

Thus, as instructed by Congress in Section 154(b)(3)(A), the USPTO established regulations to

provide a determination of a complete PTA for a given patent, which embodies two related PTA

determinations as described above.

   In Section 154(b)(3)(B)(ii), Congress further indicated that Section 154(b)(3)

encompasses more than the PTA determination mentioned in Section 154(b)(3)(B)(i) by

instructing the Director to "provide the applicant one opportunity to request reconsideration of

*any patent term adjustment determination* made by the Director."  35 U.S.C. § 154(b)(3)(B)(ii)

(emphasis added).  Notably, Congress did not limit this language to the particular type of PTA

determination listed immediately above in Section 154(b)(3)(B)(i), but rather, Congress used the

---

[10] PTA rule 1.705(d)  was later amended in 2004, *see* 69 Fed. Reg. 21704, 21706 (Apr. 22, 2004),
to extend the deadline and allow patentees two months to file any Rule 1.705(d) challenge with
the USPTO to seek PTA reconsideration thereunder.

broad and non-limiting modifier "any" here.  The inclusion of the adjective "any" indicates

Congress's intent to broadly include all types of PTA determinations established by the Director

in furtherance of Section 154(b)(3)(A) and militates against a narrow reading of the statute, as

proffered by Daiichi.  *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) (holding that, when

interpreting a statute, "the word 'any' has an expansive meaning"); *In re Alappat*, 33 F.3d 1526,

1542 (Fed. Cir. 1994) (en banc), *abrogated on other grounds by In re Bilski*, 545 F.3d 94 (Fed.

Cir. 2008) ("The use of the expansive term 'any' … represents Congress's intent not to place any

restrictions … beyond those specifically recited."); *accord New York v. E.P.A.*, 443 F.3d 880, 889

(D.C. Cir. 2006) (holding "Congress's use of the word 'any' indicates the intent to cover all of the

ordinary meanings of the phrase…").

Congress's use of the broad term "any" in Section 154(b)(3)(B)(ii) instead of limiting it to

the type of PTA determination in the immediately preceding section carries particular weight in

support of USPTO's interpretation.  As explained by the Supreme Court, "where Congress

includes particular language in one section of the statute but omits it in another section of the

same act, it is generally presumed that Congress acts intentionally and purposely in the disparate

inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987).  This

presumption is particularly strong here because "'the two [provisions] are interrelated and closely

positioned, both in fact being parts of' the same statutory scheme." *Doe v. National Board of

Medical Examiners*, 199 F.3d 146, 155 (3rd Cir. 1999) (quoting *HCSC-Laundry v. United States*,

450 U.S. 1, 6 (1981) (per curiam)).

Second, Daiichi's interpretation eschews the plain language and improperly narrows the

statutory language of Section 154(b)(4)(A).  In particular, Daiichi rewrites the language of

Section 154(b)(4)(A) to read "An applicant dissatisfied with a determination made by the Director under *subparagraph (3)(B)(i)* shall ..." and ignores the actual broader language of "... under *paragraph (3)* ..." that exists in the statute.  As shown above, the entirety of "paragraph (3)" encompasses more than just the PTA determination set forth in subparagraph 154(b)(3)(B)(i); it also includes all PTA determinations established by the Director as instructed in Section 154(b)(3)(A) as well as the broad recitation of "*any*" PTA determination in subparagraph 154(b)(3)(B)(ii).  Daiichi's attempts to rewrite the statute in such a way renders these parts of the statute superfluous, is contrary to well-settled cannons of statutory interpretation, and should be rejected by this Court.  *See, e.g., Babbitt v. Sweet Home Chapter*, 515 U.S. 687, 698 (1995) (explaining that canons of construction require a court to avoid interpreting statutory language so as to render language meaningless).

Moreover, Daiichi's arguments fail to answer the true statutory question before this Court – whether Congress's express creation of a limited judicial review mechanism for PTA determinations in § 154(b)(4)(A) precludes separate resort to the APA to obtain judicial review of the *very same question* (*i.e.*, the number of days of PTA to which the '014 and '205 patents are entitled).  Plaintiff's attempt to draw a bright line and bifurcate the judicial review provisions of the PTA Statute so that only the PTA determination made before the Notice of Allowance is subject to the 180-day time and exclusive forum limitations of Section 154(b)(4)(A) but the PTA determination typically made shortly after[11] the Notice of Allowance is exempt from such

---

[11] All PTA-related issues – including the date on which the patent will actually issue, as necessary to calculate so-called "B delay," *see* 35 U.S.C. § 154(b)(1)(B) – are defined and concluded as of the date of the "Issue Notification," which occurs prior to the patent grant itself and identifies the USPTO's final PTA determination for the patentee.  The Issue Notification is typically provided

limitations is contrary to both the plain meaning of the statute (as explained *supra*) and the operation of the PTA Statute.  Indeed, one need look no further than Daiichi's own attempts to support its fractured reading of the statute to see the shortcomings in Plaintiff's interpretation.

At bottom, Daiichi argues that its bifurcated approach is correct because the PTA determination provided in Section 154(b)(3)(B)(i) with the Notice of Allowance and the PTA determination provided on the face of the patent by the USPTO "involve different PTA determinations."  Pl.'s Br. at 16.  Specifically, Daiichi notes that the PTA determination transmitted with the Notice of Allowance only reflects A Delay and does not contain any B Delay calculations.  *Id.* at 16-17.  Daiichi also notes that the B Delay (and, thus, any potential overlap between the A Delay and B Delay periods) cannot be, and are not, determined until the issue date of the patent is assigned – *i.e.,* when the Issue Notification is provided to the applicant.  *Id.* at 17.  While Daiichi is correct about these particular points, they do not justify the bifurcated judicial review scheme it now suggests.

