## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAIICHI SANKYO COMPANY, LIMITED<br>3-5-1, Nihonbashi Honcho, Chuo-ku, Tokyo,<br>Japan<br><br>        Plaintiff,<br><br>   v.<br><br>HON. DAVID J. KAPPOS<br>Under Secretary of Commerce for Intellectual<br>Property and Director of the United States<br>Patent and Trademark Office.<br>Office of General Counsel, United States<br>Patent and Trademark Office,<br>P.O. Box 15667, Arlington,VA 22215<br>Madison Building East, Rm 10B20, 600<br>Dulany Street, Alexandria,VA 22314<br><br>       Defendant. | Civil Action No. 1:10-cv-00215 |

## REPLY MEMORANDUM OF POINTS OF LAW AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Kevin M. Dinan (DC Bar No. 406627)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, D.C. 20006-2706
Tel: 202-737-0500
Fax: 202-626-3737

*Of Counsel*
Kenneth H. Sonnenfeld
Margaret B. Brivanlou
Michael P. Dougherty
Wan Chieh Lee
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212-556-2100
Fax: 212-556-2222
*Attorneys for Plaintiff Daiichi Sankyo Company, Limited*

December 5, 2012

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….. ………………ii

ARGUMENT ........................................................................................................................1

I.      The USPTO Fails to Show that the 180-Day Period of § 154(b)(4)(A) Applies
        to PTA Determinations Made at the Time of Patent Issuance .........................................1

        A.      The USPTO's Interpretation of the Statute Is Entitled to No Deference ................1

        B.      The USPTO's Arguments for Applying § 154(b)(4)(A) to PTA
                Determinations Made at the Time of Patent  Issuance Are Unpersuasive ..............2

II.     The USPTO Fails to Rebut Daiichi's Showing that the USPTO's Refusal to
        Suspend Its Interim Rule on the Timing of  PTA Recalculation Requests Was
        Arbitrary, Capricious, an Abuse of Discretion, and Not in Accordance with Law .........5

        A.      APA Review Is Available Here .............................................................................6

        B.      The USPTO Fails to Provide Any Legally Correct  Basis for Denying
                Daiichi's Rule 183 Petitions ................................................................................7

III.    The USPTO Fails to Rebut Daiichi's Showing that Even if the 180-Day
        Deadline of §154(b)(4)(A) Applied to Daiichi's Claims, It Should Be
        Subject to Equitable Tolling ............................................................................................10

        A.      The USPTO Fails to Show That The 180-Day Deadline Is Jurisdictional ...........10

        B.      The USPTO Fails to Rebut Daiichi's Showing That It Is Entitled to
                Equitable Tolling of the 180-Day Deadline ..........................................................13

                1.      Daiichi Acted Diligently to Vindicate Its Rights ......................................13

                2.      Tolling Is Appropriate in View of the Change in the Law
                        Occasioned by *Wyeth* .............................................................................15

                3.      This Case Involves "Extraordinary Circumstances" That Amply
                        Justify Equitable Tolling ..........................................................................18

IV.     The USPTO Fails to Rebut Daiichi's Showing that the Refusal to Allow Daiichi
        to Petition for Recalculation of the Proper Statutory Terms of the '014 and
        '205 Patents Deprives Daiichi of Property in Violation of the  Due Process
        Clause of the Fifth Amendment .......................................................................................20

        A.      Procedural Due Process .......................................................................................20

        B.      Substantive Due Process ......................................................................................22

CONCLUSION....................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Block v. Community Nutrition Institute,*
    467 U.S. 340 (1984)......................................................................................................7

*Block v. North Dakota,*
    461 U.S. 273 (1983)......................................................................................................7

*Bristol-Myers Squibb v. Kappos,*
    841 F. Supp. 2d 238 (D.D.C. 2012)..........................................................................12

*Brown v. General Services Administration,*
    425 U.S. 820 (1976)......................................................................................................7

*\*Bull S.A. v. Comer,*
    55 F.3d 678 (D.C. Cir. 1995) .........................................................................13, 17, 18

*Catawba Indian Tribe v. United States,*
    982 F.2d 1564 (Fed. Cir. 1993)..............................................................................15, 16

*Cathedral Candle Co. v. U.S. Int'l Trade Comm'n,*
    400 F.3d 1352 (Fed. Cir. 2005)...................................................................................1

*Chevron U.S.A. v. Natural Resources Defense Counsel,*
    467 U.S. 837 (1984)......................................................................................................1

*City of New York v. Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011).......................................................................................11

*Custom Computer Servs. v. Paychex Props.,*
    337 F.3d 1334 (Fed. Cir. 2003)...................................................................................1

*EC Term of Years Trust v. United States,*
    550 U.S. 429 (2007)......................................................................................................7

*Franchi v. Manbeck,*
    972 F.2d 1283 (Fed. Cir. 1992)...................................................................................7

*Gonzales v. Thaler,*
    132 S. Ct. 641 (2012)............................................................................................11, 12

*Griggs v. Provident Consumer Discount Co.,*
    459 U.S. 56 (1982)......................................................................................................12

*Helfgott & Karas v. Dickenson,
   209 F.3d 1328 (Fed. Cir. 2000)......................................................................8

*Henderson v. Shinseki,
   131 S. Ct. 1197 (2011).........................................................................10, 11

*Holland v. Florida,
   130 S. Ct. 2459 (2010).........................................................................14, 17

In re Morganroth,
   885 F.2d 843 (Fed. Cir. 1989)....................................................................1

Irwin v. Dep't of Veterans Affairs,
   498 U.S. 89 (1990)........................................................................................10

Janssen Pharmaceutica, N.V. v. Kappos,
   844 F. Supp. 2d 707 (E.D. Va. 2012) .......................................................3

John R. Sand & Gravel Co. v. United States,
   128 S. Ct. 750 (2008).........................................................................12, 15

Keohane v. United States,
   669 F.3d 325 (D.C. Cir. 2012) ...............................................................11

La. Envtl. Action Network v. Cty. of Baton Rouge,
   677 F.3d 737 (5th Cir. 2012) ..................................................................11

Mathews v. Eldridge,
   424 U.S. 319 (1976)..........................................................................20, 21

*Merck & Co. v. Kessler,
   80 F.3d 1543 (Fed. Cir. 1996).................................................................1