First, as explained above, the plain language of the Section 154(b)(3) is broader than Daiichi argues and encompasses the PTA determinations made by the USPTO both in the Notice of Allowance and on the face of the patent; thus, Daiichi's attempt to parse the statutory section in such a way cannot prevail.  Next, by the plain language of the PTA Statute, some A-Delay PTA determinations also are calculated when the issue date of the patent is assigned:

> if the issue of an original patent is delayed due to the failure of the Patent and
> Trademark Office to–

---

to the applicant approximately two weeks before the application issues as a patent.  MPEP § 1309.  The Issue Notifications for the '014 patent and the '205 patent are attached collectively as Exhibit 5.

* * *

> (iv) *issue a patent* within 4 months after the date on which the issue fee was paid under section 151 and all outstanding requirements were satisfied,

the term of the patent shall be extended 1 day for each day after the end of the period specified in clause (i), (ii), (iii), or (iv), as the case may be, until the action described in such clause is taken.

35 U.S.C. § 154(b)(1)(A) (emphasis added).  Thus, the operation of the statute itself weighs against Daiichi's support for its proposed bifurcated scheme.

Indeed, Daiichi fails to provide a persuasive rationale as to why Congress would impose rather narrow limitations on its specific statutory judicial review mechanism (*i.e.*, § 154(b)(4)(A)) when it simultaneously wanted to allow a patentee to seek generic APA review of the *very same question* (*i.e.*, the number of days of PTA to which the '014 and '205 patents are entitled) without *any* of those same restrictions.  As one example – a provision of the relevant statute that plaintiff completely ignores – Congress expressly mandated in § 154(b)(4)(A) that judicial review of the USPTO's PTA determinations be had (at the time that plaintiff initiated *this* civil action) in the United States District Court for the District of Columbia, presumably to channel all judicial review of such issues to a single tribunal in the interest of fostering uniformity.  It strains credulity to suggest that Congress wanted patent applicants themselves to prevent the realization of this very uniformity merely by seeking review of a subset of the total PTA determination and avoid § 154(d)(4)(B) entirely in favor of the generic review provisions of the APA and, therefore, vest venue in whatever district the patentee resides.  *See* 28 U.S.C. § 1391(e).[12]

---

[12] Of course, the very same can be said about the specific limitations period (*i.e.*, 180 days from the grant of the patent) that Congress placed into the specific judicial review mechanism of §

32

In sum, Daiichi's argument is premised on the theory that the USPTO's pre-Notice of Allowance PTA determination and its post-Notice of Allowance PTA determination are somehow different decisions on different topics. And that is the ultimate folly in plaintiff's reasoning. Both decisions, albeit occurring at slightly different times in the process, ask *the very same* question: *How many days of PTA should the particular patent receive?* Once properly framed, it is hard to conceive of why Congress would have sought to allow two separate avenues of judicial review of the very same question, especially when the specific avenue that Congress placed into the very statute governing PTA itself contains rather precise and rigid limitations.

### II.     Even if the Court Determines That Section 154(b)(4)(A) Is Not Jurisdictional, Equitable Tolling Does Not Apply to This Case.

It is well settled that the doctrine of equitable tolling is not available to litigants when a statutory limitations period is jurisdictional. *See, e.g., John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). Even if equitable tolling were available, however, Daiichi cannot make the necessary showing to invoke the "extraordinary remedy" of equitable tolling. *See Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011); *Martinez v. United States*, 333 F.3d 1295,

---

154(b)(4)(A). Again, Congress presumably eschewed the *six year* limitations period applicable to generic APA review, *see* 28 U.S.C. § 2401(a), to encourage expedited judicial review. As the Supreme Court itself has held in this very regard:

> Enforcement of [47 U.S.C.] § 332(c)(7) through § 1983 [a general remedy] would distort the scheme of expedited judicial review and limited remedies created by § 332(c)(7)(B)(v). We therefore hold that the TCA – by providing a judicial remedy different from § 1983 in § 332(c)(7) itself – precluded resort to § 1983.

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005).

1318 (Fed. Cir. 2003) (en banc) (eschewing decision on "whether equitable tolling is generally

available" because litigant could not demonstrate entitlement to equitable tolling in any event).

As an initial matter, it is important to delineate the stringent limits that the courts have

placed upon the application of the equitable tolling doctrine.  The Supreme Court has held that the

doctrine is only to be applied "sparingly," in those situations in which "the claimant has actively

pursued his judicial remedies by filing a defective pleading during the statutory period, or where

the complainant has been induced or tricked by his adversary's misconduct into allowing the

filing deadline to pass."  *Irwin v. Dep't of Veterans Admin.*, 498 U.S. 89, 96 (1990) (footnotes

omitted); *see also Martinez*, 333 F.3d at 1318.  "Generally, a litigant seeking equitable tolling

bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S.

408, 418 (2005).