Michels v. United States,
   72 Fed. Cl. 426 (Fed. Cl. 2006) ............................................................. 21

North Haven Bd. of Educ. v. Bell,
   456 U.S. 512 (1982)............................................................................1, 2

Novartis, AG v. Kappos,
   No. 10-cv-1138 (ESH) Slip. op. (D.D.C. Nov. 15, 2012).........................3, 4, 16, 17

Public Employees Retirement Sys. of Ohio v. Betts,
   492 U.S. 158 (1989)...................................................................................2

Spannaus v. DOJ,
   824 F.2d 52 (D.C. Cir. 1987) ................................................................12

*Venture Coal Sales Co. v. United States*,
  370 F.3d 1102 (Fed. Cir. 2004)..................................................................16, 17

*Wyeth v. Kappos*,
  591 F.3d 1364 (Fed. Cir. 2010)......................................................... passim

*Zipes v. Trans World Airlines, Inc.*,
  455 U.S. 385k (1982)..................................................................................10

STATUTES

5 U.S.C. § 704..................................................................................................14

7 U.S.C. § 608c(15)(B).......................................................................................7

26 U.S.C. § 6532(c)(1).......................................................................................7

28 U.S.C. § 2107(a)..........................................................................................12

28 U.S.C. § 2253(c)(1)......................................................................................12

28 U.S.C. § 2401(a)..........................................................................................12

28 U.S.C. § 2409(f)............................................................................................7

28 U.S.C. § 2501..................................................................................11, 15, 16

35 U.S.C. § 154(b)....................................................................................... passim

35 U.S.C. § 254..................................................................................................7

OTHER AUTHORITIES

37 C.F.R. § 1.183 ("Rule 183")................................................................... passim

37 C.F.R.§ 1.705(b)..........................................................................................3

37 C.F.R. § 1.705(d) ("Rule 705(d)").......................................................... passim

75 Fed. Reg. 5043-45 ("Interim Procedure")............................................... passim

Fed. R. App. P. 4(a)(4).....................................................................................12

Plaintiff Daiichi Sankyo Co., Ltd. ("Daiichi"), through its undersigned counsel, respectfully submits this reply memorandum in support of its motion for summary judgment. This memorandum also constitutes Daiichi's opposition to defendant's cross-motion for summary judgment.

## ARGUMENT

### I.  The USPTO Fails to Show that the 180-Day Period of § 154(b)(4)(A) Applies to PTA Determinations Made at the Time of Patent Issuance

#### A.  The USPTO's Interpretation of the Statute Is Entitled to No Deference

The USPTO's assertion (D.E. 26 at 12) that its construction of 35 U.S.C. § 154(b) is entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Counsel*, 467 U.S. 837 (1984), is plainly incorrect in view of *Merck & Co. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir. 1996) (holding that USPTO is not entitled to *Chevron* deference because it has no substantive rulemaking authority), and *Wyeth v. Kappos*, 591 F.3d 1364, 1372 (Fed. Cir. 2010) (declining to give deference to USPTO's construction of § 154(b)).  Older Federal Circuit cases such as *In re Morganroth*, 885 F.2d 843 (Fed. Cir. 1989), are therefore not pertinent.

The USPTO argues that its "interpretation of its own regulations is also entitled to substantial deference."  D.E. 26 at 12 (citing *Custom Computer Servs. v. Paychex Props.*, 337 F.3d 1334, 1336 (Fed. Cir. 2003)).  Daiichi is not challenging the USPTO's interpretation of its regulations, but, rather the USPTO's interpretation of the PTA statute.  *See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) (distinguishing an agency's interpretation of its own regulations from an agency's construction of a statute).

Finally, the USPTO asserts that "this Court must 'accord particular deference to an agency interpretation of longstanding duration.'"  D.E. 26 at 12 (quoting *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 522 n.12 (1982)).  But the agency in *North Haven* had substantive

rulemaking power, 456 U.S. at 537, which the USPTO lacks.  Moreover, even if the USPTO had

such rulemaking power, it would be entitled to no deference under this theory because its

interpretation is both inconsistent with the statute and litigation-driven.  *See Public Employees*

*Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 171 (1989) ("Even . . . longstanding agency

interpretations must fall to the extent they conflict with statutory language.").

### B. The USPTO's Arguments for Applying § 154(b)(4)(A) to PTA Determinations Made at the Time of Patent Issuance Are Unpersuasive

As shown in Daiichi's opening memorandum (D.E. 22 at 12), the 180-day limitation

period of § 154(b)(4)(A) applies only to PTA determinations "made by the Director under

paragraph (3)."  The USPTO agrees.  D.E. 26 at 27.  Daiichi also showed that the only PTA

determination "made by the Director under paragraph (3)" is the PTA determination transmitted

with the notice of allowance, and that the 180-day period of §154(b)(4)(A) therefore does not

apply to the other, separate, PTA determination made at the time of the patent's issuance.  D.E.

22 at 13-14.  The USPTO disputes this, arguing that other parts of paragraph (3), specifically,

subparagraphs (A) and (B)(ii), refer to PTA determinations beyond the PTA determination

transmitted with the notice of allowance.  D.E. 26 at 27.  The USPTO is incorrect.

Subparagraph (A) provides authority for and requires the Director to establish general

procedures for determining PTAs.  It does not, however, require the Director to *make* any PTA

determination.  Thus, subparagraph (A) does not expand the language of § 154(b)(4)(A) - "a

determination made by the Director under paragraph (3)" - to include the PTA determination

made at the time of patent issuance.  Similarly, subparagraph (B)(ii) requires the Director to

provide the applicant "one opportunity to request reconsideration of any [PTA] determination

made by the Director."  Once again, this subparagraph does not require the Director to *make* any

PTA determination.  Like subparagraph (A), it does not expand the scope of § 154(b)(4)(A) to include anything more than the PTA determination transmitted with the notice of allowance, which indisputably is "made by the Director under paragraph (3)."  The USPTO's assertion that Daiichi is attempting to "rewrite the statute" (D.E. 26 at 30) is therefore meritless.