As the Fourth Circuit has cogently observed, these strict limits on the doctrine are an

absolute necessity:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations
> must be guarded and infrequent, lest circumstances of individualized hardship
> supplant the rules of clearly drafted statutes.  To apply equity generously would
> loose the rule of law to whims about the adequacy of excuses, divergent responses
> to claims of hardship, and subjective notions of fair accommodation.  We believe,
> therefore, that any resort to equity must be reserved for those rare instances where
> – due to circumstances external to the party's own conduct – it would be
> unconscionable to enforce the limitation period against the party and gross
> injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  It is for this reason that courts have

repeatedly required the existence of "extraordinary circumstances . . . beyond [the plaintiff's]

control or external to his own conduct" to invoke equitable tolling. *Rouse v. Lee*, 339 F.3d 238,

246 (4th Cir. 2003); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam).

These strict limits also must be applied by a court when a party claims "justifiable reliance" on

the advice of a governmental official – as Daiichi does here [*see* Pl.'s Br. at 28-31]. *See Turner v.

District of Columbia Bd. of Election & Ethics*, 183 F. Supp. 2d 22, 28-29 (D.D.C. 2001) (holding

that equitable tolling did not apply to excuse party's untimely filing).

### A.    Daiichi Did Not Pursue Its Rights Diligently.

In the instant case, Daiichi cannot demonstrate that it "pursu[ed] [its] rights diligently,"

which is necessary to invoke equitable tolling. *Pace*, 544 U.S. at 418.  At the time Daiichi

received notice of the USPTO's determination regarding the amount of  B-Delay and PTA

overlap for the '014 and '205 patents, Daiichi made *no* attempt to challenge those determinations.

In fact, Daiichi took no action whatsoever for almost a year after the patents issued, knowing – as

did all other similarly situated patent owners – that Rule 1.705(d) required the filing of a request

for PTA reconsideration within two months of patent issuance and Section 154(b)(4)(A) required

the filing of a judicial complaint within 180 days of patent issuance.[13]  The record demonstrates

that Daiichi failed to timely challenge its PTA determinations following the grant of its '014

patent on March 11, 2008, and its '205 patent on April 29, 2008, because Daiichi failed to file

either (1) a Rule 1.705(d) request for reconsideration within two months of patent issuance (*i.e.*,

by May 11, 2008 or June 29, 2008 (respectively)), or (2) a complaint seeking judicial review of

---

[13] Indeed, Daiichi itself confirmed its knowledge of the deadlines when it filed its Rule 1.183 petition asking the USPTO to waive *ex post facto* the USPTO's two-month filing deadline under Rule 1.705(d) and reconsider the PTA determinations for the '014 and '205 patents.

the PTA determinations with 180 days of patent issuance (*i.e.*, by September 8, 2008 or October 27, 2008 (respectively)).  Instead, Daiichi waited almost a year after the '014 and '205 patents issued – *i.e.*, until February 2, 2009 – to seek reconsideration of their PTA determinations by filing a Rule 1.183 petition with the USPTO that requested the USPTO to waive Rule 1.705(d)'s two-month deadline and to belatedly reconsider the PTA determinations for the '014 and '205 patents.

Daiichi argues that it was "diligent" for purposes of applying equitable tolling in this case because it filed its Rule 1.183 petition within 180 days of this Court's September 30, 2008 *Wyeth* decision[14] which first held that the USPTO's method of calculating the overlap periods for PTA was improper under the PTA Statute.  *See* Pl.'s Br. at 29-30.  Daiichi's argument must fail, because the Federal Circuit unequivocally has rejected the notion that a statute of limitations period does not begin to run until after a judicial decision recognizes the legal theory on which the litigant seeks relief.  In *Catawba Indian Tribe v. United States*, 982 F.2d 1564 (Fed. Cir. 1993), for example, a Native American tribe brought an action under the Tucker Act – which is governed by a six-year statute of limitations, *see* 28 U.S.C. § 2501 – against the United States in the Court of Federal Claims.  *See Catawba Indian Tribe*, 982 F.2d at 1569-70.  Although the underlying legal claim was somewhat complex, the premise of the tribe's claim was that it was damaged by the provisions of a 1962 congressional statute.  *See id.* at 1570.  Recognizing the obvious timeliness problem, the tribe argued that it was not aware that it was injured by the 1962 statute until the Supreme Court, in a 1986 opinion, interpreted the statute in a manner that caused it harm.  *See id.*  The Federal Circuit had little difficulty dispatching the argument, going so far as to

---

[14] *See Wyeth v. Dudas*, 580 F. Supp. 2d 138 (D.D.C. 2008).

hold that the tribe's position ran "contrary to one of the *fundamental premises* of our legal

system." *Id.* (emphasis added).  The Federal Circuit reasoned that judicial opinions explain, but

do not *create* rights:

> While the Supreme Court's pronouncement in 1986 might be relevant to fixing the
> time when the Tribe *subjectively* first knew what the Act meant, it is fundamental
> jurisprudence that the Act's *objective* meaning and effect were fixed when the Act
> was adopted.  Any later judicial pronouncements simply explain, but do not create,
> the operative effect.

*Id.* (emphasis in original) (citations omitted).  The Federal Circuit, therefore, ruled that the tribe's

claim was time barred.  *See id* at 1571.