The USPTO's next argument is that the PTA calculations transmitted with the notice of allowance and at issuance cannot be subject to different review periods (i.e., the 180-day period of § 154(b)(4)(A) and the 6 year period of the APA, respectively) because they ask the "same question":  the number of days of PTA to which the patents are entitled.  D.E. 26 at 30, 32, 33. But the USPTO's own regulations treat those two PTA determinations as different and provide separate review periods, each with its own unique duration.  Requests for reconsideration of the PTA determination transmitted with the notice of allowance must be filed "no later than the payment of the issue fee but may not be filed earlier than the date of mailing of the notice of allowance."  37 C.F.R.§ 1.705(b).  Requests for reconsideration of the PTA determination at patent issuance, however, must be filed "within two months of the date the patent issued."  37 C.F.R. § 1.705(d).  This contradicts the USPTO's present assertion that the two determinations ask the "same question" and must be subject to the same statute of limitations.[1]

The recent decision by Judge Huvelle in *Novartis, AG v. Kappos*, No. 10-cv-1138 (ESH) Slip. op. (D.D.C. Nov. 15, 2012), does not require a different conclusion.  There were two bases for the *Novartis* court's conclusion that both types of PTA determinations are subject to the 180-day limitation period of § 154(b)(4)(A).  First, the court cited § 154(b)(3)(D) as showing that the determination made under paragraph (3) embraces both the PTA determination transmitted with

---

[1] *Janssen Pharmaceutica, N.V. v. Kappos*, 844 F. Supp. 2d 707 (E.D. Va. 2012), cited by the USPTO (D.E. 26 at 26), relies on this same incorrect theory of the two PTA determinations being a "single question" and is unpersuasive for that reason.

the notice of allowance and the final PTA determination at the time of issuance.  *Novartis*, Slip

op. at 10.  Subsection (3) (D) provides (emphasis added):

> (D) The Director shall proceed to grant the patent after completion of *the Director's determination of a patent term adjustment under the procedures established under this subsection*, notwithstanding any appeal taken by the applicant of such determination.

The USPTO has not relied on subparagraph (3)(D) in this case, and for good reason.  Daiichi

showed that the "Director's determination" recited in subparagraph (3)(D) is limited to the

determination transmitted with the notice of allowance, since that is the only PTA determination

made "under the procedures established under this subsection."  D.E. 22 at 15.

Second, the *Novartis* court viewed subjecting the notice of allowance PTA determination

to a 180-day limitations period while allowing the issuance PTA determination to be reviewed

under the 6 year period of the APA as an "absurd result[]."  *Novartis*, Slip. op. at 10.  With

respect, however, that is the type of policy argument that the Federal Circuit rejected in *Wyeth*:

> [T]he PTO highlights various scenarios where a hypothetical patentee appears to receive some type of windfall adjustment under the statute despite being in a similar position as other applicants who receive no similar adjustment.  Indeed, the statute requires as much. . . .  Under certain scenarios, . . . the statute itself result[s] in some imbalanced treatment of similarly-situated patentees. Regardless of the potential of the statute to produce slightly different consequences for applicants in similar situations, this court does not take upon itself the role of correcting all statutory inequities, even if it could.  In the end, the law has put a policy in effect that this court must enforce, not criticize or correct.

*Wyeth v. Kappos*, 591 F.3d 1364, 1370-71 (Fed. Cir. 2010).  If the Federal Circuit considered

itself constrained to accept "inequities" such as the "imbalanced treatment of similarly-situated

patentees" because that was how Congress drafted the statute, it follows that this Court should

not substitute its view of whether the final PTA determination at issuance should be subject to

the 180-day limitation period of § 154(b)(4)(A) for that of Congress when the statute itself

4

makes clear that it is not.   Indeed, applying the statute as written should be even less controversial than in *Wyeth* since it results in no "inequity" at all, only Daiichi's receipt of the full patent term that Congress guaranteed.

The USPTO also argues that § 154(b)(4)(A) is "jurisdictional."   D.E. 26 at 13-19. Whether § 154(b)(4)(A) is jurisdictional, however, has no bearing on the threshold issue of whether its 180-day limitations period is applicable to the type of final PTA determination in dispute here.   (As shown below, and in Daiichi's opening memorandum, it is not).   Rather, the jurisdictional or non-jurisdictional status of a limitations period determines whether it is subject to equitable tolling.   Accordingly, this argument is addressed in section III, below, which shows that § 154(b)(4)(A) is not jurisdictional and that, even if it were applicable to PTA determinations made at the time of issuance, it should be tolled in this case.

## II.    The USPTO Fails to Rebut Daiichi's Showing that the USPTO's Refusal to Suspend Its Interim Rule on the Timing of PTA Recalculation Requests Was Arbitrary, Capricious, an Abuse of Discretion, and Not in Accordance with Law

Within 180 days of the Wyeth District Court Decision (but more than 180 days after the patents issued), Daiichi filed petitions under 37 C.F.R. § 1.705(d) ("Rule 705(d)) to recalculate the PTAs of the '014 and '205 patents, along with petitions under 37 C.F.R. § 1.183 ("Rule 183") to waive the normal 2 months from issuance deadline, which is regulatory under Rule 705(d), not statutory, for such requests.   Rule 183 provides:  "In an extraordinary situation, when justice requires," the USPTO may waive or suspend any requirement of its regulations that is not a requirement of the statutes, which this deadline is not.   The USPTO denied Daiichi's petitions, stating that "the situation was not an extraordinary situation for which justice requires waiver."

After the announcement of the USPTO's Interim Procedure, which *did* waive the 2 month deadline for patents that happened to issue within 180 days before February 1, 2010, Daiichi

filed Requests for Reconsideration of its Rule 183 petitions (on June 1, 2010 for the '205 patent and June 14, 2010 for the '014 patent). The USPTO denied those Requests for Reconsideration, ruling that § 154(b)(4)(A) bars PTA recalculation requests filed more than 180 days after patent issuance and, therefore, that its interim rule limiting recalculation to patents issuing no more than 180 days before February 1, 2010, could not be waived. Daiichi has shown that these final agency actions were "arbitrary, capricious, an abuse of direction," and "not in accordance with law" within the meaning of the Administrative Procedure Act ("APA") (D.E. 22 at 18-23), and the USPTO has failed to show otherwise.