The Federal Circuit reaffirmed this principle in *Venture Coal Sales Co. v. United  States*,

370 F.3d 1102 (Fed. Cir. 2004).  *Venture Coal* concerned an action, governed by the same six-

year statute of limitations at issue in *Catawba Indian Tribe*, that sought to recover previously-paid

coal taxes.  *See id.* at 1104.  Plaintiff filed suit in 2003, but sought to recover allegedly

unconstitutional coal tax payments it made between 1988 and 1995 – outside the statute of

limitations.  *See id.* at 1103-04.  In order to rescue their claim from dismissal, the plaintiff argued

that its claims did not accrue until this Court held the particular coal tax at issue unconstitutional

in 1998.  *See id.* (citing *Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998)).

The Federal Circuit again rejected this theory, recognizing that "Venture Coal was entitled to

challenge the Coal Sales Tax when it paid the taxes as much as were the plaintiffs in *Ranger*

*Fuel*."  *Id.* at 1106.  And as such, the Federal Circuit held plaintiffs' claims to be time-barred.  *See*

*id.* at 1107.

Here, Daiichi raises the same argument squarely rejected by the Federal Circuit – that like

the plaintiffs in *Catawba Indian Tribe* and *Venture Coal*, it lacked the requisite knowledge that it

had been injured by the USPTO's regulatory interpretation of Section 154(b)(2)(A) until this

Court's decision in *Wyeth*.  But on each occasion, the Federal Circuit not only rejected this

position in unequivocal terms – holding that the mere fact that a court has not recognized a

particular statutory or constitutional argument does not prevent a limitations period from running

– but also held that the argument violates "one of the fundamental premises of our legal system."

*Catawba Indian Tribe*, 982 F.2d at 1570.

    In apparent recognition of the weakness of its argument, Daiichi stretches to rely on Judge

Sullivan's opinion in *Bristol-Myers Squibb Co. v. Kappos*, 841 F. Supp. 2d 238 (D.D.C. 2012)

("*BMS*"), to argue that equitable tolling should apply to the 180-day deadlines for the '014 and

'205 patents in this case.  *See* Pl.'s Br. at 30.  However, *BMS* is inapposite to this case.  In *BMS*,

the plaintiffs filed a district court action after the 180-day deadline, but they filed timely requests

for reconsideration of the patent term adjustment with the USPTO pursuant to 37 C.F.R. §

1.705(d).  *Id.* at 241.  Thus, "[t]he sole question...[was] whether the timely filing of the petitions

for administrative reconsideration tolled the time within which plaintiffs were required to appeal

to this Court."  *Id.* at 241.  Judge Sullivan had to determine whether the "general tolling rule" as

established by *Interstate Commerce Comm'n v. Locomotive Engineers*, 481 U.S. 270 (1987)

applied to 35 U.S.C. § 154(b)(4)(A) and ultimately concluded that it did.  *Id.* at 243-45.

    This case is readily distinguishable, however, because Daiichi did not file a timely Rule

1.705(d) request for PTA reconsideration with the USPTO for either the '014 or '205 patent.

Thus, the general tolling rule discussed in *BMS* is not applicable here.  *See, e.g.*, *Williston Basin*

*Interstate Pipeline Co. v. Fed. Energy Regulatory Comm'n*, 475 F.3d 330, 335-36 (D.C. Cir.

2006) (explaining that the tolling rule of *Locomotive Engineers* does not apply to cases where an

untimely request for reconsideration was filed).  Moreover, *BMS* does not address equitable

tolling, which, as described above, does not apply in this case.  Thus, Judge Sullivan's opinion in

*BMS* is not applicable here and does not support Daiichi.  Daiichi, therefore, has failed to show

that it diligently pursued its right to contest the PTA determination for the '014 and '205 patents.

*See Pace*, 544 U.S. at 418.

**B.      No Extraordinary Circumstances Exist That Justify Equitable Tolling in This Case.**

Furthermore, Daiichi cannot demonstrate the existence of the type of extraordinary

circumstances that would warrant equitable tolling.  Daiichi, for example, cannot demonstrate that

the USPTO – through fraud or other misconduct – hid pertinent facts from Daiichi that would be

necessary for it to determine that the USPTO's PTA calculation was in error.  At the time the '014

and '205 patents issued, Daiichi knew both (a) the number of days of patent term adjustment that

the USPTO had awarded and (b) the manner by which the USPTO derived that number.  Indeed,

the USPTO was very public and open about how it interpreted the overlap provision of Section

154(b)(4)(A) for purposes of its patent term adjustment calculations.  The USPTO promulgated a

formal regulation in the *Code of Federal Regulations*, and a fulsome explanation of its rationale

in the *Federal Register*.  *See* 65 Fed. Reg. 56366 (Sept. 18, 2000); 69 Fed. Reg. 21704 (April 22,

2004).  From these facts alone, Daiichi possessed the necessary information to determine whether

it had reason (or any desire) to challenge the patent term adjustment determination.  Daiichi's

election not to do so – unlike other patent owners, such as the plaintiffs in *Wyeth*, who filed suit in

this Court over their PTA – is "at best a garden variety claim of excusable neglect" and not the

type of extraordinary circumstances brought about by an adversary's fraud necessary to invoke

equitable tolling.  *Irwin*, 498 U.S. at 96.[15]

Moreover, Daiichi cannot claim that the USPTO misled it about its filing deadlines to

challenge the PTA determinations of the '014 or '205 patents through either a Rule 1.705(d)

request for PTA reconsideration or civil action seeking judicial review of the PTA determinations.

Therefore, Daiichi's attempts to claim some type of "justifiable reliance" on the advice of a

government officer must fail, and the cases to which it cites [*see* Pl.'s Br. at 28-29] are inapposite.