### A.     APA Review Is Available Here

The USPTO argues that Congress's creation of a "specific" judicial review mechanism for PTA determinations through § 154(b)(4)(A) precludes judicial review through the "generic" provisions of the APA. D.E. 26 at 19-25. This entire argument, however, is based on the assumption that the PTA determinations at the time of the notice of allowance and at issuance of the patent are the same. As shown above, however, they are not the same. Rather, they are separate, distinct inquires, and even the USPTO's own regulations provide different limitations periods for their review. Accordingly, the existence of a "specific" judicial review mechanism for one of them – the notice of allowance PTA determination – has no bearing on the availability of more general APA review for the other – the PTA determination made at issuance.

Aside from the fact that the PTA determinations made at the time of the notice of allowance and at the time of issuance are separate inquires and § 154(b)(4)(A) applies only to the former, the authorities cited by the USPTO (D.E. 26 at 20-23) in support of its argument that § 154(b)(4)(A) impliedly bars APA review of the issuance PTA determination are inapposite. The statutes in three of the cited cases provided a specific limitations period and made it clear

that suits outside that period were barred.  *See Block v. North Dakota*, 461 U.S. 273, 277 (1983) (discussing 28 U.S.C. § 2409(f), which provides that "[a]ny civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued."); *EC Term of Years Trust v. United States*, 550 U.S. 429, 431 (2007) (discussing 26 U.S.C. § 6532(c)(1), which provides that "no suit . . . shall be begun after the expiration of 9 months from the date of the levy. . . ."); *Block v. Community Nutrition Institute*, 467 U.S. 340, 346 (1984) (discussing 7 U.S.C. § 608c(15)(B), which provides that "district courts . . . are hereby vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of . . . such ruling.").  Another one of the USPTO's authorities, *Brown v. General Services Administration*, 425 U.S. 820, 833 (1976), involved a statute with − in sharp contrast to § 154(b)(4)(A) − "a careful blend of administrative and judicial enforcement powers," and "rigorous administrative exhaustion requirements and time limitations."  Finally, *Franchi v. Manbeck*, 972 F.2d 1283 (Fed. Cir. 1992), involved an attempt to seek review in the District of Connecticut of a failing grade on the "patent bar examination" when the relevant statute required any such review to be in the District of Columbia.  There is no dispute, however, that *this* action was filed in the correct court.

> **B.     The USPTO Fails to Provide Any Legally Correct
> Basis for Denying Daiichi's Rule 183 Petitions**

As pointed out in Daiichi's opening memorandum (D.E. 22 at 20-21), § 154(b)(4)(A) limits the time for filing *a civil action in District Court* to challenge a PTA determination.  It places no restriction on the USPTO's authority to correct its own erroneous PTA determinations and a patentee's right to request such corrections.  Indeed, 35 U.S.C. § 254 provides that "*[w]henever* a mistake in a patent, incurred through the fault of [the USPTO], is clearly disclosed by the records of the office, the Director may issue a certificate of correction stating

the fact and nature of the mistake. . . ."  (emphasis added).  It is indisputable that the errors in PTA calculation at issue here are "clearly disclosed" in the USPTO files.  Accordingly, the statute allows the USPTO to correct them at any time.  The USPTO does not refute or even mention these facts, which show that § 154(b)(4)(A) presents no impediment to waiving the 180-day period of the Interim Procedure to allow the USPTO to correct its own acknowledged errors in PTA calculations.  The USPTO's contrary interpretation of § 154(b)(4)(A) is entitled to no deference.  *See* section I.A., above.

Nor does the USPTO attempt to distinguish or even mention *Helfgott & Karas v. Dickenson*, 209 F.3d 1328 (Fed. Cir. 2000), in which the court ruled that the USPTO abused its discretion by denying a Rule 183 petition when the USPTO contributed to the error sought to be corrected, even though the initial mistake was the fault of the applicant.  *Id.* at 1335, 1337.  D.E. at 22-23.  If denial of a Rule 183 petition was an abuse of discretion in *Helfgott*, where the initial error was the fault of the applicant, it follows with even greater force that the USPTO has abused its discretion here, where Daiichi's loss of its statutorily guaranteed exclusivity is solely the result of the agency's error.  D.E. 22 at 22-23.

Nor does the USPTO dispute that the arbitrary 180-day cut-off provided by the Interim Procedure violates the "patent term guarantees" provided by Congress to restore lost patent term caused by the USPTO's failure to meet certain requirements in examining a patent application, as explained in the *Wyeth* CAFC Decision.  As relevant here, the whole point of the American Inventors Protection Act was to lengthen existing patent terms.  The USPTO's denials of Daiichi's Rule 183 Petitions for the '205 and '014 patents unfairly truncate their terms, as well as the term of the '135 patent as a consequence, in violation of Congress's clear intent.  D.E. 22 at 21-22.

The USPTO argues that the "arbitrary and capricious standard is '[h]ighly deferential,' and 'presumes the validity of agency decisions.'" D.E. 26 at 43. That may be when an agency is taking discretionary actions within the scope of its authority, but it is *not* the case in matters of pure statutory construction such as the effect of § 154(b)(4)(A), which is entitled to no deference. D.E. 22 at 11.

The USPTO tries to portray the 180-day window of the Interim Procedure's *Wyeth* look-back period as a logical means to prevent this Court from being burdened with unnecessary PTA appeals. D.E. 26 at 43-44. But the USPTO never comes to grips with the fact that the choice of February 1, 2010 (the publication date of the Interim Procedure) as the start of the look-back period was completely arbitrary. It could just as easily have been the date of the *Wyeth* District Court Decision, the *Wyeth* CAFC Decision, the issuance of the mandate following the *Wyeth* CAFC Decision, or any other date.

Finally, the USPTO asserts that Daiichi's situation was not "extraordinary" as required for a suspension of rules under Rule 183. D.E. 26 at 44-45. But this position is inconsistent with the USPTO's own action in the Interim Procedures, which relied on Rule 183 to waive the normal 2 month deadline for PTA recalculation requests for patents that issued within the *Wyeth* look-back period. Except for the completely unexceptional fact that those patents issued later than Daiichi's, their owners were in precisely the same situation as Daiichi and were suffering precisely the same harm. The conclusion that Daiichi did not face extraordinary circumstances, while those similarly situated patentees did, was arbitrary and capricious.