*See, e.g.*, *Turner*, 183 F. Supp. 2d at 29-30; *Gantt v. Mabus*, 857 F. Supp. 2d 120, 128-29 (D.D.C.

2012) (declining to apply equitable tolling).  Similarly, Daiichi's reliance on the decision in *Bull*

*S.A. v. Comer*, 55 F.3d 678 (D.C. Cir. 1995) is misplaced.  In *Bull*, the trademark holder was

misled about the date by which it needed to renew its trademark, because the trademark holder

received an official document from the USPTO "that *certified* a renewal [of the trademark] lasting

---

[15] In addition to the *Wyeth* plaintiffs themselves recognizing the putative legal error in the USPTO's rationale and timely filing civil action pursuant to Section 154(b)(4)(A), several other patentees also timely sought relief under Section 154(b)(4)(A), citing either the same theory raised by *Wyeth* or this Court's *Wyeth* opinion dated September 30, 2008, as support for their view that the USPTO erroneously calculated their PTAs.  *See, e.g.,* Exhibit 6 (*Napo Pharms., Inc. v. Dudas*, 1:08-cv-1542 (D.D.C.) (patent issued – March 11, 2008; civil action filed – Sept. 5, 2008); *Solvay Pharms. GmbH v. Dudas*, 1:08-cv-2053 (D.D.C.) (patent issued – June 3, 2008; civil action filed – Nov. 28, 2008); *Molecular Insight Pharms., Inc. v. Dudas*, 1:08-cv-2065 (D.D.C.) (patent issued – June 3, 2008; civil action filed – Dec. 1, 2008)).  In each of these cases, moreover, the USPTO consented to a remand of the patent term adjustment determination to allow the Agency to recalculate the PTA in a manner consistent with *Wyeth*.  *See* Exhibit 7.  Here, Daiichi's claim to equitable tolling rings more hollow because Daiichi filed its terminal disclaimer for the '135 patent (naming both the '014 and '205 patents) on August 8, 2008.  *See* Exhibit 2.  Thus, Daiichi was still within the 180-day window for judicial review provided by Section 154(b)(4)(A) for both the '014 and '205 patents when it submitted its terminal disclaimer.  Moreover, because the '205 patent issued on April 29, 2008, Daiichi could have filed a timely civil action challenging the USPTO's PTA overlap calculations pursuant to Section 154(b)(4)(A) until October 27, 2008 – almost a full month after this Court's *Wyeth* opinion issued.  But, Daiichi chose not to do so.

until May 15, 1992" which was an incorrect, later date.  *Bull*, 55 F.3d at 682 (emphasis in original).  Here, as noted above, Daiichi was never misled about the time limits on its ability to challenge the PTA determinations or how the PTA calculations were completed.

Accordingly, Daiichi cannot maintain that it lacked knowledge and adequate notice of *its claim regarding the USPTO's overlap calculation.*  At the very least, the actions of the other patentees who challenged the USPTO's overlap PTA calculations belie any assertion that Daiichi's position represents the type of "extraordinary circumstances" created by an agency's misconduct, as would be necessary to open the door to equitable tolling.  As the Supreme Court has held, "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984), *quoted in Rao v. Baker*, 898 F.2d 191, 198 (D.C. Cir. 1990) (affirming district court decision not to equitably toll a 20-day limit); *see also Bailey v. West*, 160 F.3d 1360, 1364 (Fed. Cir. 1998) ( "[C]ourts are less likely to toll the limitations period when the filing is late and 'claimant failed to exercise due diligence in preserving his legal rights.'") (quoting *Irwin*, 498 U.S. at 96).  In fact, as a matter of policy, Daiichi is essentially asking this Court to hold that any potential judicial claim is equitably tolled until a court of appeals accepts the very legal theory on which that claim rests.  Merely stating the proposition, however, demonstrates its obvious error.

Daiichi also briefly argues that the "unique" circumstances of this case support application of equitable estoppel, because the '135 patent is linked to the earlier '014 and '205 patents by terminal disclaimers and their expiration dates affect that of the '135 patent.  Pl.'s Br. at 31.  However, the presence of a terminal disclaimer in a later-issued patent (here, the '135 patent) does not release a patentee from its duty to timely challenge the PTA determinations of any

earlier patents named in the disclaimer, and certainly does not rise to the "extraordinary

circumstance" that Daiichi is required to demonstrate before equitable tolling may apply.  *Pace*,

544 U.S. at 418.

**III.    The USPTO's Interim Procedure Put in Place After *Wyeth* Does Not Violate the APA and Is Not Arbitrary and Capricious or Otherwise Contrary to Law**

Daiichi also contends that the USPTO's Interim Procedure for PTA determinations, put in

place in response to *Wyeth* was arbitrary and capricious under Section 706(2)(A) of the

Administrative Procedure Act.  Pl.'s Br. at 18-23.  Daiichi's argument lacks merit.

On February 1, 2010, the USPTO published the "Interim Procedure for Patentees To

Request a Recalculation of the Patent Term Adjustment To Comply With the Federal Circuit

Decision in Wyeth v. Kappos Regarding the Overlapping Delay Provision of 35 U.S.C.