III.    **The USPTO Fails to Rebut Daiichi's Showing that Even if the 180-Day Deadline of §154(b)(4)(A) Applied to Daiichi's Claims, It Should Be Subject to Equitable Tolling**

A.    **The USPTO Fails to Show That The 180-Day Deadline Is Jurisdictional**

As pointed out in Daiichi's opening memorandum (D.E. 22 at 24), all federal statutes of limitations are presumed to be subject to equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). This presumption is rebutted only when Congress provides a "clear indication" that the filing deadline is "jurisdictional." *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011). *See also id.* at 1202-03 ("[A] rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject matter or personal jurisdiction. . . . Other rules, even if important and mandatory . . . should not be given the jurisdictional brand."). The statute at issue in *Henderson* provided:

> In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed. . . .

131 S. Ct. at 1204. The Court held that "[t]his provision 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [Veterans Court]'. . . ." *Id.* (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). Rather, this 120-day filing deadline was a "quintessential" example of a "claim processing rule," i.e., a non-jurisdictional rule that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 1203.

The statute at issue in this case provides, in relevant part:

> An applicant dissatisfied with a determination made by the Director under paragraph (3) shall have remedy by a civil action against the Director filed . . . within 180 days after the grant of the patent.

If the appeal provision in *Henderson* ("In order to obtain review . . . a person . . . shall file a notice of appeal . . . within 120 days. . .") was non-jurisdictional, it follows that the quoted language from §154(b)(4)(A) is non-jurisdictional as well.  The statute's text, context, and relevant historical treatment confirm that conclusion.  D.E. 22 at 24-27.

The USPTO fails to address *Henderson* on the merits, but instead attempts to distinguish it because it concerns an appeal to an Article I tribunal rather than to an Article III court.  D.E. 26 at 18.  But *Henderson* already has been applied in cases involving appeals to Article III courts, including in this Circuit.  *See, e.g., Keohane v. United States*, 669 F.3d 325, 330 (D.C. Cir. 2012) (applying *Henderson* to conclude that the two year filing deadline of 26 U.S.C. §7433(d)(3) (allowing suits against the government for improper conduct in the collection of taxes) is not jurisdictional); *La. Envtl. Action Network v. Cty. of Baton Rouge*, 677 F.3d 737, 746-49 (5th Cir. 2012) (applying *Henderson* to conclude that the "diligent prosecution" provision of the Clean Water Act is not jurisdictional); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-27 (2d Cir. 2011) (applying *Henderson* to conclude that a ban on certain civil actions in the Protection of Lawful Commerce in Arms Act (15 U.S.C. §7902(a)) is not jurisdictional).  Even *Gonzales v. Thaler*, 132 S. Ct. 641 (2012), upon which the USPTO relies, applies *Henderson* to a federal habeas corpus appeal.  *Id*. at 648.

The USPTO's argument that the language of §154(b)(4)(A) is "similar" to statutes that the Supreme Court has held to be jurisdictional (D.E. 26 at 16-17) is meritless.  There is a night-and-day difference between the relevant language from §154(b)(4)(A) ("[A dissatisfied applicant] . . . shall have remedy by a civil action . . . filed . . . within 180 days. . . .") and the statutes held to be jurisdictional in the cases that the USPTO cites:

- 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims *has jurisdiction shall be barred unless* the

petition thereon is *filed within six years* after such claim first accrues.") (emphases added).  S*ee John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753–57 (2008).

- 28 U.S.C. § 2401(a) ("every civil action commenced against the United States *shall be barred unless the complaint is filed within six years* after the right of action first accrues." (emphasis added).  *See Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir. 1987).

- 28 U.S.C. § 2253(c)(1) (appeals in habeas corpus proceedings "*may not be taken* to the court of appeals" "[u]nless a circuit justice or judge issues a certificate of appealability") (emphasis added).  *See Gonzalez v. Thayer*, 132 S. Ct. 641, 649 (2012).

As pointed out in Daiichi's opening memorandum (D.E. 22 at 24-25), these examples demonstrate that Congress knows how to provide a "clear indication" that a filing deadline is jurisdictional when it desires to do so.  The absence of such language in §154(b)(4) shows that no jurisdictional effect was intended.[2]

The USPTO attempts to distinguish *Bristol-Myers Squibb v. Kappos*, 841 F. Supp. 2d 238 (D.D.C. 2012), on the ground that the patentee in that case was in a different procedural posture from Daiichi because it had timely filed a request for PTA recalculation under 37 C.F.R. § 1.705(d) (D.E. 26 at 38-39).  Daiichi acknowledged that *Bristol-Myers* involved "general tolling," which arises when a timely filed request for reconsideration is pending at an agency, not equitable tolling.  D.E. 22 at 27.  *Bristol-Myers* is highly pertinent, however, because general tolling (like equitable tolling) would be barred if §154(b)(4)(A) were truly jurisdictional, as the USPTO contends.  Accordingly, §154(b)(4)(A) – like almost all other statutes of limitations – is

---

[2] Contrary to the USPTO (D.E. 26 at 18 n.5), Daiichi did not argue that 28 U.S.C. § 2107(a) (providing that "no appeal shall bring any judgment . . . before a court of appeals . . . unless notice of appeal is filed within 30 day after the entry of such judgment. . . .") is *not* jurisdictional. Just the opposite:  it was cited as another example of Congress's ability to set a clearly jurisdictional deadline when it chooses to do so.  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 61 (1982), reiterated the long-standing rule that a timely notice of appeal is a jurisdictional requirement.  The intervening amendment to Fed. R. App. P. 4(a)(4) that the USPTO refers to is beside the point.

non-jurisdictional and can be tolled in the interests of equity. Daiichi has shown that the facts here overwhelmingly support such equitable relief. As discussed below, the USPTO has failed to refute that showing.

### B.     The USPTO Fails to Rebut Daiichi's Showing That It Is Entitled to Equitable Tolling of the 180-Day Deadline

#### 1.     Daiichi Acted Diligently to Vindicate Its Rights

The USPTO argues that Daiichi is not eligible for equitable tolling because it did not act with sufficient diligence in challenging the PTAs of the '205 and '014 patents. D.E. 26 at 35. Specifically, the USPTO argues that Daiichi was not diligent, even though it filed its petitions for PTA recalculation under Rule 705(d) (and accompanying Rule 183 petitions) with respect to the '205 and '014 patents within 180 days of the *Wyeth* District Court Decision, because Daiichi allegedly should have challenged those PTAs within 2 months of issuance (in the USPTO) or 180 days of issuance (in district court). D.E. 26 at 35-36.