154(b)(2)(A)" (hereinafter "Interim Procedure") in the *Federal Register*.  75 Fed. Reg. 5043-44

(Feb. 1, 2010).[16]  The Interim Procedure explained that in view of the Federal Circuit's *Wyeth*

decision, it was necessary for the USPTO to revise the computer program that it used to calculate

PTA.  *Id.* at 5043.  The USPTO expected that the revisions to the computer program would be in

place for use on patents issuing on or after March 2, 2010.  *Id.*  In the meantime, the Interim

Procedure established a method for a patentee to request a recalculation of PTA in view of *Wyeth*

for any patents issued prior to March 2, 2010, as long as such a request was submitted within 180

days of the date the patent was granted.  The Interim Procedure noted that any patentees who

wished to preserve their right of review in this Court would still need to comply with the

requirements of 35 U.S.C. § 154(b)(3)-(4):

---

[16] The Interim Procedure is attached as Exhibit F to the Declaration of Thomas Hoxie in Support of Plaintiff's Motion for Summary Judgment, ECF No. 9-2.

> Patentees are reminded that this is an optional procedure, and that any patentee who wishes to preserve his or her right to review in the United States District Court for the District of Columbia of the USPTO's patent term adjustment determination must ensure that he or she also takes the steps required under 35 U.S.C. 154(b)(3) and (b)(4) and 37 CFR 1.705 in a timely manner.

75 Fed. Reg. 5044, col. 1 (Feb. 1, 2010).

> Nothing in this notice shall be construed as a waiver of the requirement of 35 U.S.C. 154(b)(4) that any civil action by an applicant dissatisfied with a determination made by the Director under 35 U.S.C. 154(b)(3) be filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.

75 Fed. Reg. 5044, col. 3 (Feb. 1, 2010).

Under the APA, a court can only set aside an agency action of the USPTO if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005). The scope of review, however, is "narrow," and "the court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfg.'s Assn. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The arbitrary and capricious standard is "[h]ighly deferential," and "presumes the validity of agency decisions." *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000).

Daiichi describes the Interim Procedure as the USPTO's arbitrary and capricious attempt to apply *Wyeth* retroactively to some, but not all, issued patents. Pl.'s Br. at 19, 22. That characterization is incorrect. In establishing this Interim Procedure, the USPTO recognized that patent holders still within the 180-day window of 35 U.S.C. § 154(b)(4)(A) would bring civil actions in this Court seeking a PTA recalculation based on *Wyeth*. Instead of sitting idly by, while those cases were filed in this Court and eventually remanded to the USPTO for PTA

43

recalculations, the USPTO took the pro-active step of allowing patentees to come straight to the USPTO with their recalculation requests based upon *Wyeth*. Thus, the Interim Procedure merely sought to avoid unnecessary filings in this Court for those patentees that sought timely review pursuant to 35 U.S.C. § 154(b)(4)(A) based upon *Wyeth*. There is nothing arbitrary or capricious about this action.

Moreover, there is nothing arbitrary or capricious about the Interim Procedure only applying to patents that were within the 180-day deadline. As explained above, the Interim Procedure merely attempted to expedite the process within the USPTO for patentees seeking review of their PTA under 35 U.S.C. § 154(b)(4)(A) based upon *Wyeth*. The Interim Procedure did not grant rights to any patentees that were not already available to them – it merely shortened the review process by allowing parties to raise the issue with the USPTO directly without waiting for the timely-filed cases under Section 154(b)(4)(A) to be remanded back to the USPTO in light of *Wyeth*. The Interim Procedure did not apply to patents where the 180-day deadline had already passed because doing so would violate the express language of 35 U.S.C. § 154(b)(4)(A). Because Daiichi has failed to meet the high standard to demonstrate that the USPTO's February 1, 2010 Interim Procedure was arbitrary and capricious, the Court should reject Daiichi's assertion that the Interim Procedure violated the APA. *Motor Vehicle Mfg.'s Assn.*, 463 U.S. at 43.

Daiichi also argues that the USPTO's denial of Daiichi's Rule 1.183 petitions to (1) waive the USPTO's filing deadlines, (2) accept Daiichi's untimely requests for PTA reconsideration, and (3) belatedly reconsider the PTA determinations of the '014 and '205 patents was arbitrary and capricious. Pl.'s Br. at 20. Rule 1.183 is a general supervisory regulation which states that

the Director *may* suspend or waive any requirement of the USPTO's regulations that is not a requirement of the statutes "[i]n an extraordinary situation, when justice requires."  37 C.F.R. § 1.183.[17]  Here, Daiichi did not provide any reasons in its Rule 1.183 petition to explain why it failed to timely challenge the PTA determinations of the '014 and '205 patents beyond Daiichi's claim that it did not realize that it had been injured by the USPTO's regulatory interpretation of Section 154(b)(2)(A) until this Court's decision in *Wyeth*.  *See* Exhibit 8 at 3 ("...the applicability of this [*Wyeth*] decision to the above-identified ['014] patent was not appreciated by Petitioners until after the passage of 180-days from patent issuance.").  Indeed, as explained above, such a reason is not legally tenable and could not meet the high bar of an "extraordinary situation" under Rule 1.183.  *See, e.g.*, *Catawba Indian Tribe*, 982 F.2d at 1570-71.  Thus, the USPTO was correct in determining that Daiichi "cannot rely on Wyeth's actions or the *Wyeth* decision to establish that their situation was extraordinary" as required by Rule 1.183.  Exhibit 3 at 5; *cf. Burandt v. Dudas*, 528 F.3d 1329, 1335-36 (Fed. Cir. 2008) (affirming, *inter alia*, USPTO's denial of inventor's Rule 1.183 petition regarding late maintenance fee).