As Daiichi has pointed out, however, the decision not to challenge the PTAs for those patents within 2 months, or 180 days, of issuance was made in reliance on the USPTO's 2004 Notice, which made it clear that a request for recalculation at those early dates would have been futile. D.E. 22 at 28-29. In effect, the USPTO argues that Daiichi should have disregarded the USPTO's binding regulations, conducted its own analysis of the statutory scheme, and then challenged the regulations within 2 months after the patents issued. The D.C. Circuit rejected a similar argument in *Bull S.A. v. Comer*, 55 F.3d 678 (D.C. Cir. 1995), where the USPTO argued that the plaintiff should not have relied on a USPTO notice stating that the plaintiff's trademark would be in effect until a certain date because the plaintiff could have investigated and determined that the notice was inconsistent with the statute. *See* 55 F.3d at 682 ("This understanding of the limits on the Commissioner's authority, however, emerges only from a

fairly involved statutory analysis.  We do not think it 'reasonable' to hold Bull to knowledge of a byzantine statutory scheme in the face of an official written notification from the agency's highest authority . . . .").

Once put on notice (by the *Wyeth* District Court Decision) that the USPTO's regulation may have been incorrect, however, Daiichi acted with diligence:

- On February 2, 2009 (less than 180 days after the Wyeth District Court Decision) Daiichi filed petitions under 37 C.F.R. § 1.705(d) to recalculate the PTAs for the '014 and '205 patents, along with petitions under 37 C.F.R. § 1.183 to waive the normal 2 month from issuance deadline for such recalculation requests.

- The USPTO dismissed those petitions on March 30, 2010 (for the '014 patent) and April 14, 2010 (for the '205 patent).

- On June 1, 2010, Daiichi requested reconsideration of the dismissals of its petitions regarding the '014 patent, which the USPTO denied on October 12, 2010.

- On June 14, 2010, Daiichi requested reconsideration of the dismissals of its petitions regarding the '205 patent.

- On September 28, 2010, the USPTO denied the June 14, 2010 request for reconsideration regarding the '205 patent, stating that "[t]his decision is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of seeking judicial review.

- On November 16, 2010, Daiichi requested reconsideration of the USPTO's October 12, 2010, order with respect to the '014 patent.

- On March 17, 2011, the USPTO denied the November 16, 2010 request for reconsideration regarding the '014 patent and stated that "[t]his is a final agency action within the meaning of 5 U.S.C. § 704 for purposes of seeking judicial review."

- On November 9, 2010 (well within 180 days of exhausting its remedies in the USPTO) Daiichi filed an Amended Complaint in this action seeking correction of the PTAs for the '014 and '205 patents.

The Supreme Court has made clear that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' . . . not 'maximum feasible diligence.'"  *Holland v. Florida*,

130 S. Ct. 2459, 2565 (2010) (internal citations omitted).  The actions outlined above, which were initiated within 180 days of the *Wyeth* District Court ruling, clearly satisfy this "reasonable diligence" standard.  Contrary to the USPTO (D.E. 26 at 38-40), Daiichi's diligence is not negated by the fact that certain other patentees filed PTA correction suits within §154(b)(4)(A)'s 180 days from issuance deadline.  All but one of the cited complaints were filed after the *Wyeth* District Court Decision.  More importantly, the fact that some patentees may have been willing to play the odds in filing these complaints before any confirmation by the Federal Circuit that the USPTO's regulations were unlawful should not bar Daiichi from obtaining equitable tolling relief to which it is otherwise entitled because it relied on the stated policies of the USPTO. Indeed, until the *Wyeth* CAFC decision, the USPTO continued to insist that its interpretation of § 154(b) was correct.

**2.     Tolling Is Appropriate in View of the Change
in the Law Occasioned by *Wyeth***

The USPTO asserts that the Federal Circuit "has rejected the notion that a statute of limitations period does not begin to run until after a judicial decision recognizes the legal theory on which the litigant seeks relief."  D.E. 26 at 36.  The USPTO fails to recognize, however, that the issue here is not when the 180-day period of § 154(b)(4)(A) began, but whether it should be equitably tolled.  The primary authority cited by the USPTO, *Catawba Indian Tribe v. United States*, 982 F.2d 1564 (Fed. Cir. 1993), sheds little light on that issue.  *Catawba* involved the timeliness of a claim under 28 U.S.C. § 2501, one of the handful of filing deadlines that the Supreme Court has ruled are jurisdictional.  *See John R. Sand & Gravel Co.*, 128 S. Ct. at 753-57.  As such, the deadline in *Catawba* could *never* be subject to equitable tolling, and neither the tribe nor the government argued that it was.  *See* 982 F.2d at 1573 (Mayer, J., concurring in the judgment).  The language quoted by the USPTO (D.E. 26 at 37) for the proposition that "judicial

opinions explain, but do not create rights," addressed the issue of when the tribe's cause of action *accrued*, i.e., when the 6 year clock of § 2501 started running, not whether the clock should have been tolled for equitable reasons.  It is true that the court went on to speculate about whether equitable tolling might be available, but as Judge Mayer pointed out, "Equitable tolling was not raised by any party to this litigation, and is a gratuitous offering by the court. . . ."  982 F.2d at 1573.  And even the majority's dicta suggested that the tribe might have been entitled to equitable tolling during the long period it was unaware of the true import of the statute if it had filed suit within 6 years of first being put on notice (through a district court ruling) that its previous understanding of the statute may have been incorrect.  982 F.2d at 1572.

The USPTO's other authority on this issue, *Venture Coal Sales Co. v. United States*, 370 F.3d 1102 (Fed. Cir. 2004), is not pertinent for similar reasons.  Like *Catawba*, *Venture Coal* involved 28 U.S.C. § 2501, a jurisdictional statute of limitations that is never subject to equitable tolling.  Again, the quoted language concerned the time when the cause of action accrued and the 6 year statute of limitations began running, not whether the running of the limitations period should be equitably tolled.  Unlike the situation here, *Venture Coal* did not involve any reliance on an agency interpretation of the statute under which the plaintiff alleged the government improperly collected certain taxes.  Further, the statute in *Venture Coal* was alleged to be unconstitutional on its face, 370 F.3d at 1103, whereas Daiichi challenges not § 154(b) itself, but only the USPTO's enforcement of it, which could not have been known to be improper until the *Wyeth* District Court Decision.