## IV.    Daiichi Has Failed to Establish A Fifth Amendment Due Process Claim.

Finally, Daiichi contends that the USPTO's actions amount to a violation of the Due Process Clause of the Fifth Amendment.  Pl.'s Br. at 31-35.  In order to prevail on its claim, Daiichi must establish that the *additional days of patent term* of which it was allegedly deprived

---

[17] 37 C.F.R. § 1.183 reads:

**Suspension of rules.**  In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be suspended or waived by the Director or the Director's designee, *sua sponte*, or on petition of the interested party, subject to such other requirements as may be imposed.  Any petition under this section must be accompanied by the petition fee set forth in § 1.17(f).

constitutes a Constitutionally-protected property interest under the Fifth Amendment and that

such deprivation was effected without due process of law – *i.e.*, by providing "no remedy, or only

inadequate remedies" to Daiichi.  *See Florida Prepaid Postsecondary Educ. Expense Bd. v.

College Sav. Bank*, 527 U.S. 627, 643 (1999).  Here, Daiichi simply does not have a protected

property interest because it failed to timely request reconsideration, or seek judicial review, of the

PTA determinations it now challenges.  Moreover, Daiichi was afforded ample due process

through the PTA reconsideration procedure set forth in Rule 1.705(d) and the petition procedure

of Rule 1.183, as well as through the ability to seek judicial review of the USPTO's PTA

determinations under 35 U.S.C. § 154(b)(4)(A).  Accordingly, Daiichi's due process claim fails as

a matter of law.

　　　"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Accordingly, when procedures are in

place that allow for the challenge of a patent determination the requirements of due process are

met.  In the instant case, Daiichi was provided a pair of procedures by which to challenge the

PTA determinations of the '014 and '205 patents – namely, a Rule 1.705(d) request for PTA

reconsideration filed within 2 months of the patents' issue dates and a civil action seeking judicial

review of the PTA determinations filed within 180 days of the the patents' issue dates pursuant to

35 U.S.C. § 154(b)(4)(A).  Daiichi, however, failed to timely take advantage of either of these

"meaningful" procedures.  Daiichi's failure to follow the statutorily defined procedures in place is

fatal to its due process claim.  *See, e.g., Jordan v. Director, Office of Workers' Comp. Programs,

U.S. Dep't of Labor*, 892 F.2d 482, 489 (6th Cir. 1989) (("[R]equiring the petitioner to comply

with the time limits set out in the regulations does not violate principles of due process.")(quoting *Bennett v. Director, OWCP*, 717 F.2d 1167, 1169 (7th Cir. 1983)); *Ramirez v. Walker*, 2006 WL 1916856, at *5 (5th Cir. July 12, 2006) (holding that claimant had no constitutionally protected right to support a due process claim after failing to timely appeal the underlying decision).

Further, the USPTO also provided Daiichi with a third procedure pursuant to Rule 1.183 by which Daiichi could request waiver of the 2-month Rule 1.705(d) deadline if it could show "extraordinary circumstances." Daiichi, however, failed to file its Rule 1.705(d) request for reconsideration within the prescribed deadline. Daiichi had ample opportunity to present its arguments in its several Rule 1.183 petitions, and it received a fulsome review and decision by the USPTO; thus, Daiichi was afforded sufficient due process by the USPTO. *See, e.g.*, *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 84-85 (1978) (holding that the due process afforded claimant was sufficient).

Daiichi's dissatisfaction with the *result* of its failure to timely challenge the PTA determinations of the '014 and '205 patents and the decisions of the USPTO denying its Rule 1.183 petitions, does not provide it due process rights that are not otherwise recognized by law. In that the USPTO has provided Daiichi opportunities to be heard "at a meaningful time and in a meaningful manner" regarding its present request to reconsider the PTA determinations of the '014 and '205 patents, the USPTO has offered Daiichi sufficient due process. *SeeMathews v. Eldridge*, 424 U.S. at 334 ("(D)ue process is flexible and calls for such procedural protections as the particular situation demands."). Nevertheless, Daiichi argues that three factors set forth in the *Mathews* decision support its due process claim. Pl.'s Br. at 33-34. However, a review of these factors demonstrates that Daiichi was provided all of the due process it was entitled to.

47

The U.S. Supreme Court in *Matthews* explained that "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 334-35.

First, with respect to the affected private interest, it is clear that this interest is limited to the particular number of days of additional patent term that Daiichi now seeks to gain. However, as noted in *Michels v. United States*, 72 Fed Cl. 426 (Fed. Cl. 2006), courts have recognized Congress's authority to impose conditions upon the privilege of patent ownership. 72 Fed. Cl. at 430. In particular, "the right to a patent is not absolute, but rather is subject to the conditions which Congress has prescribed." *Id.* (citing *Boyden v. Comm'r of Patents*, 441 F.2d 1041, 1043 (D.C. Cir. 1971)). In *Michels*, the court held the plaintiff's property interest in her patent was conditioned upon the payment of required maintenance fees. *Id.* at 431. Similarly, to the extent that Daiichi asserts a protected property interest in the terms of its patents, that interest is contingent upon meeting the requirements of 35 U.S.C. § 154 and 37 C.F.R. § 1.705(d), including following the procedures prescribed by Congress in Sections 154(b)(3) and 154(b)(4) for challenging the Director's PTA determinations. Having failed to file suit within 180 days after patent issuance, as required by Section 154(b)(4)(A) (or file a timely request for PTA reconsideration pursuant to Rule 1.705(d)), Daiichi cannot now claim a protected property interest in the additional PTA days it seeks. *See, e.g.*, *Jordan*, 892 F.2d at 489 ("Given the record before

48

us, 'requiring the petitioner to comply with the time limits set out in the regulations does not violate principles of due process.'").