In holding that equitable tolling was not available, Judge Huvelle's recent *Novartis* decision stated that "[i]t is of no moment that the USPTO had consistently applied its pre-*Wyeth* interpretation of A/B Delay Overlap; the question is not what the USPTO would have done in

response to a request for reconsideration, but rather what a federal court would have done in reviewing the USPTO's interpretation." *Novartis*, Slip op. at 16.  With respect, however, that reasoning is irreconcilable with the D.C. Circuit's ruling in *Bull*, which allowed equitable tolling because it was unreasonable to expect the plaintiff trademark owner to undertake its own analysis of "a byzantine statutory scheme in the face of an official notification from the agency's highest authority."  55 F.3d at 682.  The *Novartis* decision's failure to appreciate the significance of the patent owner's reliance on the USPTO's official interpretation of the statutory scheme, and its heavy reliance on *Venture Coal*, which involved no assertion of detrimental reliance on an authoritative agency pronouncement, significantly diminish its persuasive effect.

Recent Supreme Court authority makes clear that the tolling inquiry must be made on a case-by-case basis that "emphasiz[es] the need for flexibility," avoids the application of "mechanical rules," and "relieve[s] hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity."  *Holland*, 130 S. Ct. at 2563 (internal quotations and citations omitted).  Further, the party seeking equitable tolling need only show "reasonable diligence," not "maximum feasible diligence."  *Id.* at 2565.  Thus, while past decisions may have some relevance, the ultimate decision on equitable tolling must be made "with awareness of the fact that specific circumstances, often hard to predict, in advance, could warrant special treatment in an appropriate case."  *Id.* at 2563.  Tolling is appropriate here due to the extraordinary and unpredictable shift in the law occasioned by *Wyeth* as well as the other unique circumstances discussed below.

### 3.        This Case Involves "Extraordinary Circumstances" That Amply Justify Equitable Tolling

In arguing that this case does not present the type of "extraordinary circumstances" that warrant equitable tolling (D.E. 26 at 39), the USPTO relies on the same facts underlying its argument that Daiichi was not diligent in protecting its rights, *viz.*, it asserts that the USPTO laid out its interpretation of § 154(b) in 2004 and that Daiichi had all the information it needed to challenge the PTAs of the '014 and '205 patents at the time those patents issued.  But, as noted previously, the D.C. Circuit rejected a similar argument in *Bull v. Comer*, where it held that the plaintiff was entitled to equitable tolling and that it was unreasonable to expect the plaintiff to undertake its own analysis of "a byzantine statutory scheme in the face of an official written notification from the agency's highest authority. . . ."  55 F.3d at 682.  Moreover, once put on notice that the USPTO's interpretation of the statute might be incorrect, Daiichi clearly pursued its rights with reasonable diligence (*see* section III.B.1., above), which is all the law requires.

The USPTO attempts to distinguish *Bull* on the ground that the agency in that case provided the plaintiff trademark owner with an incorrect deadline for renewing the mark's registration, whereas here "Daiichi was never misled about the time limits on its ability to challenge the PTA determinations or how the PTA calculations were completed."  D.E. 26 at 40-41.  That is a distinction without a difference.  Both here and in *Bull*, the USPTO provided incorrect information to the plaintiff and the plaintiff relied on that information to its detriment.  The D.C. Circuit concluded that it was "entirely appropriate to insist that the [USPTO] toll the statutory deadline" for the period that the trademark owner relied on the USPTO's incorrect information.  55 F.3d at 683.  The same result should apply here.

The USPTO's position that the circumstances here are not extraordinary is irreconcilable with the USPTO's own 2010 Interim Procedure, which waived 37 C.F.R. § 1.705(d)'s 2 month

from issuance deadline for PTA recalculation requests for patents that happened to issue within the 180 days preceding the Interim Procedure's publication.  The patentees eligible for that procedure were subject to the same arguments regarding diligence and lack of exceptional circumstances that the USPTO raises here.  Nonetheless, the USPTO waived the 2 month from issuance deadline pursuant to 37 C.F.R. § 1.183, which allows the USPTO to waive its regulations in "an extraordinary situation."  *See* 75 Fed. Reg. 5043-45 at 5044 (col. 2, bottom) (relying on 37 C.F.R. § 1.183 to waive filing deadline).  If the circumstances facing those patentees were extraordinary, then Daiichi – which is suffering exactly the same type of injury as a result of the USPTO's erroneous A Delay/B Delay calculations – is in an extraordinary situation as well.

The USPTO also attempts to minimize the significance of the '135 patent's linkage to the earlier '014 and '205 patents by way of terminal disclaimers.  D.E. 26 at 41-42.  The USPTO, however, fails to acknowledge that its position effectively nullifies this Court's order that the PTA for the '135 patent be corrected.  As Daiichi has pointed out (D.E. 22 at 31), Daiichi timely filed a complaint seeking an order from this Court directing the USPTO to correct the PTA for the '135 patent, and this Court *granted* the requested relief.  This Court's Order, however, and the subsequent correction of the '135 patent's PTA have no practical effect due to the '135 patent's link to the other two patents.  Thus, Daiichi is left with unlawfully shortened terms for all three patents, even though the USPTO expressly acknowledges that the PTA was miscalculated for all three patents – truly an illogical, and unjust result.  The only way that the Court can restore the term of the '135 patent is by allowing Daiichi to obtain the full statutory terms of the '014 and '205 patents.  To the extent there was an applicable 180-day "deadline" for filing a complaint on the PTA determinations for the two other patents, those deadlines must be

tolled and the patent terms of those patents corrected in order to prevent their USPTO-acknowledged incorrect patent terms from cutting short, via the terminal disclaimer, the term of the '135 patent.