With respect to the second factor cited by Daiichi – namely, "the risk of erroneous deprivation" [Pl.'s Br. at 34] – the *Mathews* Court explained that the "procedural due process rules are shaped by the risk of error inherent in the truthfinding process *as applied to the generality of cases*, not the rare exceptions." *Mathews*, 424 U.S. at 344 (emphasis added). Here, the processes provided by Rule 1.705(d) and Section 154(b)(4)(A) allow a patentee to challenge a PTA determination that the patentee believes is incorrect; thus, these processes act to eliminate the risk of any error in a PTA determination and support the USPTO's position. In this case, any deprivation of additional PTA days asserted by Daiichi is not the result of any risk of error inherent in the USPTO's existing procedures, but rather it originates from Daiichi's own neglect or decision not to file a timely Rule 1.705(d) challenge or timely civil action pursuant to Section 154(b)(4)(A) in this Court. *See, e.g.*, *Ramirez*, 2006 WL 1916856, at *5 (noting that the plaintiff failed to "provide an explanation within fourteen days or timely appeal the decision of the OWCP" and holding that despite his failure to meet the proscribed deadlines, plaintiff "was afforded meaningful notice and opportunity at each step" and therefore his "due process complaint has no basis in fact or law")

The *Mathews* Court noted thirdly that "the Government's interest, and hence that of the public, in conserving scarce fiscal and administrative resources, is a factor that must be weighed." *Mathews*, 424 U.S. at 348. As explained above, the USPTO established its Interim Procedure to expedite the process within the USPTO for patentees seeking review of their PTA under 35 U.S.C. § 154(b)(4)(A) based upon *Wyeth*. Importantly, the Interim Procedure did not grant rights

49

to any patentees that were not already available to them – it merely streamlined the review process by allowing parties (whose patents were issued in September 2009 and later) to raise the issue with the USPTO directly without waiting for their *timely-filed cases* under Section 154(b)(4)(A) to be remanded back to the USPTO.  Daiichi argues that, under this factor, the USPTO should ignore the jurisdictional limitations of Section 154(b)(4)(A) and reach back and change the patent terms for all patents that pre-date the *Wyeth* cases.  Pl.'s Br. at 34.  However, even looking back just five years from the September 2009 date, Daiichi's suggestion would potentially sweep in more than 750,000 patents.  *See* Table 6: Patents Issued (FY 1989-FY 2009), *available at* http://www.uspto.gov/web/offices/com/annual/2009/oai_05_wlt_06.html.  This would certainly inordinately tax the USPTO's scarce administrative resources, and thus also injure the public interest, in contravention of the third factor provided by the *Mathews* Court.

Lastly, Daiichi briefly argues that the USPTO's Interim Rules violate the substantive guarantees of the due process clause.  Pl.'s Br. at 35.  Daiichi's argument cannot prevail because it cannot meet the stringent bar required by substantive due process cases.  First, the existence of established procedures under Rule 1.705(d) and Section 154(b)(4)(A) that were available to Daiichi at the time the '014 and '205 patents issued "belies the existence of a substantive due process claim" as it relates to the reconsideration of the PTA determinations for the '014 and '205 patents.  *See, e.g.*, *Sylvia Devel. Corp. v. Calvert County, Md.*, 48 F.3d 810, 829 (4th Cir. 1995) (affirming the denial of party's claim of due process clause violation).  Further, the USPTO adherence to the statutory and regulatory deadlines provided both in the Interim Rules and in Rule 1.705(d) and Section 154(b)(4)(A) is rationally related to the legitimate government interest of encouraging early PTA challenges to bring any resulting petitions or litigations to an end, *see*

50

*Talamantes-Penalver v. I.N.S.*, 51 F.3d 133, 137 (8th Cir. 1995), and to establish the final amount

of days of PTA early to provide greater certainty to the patent owner and marketplace.

Accordingly, Plaintiff's argument has no merit.

## CONCLUSION

For all these reasons, the Court should grant the USPTO's cross-motion for summary

judgment, deny Daiichi's motion for summary judgment, and dismiss all of Daiichi's claims with

prejudice.


Dated:  November 7, 2012,
         Washington, DC

                                     Respectfully Submitted,

                                     RONALD C. MACHEN JR., D.C. BAR#447889
                                     United States Attorney
                                     for the District of Columbia

                                     DANIEL F. VAN HORN, D.C. Bar #924092
                                     Civil Chief

                                     By: */s/ Carl E. Ross*_____
                                     CARL EZEKIEL ROSS, D.C. Bar #492441
                                     Assistant United States Attorney
                                     Civil Division
                                     555 4th Street, N.W.
                                     Washington, D.C. 20530
                                     Tel:  (202) 305-4851
                                     Fax:  (202) 514-8780

                                     Attorneys for Defendant


Of Counsel:
Brian T. Racilla
Farheena Rasheed
Associate Solicitors
United States Patent and Trademark Office