IV.     **The USPTO Fails to Rebut Daiichi's Showing that the Refusal to Allow Daiichi to Petition for Recalculation of the Proper Statutory Terms of the '014 and '205 Patents Deprives Daiichi of Property in Violation of the Due Process Clause of the Fifth Amendment**

   A.     **Procedural Due Process**

   Daiichi's opening memorandum showed that all three of the considerations under *Mathews v. Eldridge*, 424 U.S. 319 (1976), point to the conclusion that the USPTO's refusal to provide any procedure to correct its acknowledged misapplication of § 154(b) with respect to the '014 and '205 patents (and the resulting futility of correcting the term of the '135 patent) constitutes a denial of Daiichi's due process rights.  D.E. 22 at 32-35.  The USPTO's arguments to the contrary lack merit.

   On the threshold issue of whether Daiichi has a constitutionally protected property interest in the full statutory terms of its patents, the USPTO argues that no such interest exists because Daiichi failed to timely challenge the PTA determinations for those patents.  D.E. 26 at 46, 48.  Daiichi has shown, however, that its challenge was timely because the limitations period of § 154(b)(4)(A) does not apply to the type of PTA calculations at issue here; that the USPTO's failure to waive its rules and allow the PTAs to be recalculated was arbitrary, capricious, an abuse of discretion, and not in accordance with law; and that even if the limitations period of § 154(b)(4)(A) were applicable, it should have been equitably tolled.  *See* sections I, II, and III, above.

   The USPTO argues that a timely challenge to a PTA determination under § 154(b)(4)(A) and 37 C.F.R. § 1.705(d) is a condition precedent for the right to a full patent term, in the same

way that the payment of maintenance fees is a requirement for the continued existence of a patent beyond specified periods past issuance.  D.E. 26 at 48 (citing *Michels v. United States*, 72 Fed. Cl. 426 (Fed. Cl. 2006)).  This position is meritless.  As the *Michels* court noted, the payment of maintenance fees is one of the mandatory conditions for the patent's existence.  72 Fed. Cl. at 430-31.  Section 154(b)(4)(A) and 37 C.F.R. § 1.705(d), in sharp contrast, are mere claim processing rules that do not implicate the viability of the patent right.  *See* section III.A., above.  As previously discussed, moreover, § 154(b)(4)(A) does not even apply to the PTAs at issue here, and 37 C.F.R. § 1.705(d) should have been waived.

With respect to the second *Mathews* consideration, the risk that the USPTO's procedures will cause an erroneous deprivation of Daiichi's property interest, Daiichi showed that such deprivation was not merely a risk, but a certainty.  D.E. 22 at 34.  The USPTO argues in response that its procedures allow patentees *in general* an adequate opportunity to seek PTA recalculations.  D.E. 26 at 49.  This argument ignores the reality that the USPTO's Interim Procedure provided no relief whatsoever for Daiichi and the large number of other patent owners whose patent terms were unlawfully shortened under the USPTO's pre-*Wyeth* rules, but were left with no remedy because their patents happened to issue before the *Wyeth* look-back period.

With respect to the third *Mathews* consideration, whether it would be unduly burdensome for the USPTO to correct its errors, the USPTO asserts that if it were required to correct PTAs for even five years back from 2009, over 750,000 patents might be implicated.  D.E. 26 at 50.  This scare tactic is unconvincing.  First, the USPTO should not be able to rely on the massive scope of its error as an excuse to avoid correcting it.  Second, this case is not about 750,000 patents, just the '014 and '205 patents, whose terms were unlawfully shortened, and the '135 patent linked to them by terminal disclaimers.  Correcting the terms of those patents involves

nothing more than issuing one-page certificates of correction.  And the calculations of the correct

PTA periods have already been provided to the USPTO by Daiichi.

Accordingly, Daiichi has established that the USPTO has deprived Daiichi of property in

violation of Daiichi's right to procedural due process.

**B.**     **Substantive Due Process**

Daiichi's opening memorandum showed that USPTO's attempt to remedy its "counter-

statutory" interpretation of § 154(b) violates the substantive guarantees of the Due Process

Clause in two ways: (1) it is illegitimate for the USPTO to arbitrarily decide how many of its

mistakes get corrected and which patentees must be deprived of their full property rights because

of the USPTO's erroneous reading of § 154(b); and (2) the USPTO's chosen method of

correcting its errors—waiving the normal deadlines, but only to correct its most recently-

committed errors—has no rational connection to *any* legitimate government purpose.  D.E. 22 at

35.  The USPTO's opposition on this issue fails.

First, the USPTO argues that the mere existence of a procedure for challenging the PTA

determinations for the '014 and '205 patents at the time they issued is sufficient to defeat

Daiichi's claim.  D.E. 26 at 50.  As noted previously, however, any attempt by Daiichi to seek

reconsideration in the USPTO would have been doomed to failure, and Daiichi relied on the

USPTO's authoritative construction of the statute when it elected not to challenge the PTAs in

district court.

Second, the USPTO argues that its policy of allowing only its most recently committed

errors to be corrected, but not errors committed before the *Wyeth* look-back period, "is rationally

related to the legitimate government  interest of encouraging early PTA challenges to bring any

resulting petitions or litigations to an end, . . . and to establish the final amount of PTA days

early to provide greater certainty to the patent owner and marketplace." D.E. 26 at 50-51. The USPTO's Interim Procedure does nothing, however, to encourage early PTA challenges by those adversely affected by it. All of those patentees, like Daiichi, have long-since missed the early deadlines the USPTO refers to due to their reliance on the USPTO's old regulations. And the owners of later issuing patents need no encouragement to adhere to the deadlines. Thus, the Interim Procedure has no rational connection to the cited government interests and therefore violates Daiichi's right to substantive due process.

## CONCLUSION

For the foregoing reasons, Daiichi's motion should be granted and this case should be remanded with instructions for the USPTO to recalculate the PTAs of the '014 and '205 patents in accordance with the *Wyeth* CAFC Decision. The USPTO's cross-motion should be denied.

Dated: December 5, 2012          Respectfully submitted,

/s/ Kevin M. Dinan
Kevin M. Dinan (DC Bar No. 406627)
KING & SPALDING LLP
1700 Pennsylvania Ave NW, Suite 200
Washington, D.C. 20006-2706
Tel: 202-737-0500
Fax: 202-626-3737

*Of Counsel*
Kenneth H. Sonnenfeld
Margaret B. Brivanlou
Michael P. Dougherty
Wan Chieh Lee
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: 212-556-2100
Fax: 212-556-2222
*Attorneys for Plaintiff Daiichi Sankyo Company, Limited*